```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2                          -  -  -
      UNITED STATES of AMERICA,    :  2:15-mj-00417-1
 3              Plaintiff,         :  PHILADELPHIA, PA
                vs.               :
 4    KEONNA THOMAS, A/K/A "FATAYAT:
      AL KHILAFAH," A/K/A          :
 5    "YOUNGLIONESS"              :  April 9, 2015
                  Defendant.      :  1:23 p.m.
 6          TRANSCRIPT OF PROBABLE CAUSE HEARING
          BEFORE THE HONORABLE MARILYN HEFFLEY
 7              UNITED STATES DISTRICT JUDGE
      APPEARANCES:
 8    For the Plaintiff:   JENNIFER A. WILLIAMS, ESQ.
                           U.S. ATTORNEY'S OFFICE
 9                         615 Chestnut Street
                           Suite 1250
10                         Philadelphia, PA 19106
                           (215) 861-8474
11                         jennifer.a.williams@usdoj.gov
12    For the Defendant:   KATHLEEN M. GAUGHAN, ESQ.
                           FEDERAL DEFENDERS OFFICE
13                         601 Walnut Street
                           Suite 540
14                         Philadelphia, PA 19106
                           (215) 928-1100
15                         kathleen_gaughan@fd.org
16                         JAMES J. MCHUGH, JR., ESQ.
                           DEFENDER ASSOCIATION OF PHILADELPHIA
17                         601 Walnut Street
                           Suite 540 West - Curtis Building
18                         Philadelphia, PA  19106
                           (215) 928-0520
19                         james_mchugh@fd.org
20    AUDIO OPERATOR:      C. WARDLAW
      TRANSCRIBER:         JANINE THOMAS
21                         NOTARY PUBLIC
22    (Proceedings recorded by electronic sound recording,
      transcript produced by transcription service.)
23
             VERITEXT NATIONAL COURT REPORTING COMPANY
24                    MID-ATLANTIC REGION
              1801 Market Street - Suite 1800
25            Philadelphia, Pennsylvania  19103
```

1
                          I N D E X
2                                                                    Page

3
      COLLOQUY                                      3, 35
4
      WITNESS:  MARTIN MCDONALD
5       Direct Examination by Ms. Williams          3
        Cross-Examination by Mr. McHugh             5
6       Redirect Examination by Ms. Williams        30
        Recross-Examination by Mr. McHugh           34
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              DEPUTY CLERK:  Court is now in session.  The

2    Honorable Marilyn Heffley presiding.

3              THE COURT:  Good afternoon, everyone.

4              MULTIPLE SPEAKERS:  Good afternoon, Your Honor.

5              THE COURT:  Please be seated.  The first case

6    before this court is the United States of America versus

7    Keonna Thomas, A/K/A "Fatayat Al Khilafah," A/K/A "The Young

8    Lioness" Docket Number 15-417m.  The case is scheduled for a

9    preliminary examination.

10             MS. WILLIAMS:  Good afternoon Your Honor.  I'm

11   Jennifer Williams, for the United States and with me at

12   counsel table is FBI Special Agent Martin McDonald.  We are

13   here for both preliminary examination and a detention hearing,

14   Your Honor.  And if the Court would like, I can proceed with

15   the preliminary examination, now.

16             THE COURT:  Yes, please proceed, Ms. Williams.

17             MS. WILLIAMS:  Then Your Honor, I call to the

18   stand FBI Special Agent, Martin McDonald.

19             DEPUTY CLERK:  Can you raise your right hand?

20                        - - -

21                  (MARTIN MCDONALD - SWORN)

22                        - - -

23             DEPUTY CLERK:  Please state your full name.

24   Spell your last name for the record.

25             THE WITNESS:  Martin McDonald, M-C-D-O-N-A-L-D.

1              DEPUTY CLERK:  Thank you.

2    BY MS. WILLIAMS:

3    Q.    Good afternoon Agent.

4    A.    Good afternoon.

5    Q.    Did you prepare the affidavit in support of the

6    complaint and the arrest warrant of Keonna Thomas?

7    A.    Yes, I did.

8    Q.    And do you have a copy of it in front of you?

9    A.    Yes, I do.

10   Q.    Did you swear to its truth on April 3, 2015?

11   A.    Yes, I did.

12   Q.    And was it true and correct at the time?

13   A.    Yes.

14   Q.    Is it true and correct as you sit here today?

15   A.    Yes, it is.

16   Q.    Do you have any corrections, additions, or changes to

17   the affidavit?

18   A.    I do not.

19   Q.    And then do you adopt the affidavit as your testimony

20   here today?

21   A.    Yes, I do.

22              MS. WILLIAMS:  Your Honor, then I move for the

23   admission of the affidavit for purposes of the probable cause

24   hearing today.

25              THE COURT:  It's granted.  Thank you.

1            MS. WILLIAMS:  I have no further questions.

2      Thank you.

3            THE COURT:  Mr. McHugh.

4            MR. MCHUGH:  May I, Your Honor?

5            THE COURT:  Yes.

6                         - - -

7                  CROSS-EXAMINATION

8                         - - -

9      BY MR. MCHUGH:

10     Q.    Agent McDonald, I'm going to be referring to the

11     paragraphs in the complaint, so in paragraph two, would you

12     agree with me that the charge that is set forth in this

13     complaint is an attempt charge?

14     A.    Yes, it is.

15     Q.    Okay.  And it's an attempt to provide material support

16     to ISIL; is that correct?

17     A.    Yes, sir.

18     Q.    Okay.  And a number of the paragraphs in the complaint

19     talk about Twitter postings; is that right?

20     A.    Yes, sir.

21     Q.    Okay.  And you indicate in there that Ms. Thomas posted

22     those Tweets; is that right?

23     A.    Yes, sir.

24     Q.    And how were you able to determine that it was her that

25     was posting?  And I'm going to ask you about reposting in a

1   minute.

2   A.    Sure.

3   Q.    But, talking about just the paragraphs that deal with

4   posting?

5   A.    How do we know it was her?

6   Q.    Yes.  How did you determine based in your affidavit

7   that it was her that was making these posts?

8   A.    Sure.  Well, basically, through a grand jury subpoenas,

9   Your Honor, and other investigative tools, we were able to

10  clearly establish that these online monikers resolve back to

11  Keonna Thomas.

12  Q.    And by that what do you mean?  Are your -- you found an

13  address that was signed up by her or what did you find?

14  A.    Sometimes we did.  The grand jury subpoena returns, the

15  results show that the online monikers resolve back to Ms.

16  Thomas' known unique IP address, Your Honor.  I believe it was

17  71.23.230.0.  In addition, sometimes these online monikers

18  resolve back into addition to the IP address to known e-mails

19  owned and operated and utilized by Keonna Thomas.

20  Q.    All right.  So, you found an IP address that was

21  registered to her?

22  A.    Yes.

23  Q.    And that's where the tweets were coming from?

24  A.    Yes.

25  Q.    Okay.  And then you said that there was also an e-mail

1   account?

2   A.    Yes.

3   Q.    And what was that?  That was registered to her in her

4   name?

5   A.    There were several, though the primary one was a, it

6   was a, the name of the e-mail was Amujahiri84@Gmail.com[ph],

7   that was the primary one.  There was other facilities.  We all

8   managed to trace all the facilities back to Keonna Thomas one

9   way or another.

10  Q.    And by tracing it back to her, specifically, what

11  you're saying is the IP account?

12  A.    The IP address, sir.  Yes, sir.

13  Q.    Okay.  Now moving onto the -- what -- there's a number

14  of paragraphs in the complaint talking about repostings?

15  A.    Yes.

16  Q.    Are you familiar with that?

17  A.    Yes.

18  Q.    Can you tell us what you meant by repostings?

19  A.    Repost, Your Honor, would basically be if you said

20  something on Twitter and I agreed with what you said or I

21  would repost what you said.  So, it's called a repost.

22  Q.    Okay.

23  A.    So, you weren't the original poster of it, you just

24  repost it.

25  Q.    Okay.  And so that is not something that Ms. Thomas

1    drafted other wrote; is that correct?

2    A.    The original, no.

3    Q.    Right.  It would be something that she clicked on a

4    button and it just reposted on her Twitter account?

5    A.    Well, yeah.  You agree or you second that motion, so to

6    speak, or something you agree with, yeah.  You would click on

7    a button and show that you Retweeted it.

8    Q.    And how about -- again, the same question as far as the

9    postings and reposting, how did you trace back the repostings

10   to Keonna Thomas?

11   A.    When you do that it's the same thing.  Her -- Keonna

12   Thomas' Twitter handle would come up and you can see that she

13   Retweeted it, same thing.

14   Q.    Okay.  All right.  Now, would you agree with me that

15   throughout the complaint there's a discussion of electronic

16   communications with three different individuals that are

17   described as coconspirators?

18   A.    Yes, sir.

19   Q.    Is that right?

20   A.    Yes.

21   Q.    Okay.  I want to talk to you about the, the first one

22   which you've described or in your complaint that's described

23   as Coconspirator Number One.

24   A.    Okay.

25   Q.    You're familiar with that; is that right?

1    A.     Yes, sir.

2    Q.     Okay.  Now, these communications in the complaint are

3    outlined in Paragraphs 11 through 13; is that right?

4    A.     Yes, sir.

5    Q.     Okay.  And those communications all occurred in

6    December 2013?

7    A.     Yes, sir.

8    Q.     Okay.  And in your complaint you indicate that ISIL was

9    not designated as a terrorist organization until May 2014; is

10   that right?

11   A.     I think -- the short answer is yes, but I think there

12   was a, basically a transgression of it when it turned from

13   al-Qaeda and Iraq to Finally ISIS/ISIL.  So, in the same

14   organization was still bandaged, didn't have the name yet.

15   Q.     Okay.  But the charge here is concerning attempt to

16   provide support to ISIS; is that right?

17   A.     No.  Yeah, sure.  Sure, [indiscernible].

18   Q.     And in your complaint, you indicate that ISIL wasn't

19   the -- the Secretary of State amended the AQI designation in

20   May 2014 to include ISIL; is that right?

21   A.     Yes.

22   Q.     So, the communications with CC Number One,

23   Coconspirator Number One, all occurred before that amendment

24   was made; is that?

25   A.     Yes, sir.

1    Q.    Okay.  And the person that you've described as

2    Coconspirator Number One, you did not allege in your complaint

3    that that person was associated with ISIS, did you or ISIL?

4    A.    He was not.  He was associated with different terrorist

5    organizations.

6    Q.    Okay.  So, in addition to it occurring in December

7    2013, this person was not an author -- a member of ISIL as far

8    as you knew?

9    A.    No, sir.

10    Q.    And that's why you didn't aver that in your complaint?

11    A.    Yes, sir.

12    Q.    Is that right?  Okay.  And in her -- in the

13    communications that you attribute to Ms. Thomas, there's no

14    statements by her and I'm confining my questions to

15    Coconspirator Number One.  There's no statements by her of

16    wanting to join ISIL; is there?

17    A.    No, sir.

18    Q.    Okay.  And in fact after December 2013, based on your

19    affidavit there's no further contacts with that Coconspirator

20    Number One; is that right?

21    A.    I'm sorry, can you repeat that question, sir?

22    Q.    After December 2013, there's no further contacts with

23    that person identified as Coconspirator Number One?

24    A.    Not on this affidavit, sir.

25    Q.    Okay.

1   A.    And if I could go back, you said in reference to the,

2   if I can, Your Honor --

3            THE COURT:  Yes, you may.

4            THE WITNESS:  -- go back to the previous

5   question.  About the, the wanting to join ISIS or ISIL, I draw

6   your attention to Paragraph 12 where she speaks of leaving the

7   land of the Kafir or the nonbelievers.  When we read that, we

8   interpreted that as her intent to leave to join a terrorist

9   organization overseas.

10  BY MR. MCHUGH:

11  Q.    A terrorist -- so, leaving the -- you interpreted

12  leaving the land of nonbelievers to mean, joining a terrorist

13  organization overseas?

14  A.    Yes, sir.  At that time I believed it was either going

15  to be Al Shabab or ISIS or ISIL.

16  Q.    All right.  But, nowhere in there can we agree, does

17  the person who you're identifying as Ms. Thomas, mention Al

18  Shabaz.

19  A.    Yes, sir.

20  Q.    ISIL.

21  A.    Yes.

22  Q.    Or ISIS.

23  A.    Correct.

24  Q.    Okay.  All right.  Moving onto Coconspirator Number

25  Two, that person you identified as a known ISIS fighter; is

1    that right?  And I'm referring now to Paragraph 25 of your

2    complaint?

3    A.    Yes, sir.

4    Q.    All right.  And how did you make that determination?

5    A.    How did we know he was a, a fighter in ISIS?

6    Q.    Yeah.  You described, you averred that a known overseas

7    ISIL Fighter, CC Number Two --

8    A.    Yeah --

9    Q.    How did you make that averment?

10   A.    Well, in part, because he said that he was going

11   through a training camp -- I'm not looking at the affidavit

12   data right now, I just, from memorization know at a point that

13   he was telling her that he was going through a training camp

14   and that he was based in Rocca, Syria.

15         So, a training camp to me being in Syria, Your Honor, I

16   believe it was a terrorist training company.

17   Q.    So, you based it solely on his -- this person's

18   allegations in the electronic communications?

19   A.    Yes.

20   Q.    And those communications simply stated that they were

21   in a training camp?

22   A.    Yes.  That was one of them; yes.

23   Q.    Okay.  Did you ever verify that this person was

24   actually in a training camp?

25   A.    I don't know if we ever discussed that at this time.

1          MS. WILLIAMS:  Your Honor, may I approach

2     sidebar with defense counsel for a moment?

3          THE COURT:  Yes.

4                         -   -   -

5                         (Pause)

6                         -   -   -

7     BY MR. MCHUGH:

8     Q.    As to Coconspirator Number Two, the contacts that you

9     attribute to Ms. Thomas with this person occurred, essentially

10    on two days; is that right?  On December 2, 2014 and February

11    17, 2015; is that fair to say?

12         MS. WILLIAMS:  Your Honor, may I just seek

13    clarification as defense counsel in this and all questions

14    referring solely to the communications in the affidavit --

15         MR. MCHUGH:  Yes.

16         MS. WILLIAMS:  -- or all communications about

17    which the witness is aware?

18         MR. MCHUGH:  Obviously, Your Honor, it's a

19    probable cause hearing.  I'm limited my examination to this --

20    to the affidavit.

21         THE COURT:  All right.  Thank you.

22         MR. MCHUGH:  As was brought out on direct.  I --

23    and I'm sorry if that wasn't clear.

24         THE WITNESS:  I'm sorry can you ask that again?

25    BY MR. MCHUGH:

1    Q.    Okay.  So, looking at -- we're talking about

2    Coconspirator Number Two.  Would you agree with me that the

3    contacts that are contained in the affidavit occurred on a

4    two-day period?

5    A.    What paragraphs are you referring, sir?  So, I can

6    find --

7    Q.    Paragraphs 23 to 27, I'm sorry, 25 to 27 and Paragraphs

8    33 to 34.

9    A.    This affidavit, yes, sir.

10   Q.    Okay.  And so the two dates are December 2, 2014; is

11   that right?

12   A.    Yes.

13   Q.    And February 17, 2015.

14   A.    Yes, sir.

15   Q.    All right.  Let's talk about December 2, 2014, the

16   first date.  Would you agree with me that in the affidavit the

17   CC Number Two initiated the contact with who you allege was

18   Ms. Thomas; is that right?

19   A.    I don't recall, Your Honor, on this if it was the

20   coconspirator that initiated the conversation or it was Keonna

21   Thomas; I don't know, I don't recall at this moment.

22   Q.    Well, the first paragraph that talks about CC Number

23   Two is Paragraph 25; is that right?

24   A.    Yes.

25   Q.    In the very first sentence it says, "ISIL Fighter CC

1    Number Two, sent an electronic communication to Keonna

2    Thomas."  Did you see that?

3    A.    Right.  Right.  In reference -- I see what you're

4    saying in reference to this specific conversation, yes.

5    You're correct.

6    Q.    All right.  And this is the affidavit that we had

7    before --

8    A.    Yeah.  Yeah.  You're correct.

9    Q.    Okay.  So, would you agree with me that in your

10   affidavit CC Number Two initiated the contact?

11   A.    Yes.

12   Q.    And when you describe an electronic communication, are

13   you talking about an e-mail there or are you talking about

14   something else?

15   A.    In number 25 it was a Twitter message.

16   Q.    Okay.  And would you also agree with me that looking at

17   the conversations that the electronic communications that you

18   described between paragraph 25 and 27, there's no mention by

19   Ms. Thomas of joining ISIL; is that correct?

20   A.    No, sir.

21   Q.    That is correct; right?

22   A.    You're correct.

23   Q.    Okay.  Now let's look at the second conversation and

24   last conversation with CC Number Two or communication, I'll be

25   more specific that occurred in February 17, 2015.  And that's

1  between Paragraphs 33 and 34; did you see that, sir?

2  A.    Yes, sir.

3  Q.    All right.  Would you agree with me there that again,

4  CC Number Two initiated the conversations with who you allege

5  was Ms. Thomas?

6  A.    Yes, sir.

7  Q.    Okay.  And would you agree with me there, again, that

8  there's no mention by Ms. Thomas of her joining ISIL?

9  A.    I think that's a distortion of the truth, Your Honor.

10  I think when she replies that she would -- it be amazing

11  that -- if I take in a martyr and operation, I, I don't think

12  one would respond to that it wasn't your intention to join

13  ISIS, so I would disagree.

14  Q.    All right.  But that was in response to something that

15  CC Number Two had stated; isn't that right?

16  A.    Oh it was a response to his question; yeah.  She has,

17  he asked if she wanted to partake in a martyr and operation

18  and she responded, that would be amazing.  So, yes, it was in

19  response.

20  Q.    All right.  But there's no mention there about ISIL in

21  any way; is there?

22  A.    No, sir.

23  Q.    All right.  And at least in this affidavit the final

24  communication with CC Number Two which is in Paragraph 34 is

25  CC Number Two states, "I can make that wish come true."

1    A.    Yes, sir.

2    Q.    And I don't see any response in there from the person

3    who you allege was Ms. Thomas; is that right?

4    A.    That's correct.

5    Q.    All right.  Moving on to CC Number Three, the last

6    person who you described in this affidavit with

7    communications.  Would you agree with me that that starts on

8    Paragraph 29 of your affidavit?

9    A.    Yes, sir.

10   Q.    Okay.  And here again, there's no allegation in your

11   affidavit just like CC Number One that this person is a member

12   of ISIL; is that right?

13   A.    That's correct.

14   Q.    Okay.  And that's because you had no information that

15   this person was a member of ISIL?

16   A.    Correct.

17   Q.    All right.  And would you agree with me that this --

18   the communications with CC Number Three takes place over the

19   course of two days; is that right?  And I'm referring you

20   specific to Paragraph 29 and 31.

21   A.    Yes.

22   Q.    All right.  And those dates are January 30, 2015?

23   A.    Yes, sir.

24   Q.    And February 14, 2015?

25   A.    Yes, sir.

1  Q.    Okay.  And let's talk about January 30, 2015.  You see

2  that, sir?

3  A.    Yes, sir.

4  Q.    And there again, would you agree with me that there's

5  no mention by Ms. Thomas of her wanting to join ISIL?

6  A.    Again -- again, sir, I think that's a little bit of

7  distortion the way I took it as, when her response is "As of

8  now I'm still here, but I would be leaving the state soon,"

9  her impending travel to join ISIS, but the word ISIS are not

10  mentioned in this paragraph, sir, you are correct.

11        She does not say she wants to join ISIS in this

12  paragraph, so you are correct.

13  Q.    Okay.  And when she says, "I will, leaving the state

14  soon," she doesn't even say where she's leaving to go; is that

15  right?

16  A.    She doesn't say that, no.

17  Q.    Okay.  And so, then let's look at Paragraph 31 which is

18  the second description of the second and last communication

19  with Number Three and that's on February 14th; is that right?

20  A.    Yes, sir.

21  Q.    And would you agree with me there, in that conversation

22  that there's no mention by who you allege was Ms. Thomas

23  wanting to join ISIS, ISIL?

24  A.    Again, in Paragraph 31 she informs that particular

25  coconspirator, "Deactivated my Twitter until I leave for

1    Sham."  Sham is greater Syria.

2    Q.    Okay.

3    A.    Again, it goes along that theme, ISIS is located in

4    Syria and Iraq, at that time Sham to me was Syria.  ISIS is in

5    Syria.  I took that, Your Honor, as she was traveling to Syria

6    to join ISIS.

7    Q.    So, it was your assumption that if someone's traveling

8    to Syria then they're traveling to join ISIL?

9    A.    Based on the nature, content, and consistency of the

10   content of her previous communications, absolutely.

11   Q.    Okay.  But you would agree with me in that paragraph

12   there's no mention of ISIL?

13   A.    Yes, sir.  You're correct.

14   Q.    Okay.  Now, in Paragraph 32 she talks, alleges to talk

15   to CC Number Three about communicating with CC Number Two

16   regarding routes and travel plans; do you see that?

17   A.    Yes, sir.

18   Q.    In your investigation did you find anything that

19   verified communications with CC Number Two concerning routes

20   or travel plans?

21   A.    Yes, I did, sir.

22   Q.    And is that in the affidavit?

23   A.    That is not in the affidavit.

24   Q.    All right.  So, you left that out?

25   A.    It's not in this affidavit.

1    Q.    Okay.  The -- looking at Paragraph 30, we talk about

2    her application for a passport?

3    A.    Yes, sir.

4    Q.    All right.  That was done here in Philadelphia; is that

5    right?

6    A.    I believe so.  I believe the --

7    Q.    You're not sure?

8    A.    Yeah.  I, I saw the passport application.  I saw the

9    passport; I believe so, but yes, I believe it was processed

10   here.

11   Q.    All right.  Well, when you say saw the passport and you

12   saw the application, that's all you saw?

13             MS. WILLIAMS:  Object, Your Honor, to the

14   question.

15   BY MR. MCHUGH:

16   Q.    Did you do any further investigation as to where this

17   was submitted, this application?

18   A.    I, I did, Your Honor.  We have a task force officer

19   assigned to the Joint Terrorism Task Force from the Department

20   of State Homeland Security.  He verified that she did apply

21   for a passport.  I thought your question was did I actually

22   see anything processed in Philadelphia; the answer is no.  I

23   received word that it was.

24   Q.    All right.

25   A.    But it was based on someone else's --

1    Q.    It's just a probable cause hearing.  So, what you're

2    information was was that she applied for this passport in

3    Philadelphia; is that right?

4    A.    Yes.

5    Q.    And she used her correct name; is that right?

6    A.    Yes.

7    Q.    Keonna Thomas?

8    A.    Yes.

9    Q.    Correct date of birth?

10   A.    Yes.

11   Q.    Correct address?

12   A.    Yes.

13   Q.    Okay.  And looking at Paragraph 36, talks about the

14   application for a visa is; that right?

15   A.    I'll get there in a second for you.

16   Q.    Yeah, take your time.

17   A.    Yes.

18   Q.    Okay.  Now, this information that you swore to, how did

19   you come upon this?  Did you do this investigation or was this

20   something that was told to you?

21   A.    The e-Visa -- there was a search warrant, Your Honor

22   that was served.  The federal -- from the search warrant that

23   was served at the defendant's house the day of -- 802 North

24   10th Street on March 27th.  As a result of that search warrant

25   the defendant Keonna Thomas had a cell phone in her pocket

Page 22

1    when we went to the house.

2         A cell phone, I witnessed it -- it being taken off her

3    person.  That cell phone was confiscated, submitted to our

4    forensic computer laboratory.  The result of that analysis

5    showed on the phone that the Turkish Government sent Keonna on

6    her phone an e-mail saying, basically thank you for applying

7    for a visa to Turkey and said that [indiscernible] Keonna

8    Thomas, so, that is why I know that.

9         And it said the date of the application was the 23rd

10   and I believe the visa was good for, I think from March 25th

11   to September 20, 2015.

12   Q.    Okay.  And so, that was in her correct name; is that

13   right?

14   A.    Yes, sir.

15   Q.    Correct date of birth?

16   A.    Yes.

17   Q.    Correct address?

18   A.    Yes.

19   Q.    And, in fact you said you read it from an e-mail at

20   her -- on her phone; is that right?

21   A.    Yeah -- that's what it was from, how I read it was

22   through a computer written analysis, but it was an e-mail on

23   her phone; correct.

24   Q.    Okay.  So, obviously correct e-mail too; is that right?

25   A.    Yes.

1    Q.    If it was received.  Now, Paragraph 35, you discuss

2    there that Ms. Thomas conducted online research into various

3    indirect travel routes to Turkey, how did you come across that

4    fact?

5    A.    Again, part of that search warrant, Your Honor, on

6    March 27th, we removed a computer from Keonna Thomas' house

7    from inside Keonna Thomas' bedroom, from under Keonna Thomas'

8    bed and when we looked at the hard drive through a computer

9    forensic analysis it showed different searches that she's

10   done.  Some of those searches were travel from Barcelona to

11   Istanbul.

12   Q.    All right.  So these were websites that the browser

13   appeared to have gone to?

14   A.    Yeah, yeah they were searches, I mean to be specific

15   about it, I'm not sure at this time, but --

16   Q.    In other words typed in words?

17   A.    Yeah.

18   Q.    Okay.  And do you recall what dates these searches were

19   done?

20   A.    I do not.

21   Q.    All right.  There's no mention of the dates in here, so

22   you don't recall?

23   A.    No.  I don't recall, sir.

24   Q.    Okay.  And so this was on a laptop not a phone?

25   A.    It was a laptop, sir; correct.

1    Q.    Okay.  So, you don't know who actually typed in these

2    searches; is that fair to say.

3    A.    Well, again, based on, it was -- so, based that it was

4    a, you know, the defendant's house, the defendant's bedroom,

5    under the defendant's bed, when you opened up the laptop it

6    actually said Fatayat Al Khilafah.  The computer was named

7    Fatayat Al Khilafah --

8    Q.    Okay.

9    A.    -- which is obviously one of Keonna's aliases, so I

10   mean, I -- the reason I -- person to believe it was her.

11   Q.    All right.  But there was a number of other people

12   living there; is that right?

13   A.    There was.

14   Q.    Okay.  The same question with Paragraph 38, you talked

15   about online research for buses to Barcelona to Istanbul; do

16   you see that?

17   A.    Yes, sir.

18   Q.    Again, there's no dates there.  Do you know when those

19   searches were performed?

20   A.    I do not.  Offhand I do not, sir.

21   Q.    Okay.  And do you know how they were done?  Was it

22   typing --

23          MS. WILLIAMS:  Your Honor, I'm just going to

24   object and point out to Mr. McHugh that in both Paragraphs 35

25   and 38 there are dates in the affidavit and I would just ask

1    the witness to also follow along in the affidavit.

2              Mr. MCHUGH:  That's fine.

3              THE WITNESS:  That's my mistake, sir.  Your --

4    it's -- there are dates and I was listening to you.

5    BY MR. MCHUGH:

6    Q.    Okay.  So, the dates that are on here are the dates

7    that you determine were the dates that the searches were made?

8    A.    Yeah, there were dates, yeah.  The forensic analysis

9    saw the searches.

10   Q.    Okay.  All right.  So the first one just talks about

11   February and March; is that right?  The Paragraph 35.

12   A.    Yes.

13   Q.    Okay.  So, you were unable to be specific as to when

14   those searches occurred?

15   A.    Yes.

16   Q.    Now, in Paragraph 39, it talks about a purchasing of

17   airline tickets; do you see that?

18   A.    Yes, sir.

19   Q.    Okay.  And how did you determine that she had purchased

20   airline tickets?

21   A.    Your Honor, on the morning of March 27, I received a

22   phone call from a special agent from Homeland Security

23   Investigations who was also a joint member on our task force.

24   He informed me that Keonna purchased a ticket and the flight

25   was due to leave March 29th.

Page 26

1    Q.    So, it was based on what was told to you?

2    A.    At 6:30 in the morning, it was.  And then once I got to

3    the office I saw the hard copy printout and --

4    Q.    You actually saw the ticket?

5    A.    -- it was verified, yes.

6    Q.    Okay.  And again, correct name?

7    A.    Yes.

8    Q.    Correct date of birth?

9    A.    Yes.

10   Q.    Correct address?

11   A.    Yes.

12   Q.    Okay.  The plane was due to leave at what time or what

13   date?

14   A.    The -- the 20 -- March 29th at 6:55 p.m.  It was a US

15   Airways flight, I don't recall the flight number, but I know

16   it was to Barcelona.

17   Q.    Okay.  And you were monitoring Ms. Thomas' movements at

18   that time?  You or a part of your task force?

19   A.    Yeah, to an extent, yes.  As far as flying or

20   traveling, yes.

21   Q.    So, you weren't watching her every move outside of her

22   house?

23   A.    No, sir.

24   Q.    Okay.  Well, did you come across any information that

25   she attempted to go to the airport that day?

1   A.   She did not go to the airport March 29th that I know

2   of.

3   Q.   Okay.  The -- you talk about an ISIS manual in

4   Paragraph 37; did you see that?  ISIL, I'm sorry.

5   A.   Yes, sir.

6   Q.   Okay.  That manual, did you -- when you executed the

7   search warrant at her house, did you recover that manual?

8   A.   I did not.

9   Q.   Okay.  You searched all her electronic equipment?

10  A.   We did.

11  Q.   And any information that that manual was on?

12  A.   Not to my knowledge.

13  Q.   Do you have any knowledge that she was ever in

14  possession of this manual?

15  A.   I do not, sir.

16  Q.   Okay.  So, if she, you don't have any knowledge she was

17  in possession of it then you don't have any knowledge that she

18  would've reviewed it or been familiar with what was stated

19  inside; is that fair to say?

20  A.   I would say no, because I think with this Paragraph 37,

21  is basically, it's -- it's almost common knowledge, Your

22  Honor, within the online Jihadi community and the

23  counterterrorism circles that this is how it works; that this

24  information is out there.  This manual was basically with

25  ISIS -- put -- was already known out there and put it down on

1   paper.  These concepts, these facts were already known.  So --

2   Q.    Well, your --

3   A.    -- I would say it's not reasonable to believe that she

4   didn't know this.

5   Q.    But you had no evidence and your thorough search of her

6   house and her electronic stuff, her computers that this manual

7   was ever read or in her possession; is that fair to say?

8   A.    That's fair to say.  This specific manual; no, sir.

9   You're correct.

10  Q.    Okay.  And where was she arrested?

11  A.    At her house.

12  Q.    Okay.  And where is that?

13  A.    802 North 10th Street in Philadelphia, Pennsylvania

14  19123.

15  Q.    Okay.  And what time of day was that?

16  A.    It was in the morning between 9:00 and 10:00, Your

17  Honor, I believe.

18  Q.    Okay.  And the search -- you executed the search

19  warrant about a week before or a few --

20  A.    We did the previous Friday.

21  Q.    Okay.  Between the execution of the search -- was she

22  home at the time of the search warrant?

23  A.    She was.

24  Q.    Okay.  Same address?

25  A.    Yes, sir.

1    Q.    Okay.  Between the time of the execution of the search

2    warrant and when you arrested her, you were not aware of any

3    attempt by her to flee or leave the city in any way?

4    A.    No, sir, I was not.

5    Q.    As far as you're aware, she went about her normal

6    business?

7    A.    As far as I know.

8    Q.    Taking her kids to school?

9    A.    I don't know.  I don't think she took her kids to

10   school, because I think it was, I think there was like a

11   holiday break.

12   Q.    Okay.

13   A.    So, at that point and time --

14   Q.    But you're not aware of any attempt to flee between

15   you, the federal agency executing a search warrant at her

16   house and a week later she's not in custody; right for that

17   week?

18   A.    No.  Right.

19   Q.    And the time of the arrest?

20   A.    Yeah, yes, you're correct, sir.  I have no

21   indication --

22   Q.    And when you arrested her there was no incident?  She

23   was arrested without --

24            MS. WILLIAMS:  Objection, Your Honor.  This goes

25   way beyond probable cause.

```
 1              THE COURT:  Okay.  I'm going to sustain the
 2    objection.
 3              MR. MCHUGH:  That's all I have, Your Honor.
 4              THE COURT:  Thank you, Mr. McHugh.  Ms.
 5    Williams, any redirect?
 6              MS. WILLIAMS:  Yes.  Thank you, Your Honor.
 7                            - - -
 8                    REDIRECT EXAMINATION
 9                            - - -
10    BY MS. WILLIAMS
11    Q.    Agent, you testified that a search warrant was executed
12    at Ms. Thomas' house on March 27; is that correct?
13    A.    Yes, it was.
14    Q.    And that a laptop was seized?
15    A.    Yes, ma'am.
16    Q.    And where was that laptop is seized from?
17    A.    It was in the defendant's house, Your Honor, in the
18    defendant's bedroom in that house under the defendant's bed in
19    the house.
20    Q.    And who else stayed in the defendant's bedroom with
21    her?
22    A.    It was herself and I think there was two, like two
23    small kids.  Two, two younger children.
24    Q.    Okay.  What was the user name on the laptop again?
25    A.    Fatayat Al Khilafah.
```

1    Q.    And what was Ms. Thomas' Twitter handle?

2    A.    Fatayat Al Khilafah.

3    Q.    The content of the Twitter postings that are referenced

4    in this affidavit and other postings on those Twitter handles,

5    was there any indication on these -- the various online

6    accounts that Ms. Thomas is alleged to have used that it was

7    in fact Ms. Thomas; any photographs for example?

8    A.    Some of the facilities, Your Honor, there were

9    photographs of the defendant on some of those -- Twitter

10   handles and other online facilities.

11   Q.    And just briefly, the defense attorney asked you about

12   the designation of ISIL in May 2014, isn't it accurate that

13   that was simply adding the alias ISIL to an already existing

14   organization?

15   A.    That's correct.

16   Q.    And defense counsel also asked you about the

17   communications with the various coconspirators listed in the

18   complaint -- referencing particularly, CC One.  Although,

19   there are specific dates referenced in this affidavit, were

20   there other communications that CC One continuing beyond these

21   dates?

22   A.    There was.

23   Q.    And were there other communications with CC Two

24   continuing beyond these dates?

25   A.    There was.

1    Q.    And with CC Three?

2    A.    There was.

3    Q.    Now, turning to the allegations regarding CC Two, I'll

4    point your attention to Paragraph 26.  Defense counsel had

5    said to you isn't it true that none of CC Two's communications

6    with Ms. Thomas reference ISIL, but if you could please look

7    at Paragraph 26 and tell me, does that communication reference

8    ISIL specifically?

9    A.    That's correct, Your Honor.  I'm sorry I must have

10   misunderstood defense counsel's question, but number 26 does

11   specifically state ISIL.

12   Q.    And is it fair to say that in your examination of Ms.

13   Thomas' communications she references her support for ISIL

14   regularly and frequently between August 2013 and March 2015?

15            MR. MCHUGH:  I'm going to object, Your Honor.

16   It's a vague question in her communications.  Can we be more

17   specific?

18            THE COURT:  Can you be a little bit more

19   specific?

20            MS. WILLIAMS:  Certainly.  In the communications

21   referenced in this affidavit.

22            THE WITNESS:  Yes.

23   BY MS. WILLIAMS

24   Q.    And which terrorist group is in place in Rocca, Syria?

25   A.    ISIS or ISIL.

1    Q.    And of all the individuals living in Ms. Thomas' house

2    were the IP address resolved to who applied for a passport to

3    travel?

4    A.    Keonna Thomas.

5    Q.    Who applied for an e-Visa to Turkey?

6    A.    Keonna Thomas.

7    Q.    Did Ms. Thomas ever have a passport before February

8    2015?

9    A.    She did not.

10   Q.    Had Ms. Thomas ever attempted to travel overseas before

11   March 2015?

12   A.    She did not.

13   Q.    And in the time period referenced by defense counsel --

14   in the days leading up to Ms. Thomas' arrest, I believe you

15   testified that you did not see her attempt to go to the

16   airport; is that correct?

17   A.    That's correct.

18   Q.    Had agents already searched her home at that point?

19   A.    We did, Your Honor.

20   Q.    Had agents already seized her cell phone at that point?

21   A.    We did, Your Honor.

22   Q.    Had agents already seized her laptop at that point?

23   A.    Yes, ma'am, we did.

24   Q.    Thank you.

25         MS. WILLIAMS:  That's all I have.

1           Mr. MCHUGH:  Just one follow-up.

2                      - - -

3                   RECROSS-EXAMINATION

4                      - - -

5   BY MR. MCHUGH:

6   Q.    This, this question concerning CC Number Two, Paragraph

7   26.

8   A.    Yes, sir.

9   Q.    Where you say there was mention of ISIL?

10  A.    Yes, sir.

11  Q.    That's the -- a communication from CC Number Two to Ms.

12  Thomas; isn't that what you allege there?

13  A.    That's correct.

14  Q.    Okay.  So --

15  A.    I was just saying that it was mentioned, but --

16  Q.    So, that my question to you was, was there anything by

17  Ms. Thomas stating that she wanted to join ISIL; is that

18  right?

19  A.    Yeah.  Not on 20 -- not on --

20  Q.    It's by this other person, CC Number Two, not Ms.

21  Thomas; right?

22  A.    Correct.

23  Q.    Okay.  Just wanted to clarify that.  That's all I have.

24           THE COURT:  Thank you.

25           MS. WILLIAMS:  Thank you, Your Honor.

1          THE COURT:  After consideration of the testimony

2     presented here this afternoon, this court finds that the

3     government as established probable cause that the defendant

4     committed the crime charged.

5               Namely, that she knowingly attempted to provide

6     material support and resources, including personnel and

7     herself to a designated foreign terrorist organization to it,

8     the Islamic state of Iraq and the Levant in violation of Title

9     18, U.S.C. § 2339A(b).

10               Ms. Williams, I understand the government is

11     seeking pretrial detention.

12               MS. WILLIAMS:  We are, Your Honor.  And I have

13     submitted to the Court and defense counsel a motion for

14     pretrial detention.

15               May I ask the agent to step off the stand?

16               THE COURT:  Yes, I'm sorry.  Please.

17               THE WITNESS:  Thank you, Your Honor.

18               MS. WILLIAMS:  Thank you, Your Honor.  May I

19     approach the podium, Your Honor?

20               THE COURT:  Yes, you may.

21               MS. WILLIAMS:  Thank you.  I know the Court is

22     very familiar now with the charges in this case.  The

23     government has submitted a motion for pretrial detention, both

24     on the grounds that Ms. Thomas poses a very serious risk of

25     flight, as well as a substantial danger to the community.

 1            As the Court knows, on March 26, 2015, Ms.
 2  Thomas purchased a ticket on an international flight three
 3  days later so that she could travel to Syria to join ISIL,
 4  which is a foreign terrorist organization responsible for
 5  videotaped beheadings and other atrocities.
 6            This was not a snap decision.  It was not an
 7  unknowing decision.  Ms. Thomas had been planning this move,
 8  this travel plan for more than a year.  During this time, she
 9  had pledged support for ISIL.  Communicated with known violent
10  Jihadists about her plan to fight and martyr herself.
11            She reduced her online presence in an effort to
12  evade law enforcement and she researched indirect travel
13  routes to Syria away from the land of the Kafir, the
14  nonbelievers.
15            All of the evidence points, Your Honor, to the
16  indication that had the government not intervened with a
17  search warrant and seized evidence from Ms. Thomas' home, she
18  would've been on that flight on March 29, leaving behind two
19  young children with no warning to anyone.
20            Your Honor, I point out that because Ms. Thomas
21  is charged with providing material sport to a designated
22  foreign terrorist organization, there is a rebuttable
23  presumption in this case that no condition or combination of
24  conditions would reasonably assure her appearance as required
25  or the safety of the community and I submit that Ms. Thomas

1    cannot rebut this presumption.

2              As the Court already found there is probable

3    cause to believe that she violated 18 U.S.C. § 2339(b) and the

4    evidence in this case is strong, consisting of her own

5    personal communications traced to her by IP address and user

6    name and photographs on accounts and the fact that they were

7    found on her laptop under her bed.  As well as her purchase of

8    an airline ticket and electronic visa in her true name.

9              The total maximum penalty that Ms. Thomas faces

10   and 15 years in prison, which is well exceeded by the likely

11   sentencing guideline range, basically capping her at 15 years,

12   that is a substantial amount of time in prison which gives Ms.

13   Thomas a substantial incentive to flee.

14             In addition, Your Honor, I submit that her

15   community in Philadelphia, her ties to Philadelphia do not

16   counter that substantial incentive to flee.  Her activities

17   prove that her familial ties here do not serve as a, an

18   adequate deterrent to her criminal behavior.

19             She's unemployed.  She lives at home with a few

20   family members who appear to know nothing about her plan.  She

21   apparently intended to leave her two young children behind

22   when she fled without warning.  Therefore, these family ties

23   were insufficient to prevent her from abandoning her life in

24   the U.S.  In comparison, her real community, the online

25   community of violent Jihadists was a strong and robust

1    community.

2            She communicated with them regularly about her

3    plans.  Her plans to travel.  Her desire to join ISIL and to

4    martyr herself and these are individuals located around the

5    world who would have the desire and the ability to help Ms.

6    Thomas flee Philadelphia and evade law enforcement.

7            There was -- there was significant discussion

8    involving Ms. Thomas about the need to avoid the eyes of law

9    enforcement to indicate that that's absolutely a concern.

10           I also submit that Ms. Thomas poses a very

11   serious risk of danger to the community.  Her offense involved

12   a desire for violence and personal martyrdom in support of a

13   violent terrorist organization which alone indicates that she

14   poses a serious risk of danger to the community.

15           But in addition, Your Honor, I point out that

16   since the government executed its search warrant in this case,

17   a very close associate of Ms. Thomas has been making public

18   postings online expressing a desire to extend violence into

19   the U.S.

20           He posted on Twitter a call for martyrdom

21   operations here in the U.S. And after Ms. Thomas' arrest

22   posted on Twitter a statement indicating that no prison door

23   would be able to stand against the force of and then put on

24   their icons of a truck and an explosion.

25           Your Honor, I submit with all of these factors

1  considered together, in light -- connected with the

2  substantial sentence that Ms. Thomas would face if convicted,

3  it's clear that no condition or combination of conditions

4  would reasonably assure her presence as required in court and

5  the safety of the community.

6          Thank you.

7          THE COURT:  Thank you.  Ms. Gaughan.

8          MS. GAUGHAN:  Yes, Your Honor.  Your Honor, I

9  understand that the Court has rendered its decision and has

10 found that there is probable cause for these charges to

11 proceed to trial.  However, this court is well aware that

12 those are allegations and that Ms. Thomas, of course, does

13 have the presumption of innocence.  If a -- an indictment is

14 in fact returned in this case, Ms. Thomas will be entering a

15 plea of not guilty.

16         Unlike the government's position that Ms. Thomas

17 does not have significant ties to Philadelphia, the defense

18 would totally disagree with that.  The defense is also

19 understand ing that there is a rebuttable presumption in this

20 case, due to the nature of the charge; that there are no set

21 of combinations or conditions that could ensure the safety of

22 the community as well as her -- his or her appearance.

23 However, as the Court is equally aware, that is a rebuttable

24 presumption.  And the defense would submit that we are in a

25 position in this case to rebut that presumption.

1          Ms. Thomas is a 30-year-old woman who has had

2    absolutely no contact whatsoever with the criminal justice

3    system.  She has very strong and longstanding ties to

4    Philadelphia.  She was born and -- in Pittsburgh, but raised

5    her entire life and has spent her entire life in Philadelphia.

6    She is the mother of two children, ages seven and nine, who

7    attend school very close to the location of where she resides.

8          Your Honor, at this time I would -- she does

9    have extremely strong family support, many of whom are in the

10   courtroom in support of her today and if I could just call the

11   names of her family members and they could just rise so the

12   Court could recognize that they are here in support of their

13   family member.

14          THE COURT:  That's fine.

15          MS. GAUGHAN:  Thank you.  Ms. Debbie Thomas.

16   Your Honor, this is Ms. Keonna Thomas' mother.  Ms. Julia

17   Thomas.  That is Keonna Thomas' grandmother.  Daniella

18   McCormick [ph], that is the cousin of Ms. Thomas, who's here

19   in support of her.  Tonia Diggs [ph] and that is another

20   cousin who is here in support of her cousin Ms. Thomas, all of

21   whom are lifelong residents of the City of Philadelphia.

22          I would call to -- I would call out Mr. Charles

23   Thomas to inquire as to whether he was able to arrive yet; no?

24   I had contact with Mr. Charles Thomas, it was -- who is Mr.

25   Keonna Thomas' uncle who is fully supportive of her, was

1    running late in traffic and was trying his very best to get

2    here, but wants the Court to know that he equally supports his

3    niece.  He is a gentleman who is a working man.  He's a truck

4    driver and took off today in order to come here in support of

5    his niece.

6             Ms. Keonna Thomas' mother is also employed as a

7    home hair -- healthcare aide.  My client, Ms. Thomas, does

8    have two small children.  It's true that she has been

9    unemployed for the past couple of years, however, she has a

10   history of employment.  She did work previously as a home aide

11   as well.

12            She's actively and devoted to her children.  She

13   does take them to school.  Her youngest daughter is in first

14   grade and her eldest daughter is in fourth grade.

15            Your Honor, the -- this -- these allegations

16   were pursuant to the complaint, alleged to have begun in --

17   the year 2013.  In 2013, FBI agents went to the home of my

18   client, Ms. Thomas on North 10th Street, where she still

19   resides today and they had a conversation with her and they

20   subsequently left.

21            Ms. Thomas, after the conversation in no way

22   took any steps to leave that home to go away from her normal

23   activities in any way, shape, or form.  She remained at that

24   residency, in fact Ms. Thomas has been at that same residence

25   for 10 years.

1          Now, the government is alleging that Ms.

2     Thomas -- this talk, this chatter this -- rhetoric increased

3     and the danger increased sometime in March.  And that

4     necessitated or that -- had the agents, the FBI, who with were

5     already involved, I would submit to the Court -- and to obtain

6     a search warrant for Ms. Thomas' home.  And they executed that

7     search warrant and as the agent indicated they took several

8     pieces of property which were computers and cell phones from

9     that property and they had forensic testing done.

10          Ms. Thomas was not arrested at that time.

11    Ms. Thomas was allowed to remain in the community according to

12    the agent, initially at that point, her activities were not

13    even monitored.  So, the government themselves are alleging

14    that they did not feel Ms. Thomas was a threat to the very

15    community that she had lived in for 10 years.

16          There is allegation that there was the -- a

17    plane ticket for the date of March 29th, there was no evidence

18    whatsoever that Ms. Thomas made any steps at all to get onto

19    that plane or go to the airport.

20          Ms. Thomas was not arrested on March 29th.

21    Clearly, the government had forensic testing done on that

22    phone way before the date that Ms. Thomas was placed under

23    arrest.  She was allowed to remain within the community for

24    approximately five additional days until April 3rd, because

25    the government, I would submit to Your Honor, did not think

1    that she was a threat, because if they did they would've taken
2    her off of the street and they didn't.
3              Ms. Thomas' actions equally show that she is not
4    a flight risk.  In addition to her strong ties to the
5    community, she never at any time left her residence even in
6    the beginning of when the FBI agents came to her home in 2013,
7    after a search warrant was executed at her house, there's no
8    indication whatsoever that she did anything other than live
9    her life in her normal way.
10             She -- when she was arrested, Your Honor, she
11   was arrested at her home.  In the early morning around 11:00
12   cooking breakfast for her two children.  All indications are
13   that she is not a flight risk that there are conditions that
14   could be placed by this court to ensure the concerns of the
15   government and I'm sure the concerns of this court as to
16   safety and her appearance in court.
17             This court could order and my client's mother
18   wants her daughter to return to her home, this court has the
19   ability to place significant restraints on her liberty to have
20   her confined to her home, not just on in-home detention, Your
21   Honor, but on an actual GPS locater, because pretrial services
22   can do that.  That you have those available.  They could put a
23   GPS tracker where they would know every movement of -- that
24   this young lady makes.
25             The pretrial services could make -- go and

 1   search the -- her home at any time that would be part of her
 2   conditions of release and all of the electronics that access
 3   the Internet.  Her cell phone, her computer, were all seized
 4   by the government.

 5              There are no computers in the home in which Ms.
 6   Thomas resides with her mother, her grandmother, her two
 7   children, her younger brother, as well as an aunt.  So, the
 8   pretrial services, obviously, at any point and time could make
 9   unannounced searches to ensure that nothing untoward was going
10   on within that household.

11              They would have a locater on her to follow her
12   every step.  That would satisfy, Your Honor, I would submit
13   and that would overcome the concerns for the dangers in this
14   aspect.  And I believe again, the government's own actions in
15   this case have demonstrated that they did not feel that she
16   was a danger to the community and that she did not get
17   arrested until April 3rd when she was charged with this case.

18              For those reasons, Your Honor, I would submit
19   that the defense has in fact overcome the -- that presumption
20   and that there are conditions, astringent, astringent
21   conditions that this court could put and place on Ms. Thomas
22   to ensure the safety, continued safety of the community as
23   well as her experience for trial.

24              THE COURT:  Thank you Ms. Gaughan.

25              MS. GAUGHAN:  Thank you.

1            THE COURT:  Ms. Williams.

2            MS. WILLIAMS:  Thank you.  If I may just respond

3    briefly, Your Honor.  Just to clarify, Your Honor, after the

4    search warrant was executed, there was 24 hour surveillance on

5    the outside of Ms. Thomas' home.  In fact, her grandmother at

6    one point banged on the door of the surveillance van.  So, the

7    folks in Ms. Thomas' home knew that they were being surveilled

8    and that surveillance was solid on the outside of the home.

9    The agents could not see what was going on in the inside of

10   the home, but were watching the outside of the home to make

11   sure Ms. Thomas did not try to leave the country.

12            I also submit that there is a very big

13   difference in terms of someone's incentive to flee, between

14   having the government execute a search warrant and being

15   arrested on a criminal complaint, at which point Ms. Thomas

16   now knows what the government knows.

17            So, her recognition of how serious these charges

18   are and the risks that she's facing has completely changed the

19   ball game and Ms. Thomas' incentive to flee has now multiplied

20   dramatically.

21            I submit that a GPS on Ms. Thomas would not

22   ensure the safety of her family inside the home with her,

23   including vulnerable children and also would simply serve to

24   notify the government after Ms. Thomas has fled which does not

25   protect the safety of the community from a sudden and violent

1    act, such as the type Ms. Thomas was discussing online with

2    her associates.

3              I also submit to the Court that a search by

4    pretrial services to see if anything untoward was going on in

5    her home would not protect the safety of Ms. Thomas' family or

6    the community from a sudden violent act.  For those reasons,

7    Your Honor, I submit that Ms. Thomas should be detained

8    pending trial.  Thank you.

9              THE COURT:  All right.  Thank you, Ms. Williams.

10   Having considered the arguments of counsel and based upon my

11   review of the pretrial services report, I find that no

12   condition or combination of conditions of release will

13   reasonably assure the defendant's appearance as required or

14   the safety of the community.

15             Therefore, I order that the defendant be

16   detained pending further court proceedings and that she be

17   remanded to the custody of the United States Marshal Service.

18             MS. WILLIAMS:  Thank you, Your Honor.

19             THE COURT:  Is there anything further, counsel?

20             MULTIPLE SPEAKERS:  No, Your Honor.

21             MR. MCHUGH:  Nothing further.

22

23

24

25

1                    C E R T I F I C A T E

2

3

4              I do hereby certify that the aforesaid

5    hearing was transcribed by me from an audio recording to the

6    best of my ability; and that I am neither of counsel nor kin

7    to any party in said action, nor interested in the outcome

8    thereof.

9

10

11

12

13           WITNESS my hand and official seal this
     ____ day of ____, 2015.

14

15

16    _____

17           Janine Thomas
             Notary Public

18

19

20

21

22

23

24

25

**A**

**abandoning** 37:23
**ability** 38:5 43:19
  47:6
**able** 5:24 6:9 38:23
  40:23
**absolutely** 19:10
  38:9 40:2
**access** 44:2
**account** 7:1,11 8:4
**accounts** 31:6 37:6
**accurate** 31:12
**act** 46:1,6
**action** 47:7
**actions** 43:3 44:14
**actively** 41:12
**activities** 37:16
  41:23 42:12
**actual** 43:21
**adding** 31:13
**addition** 6:17,18
  10:6 37:14 38:15
  43:4
**additional** 42:24
**additions** 4:16
**address** 6:13,16,18
  6:20 7:12 21:11
  22:17 26:10 28:24
  33:2 37:5
**adequate** 37:18
**admission** 4:23
**adopt** 4:19
**affidavit** 4:5,17,19
  4:23 6:6 10:19,24
  12:11 13:14,20
  14:3,9,16 15:6,10
  16:23 17:6,8,11
  19:22,23,25 24:25
  25:1 31:4,19
  32:21
**aforesaid** 47:4
**afternoon** 3:3,4,10
  4:3,4 35:2
**agency** 29:15
**agent** 3:12,18 4:3
  5:10 25:22 30:11

35:15 42:7,12
**agents** 33:18,20,22
  41:17 42:4 43:6
  45:9
**ages** 40:6
**agree** 5:12 8:5,6,14
  11:16 14:2,16
  15:9,16 16:3,7
  17:7,17 18:4,21
  19:11
**agreed** 7:20
**aide** 41:7,10
**airline** 25:17,20
  37:8
**airport** 26:25 27:1
  33:16 42:19
**Airways** 26:15
**Al** 1:4 3:7 11:15,17
  24:6,7 30:25 31:2
**alias** 31:13
**aliases** 24:9
**allegation** 17:10
  42:16
**allegations** 12:18
  32:3 39:12 41:15
**allege** 10:2 14:17
  16:4 17:3 18:22
  34:12
**alleged** 31:6 41:16
**alleges** 19:14
**alleging** 42:1,13
**allowed** 42:11,23
**al-Qaeda** 1:16
**amazing** 16:10,18
**amended** 9:19
**amendment** 9:23
**America** 1:2 3:6
**amount** 37:12
**Amujahiri84@G...**
  7:6
**analysis** 22:4,22
  23:9 25:8
**answer** 9:11 20:22
**apparently** 37:21
**appear** 37:20
**appearance** 36:24
  39:22 43:16 46:13

**APPEARANCES**
  1:7
**appeared** 23:13
**application** 20:2,8
  20:12,17 21:14
  22:9
**applied** 21:2 33:2,5
**apply** 20:20
**applying** 22:6
**approach** 13:1
  35:19
**approximately**
  42:24
**April** 1:5 4:10
  42:24 44:17
**AQI** 9:19
**arguments** 46:10
**arrest** 4:6 29:19
  33:14 38:21 42:23
**arrested** 28:10 29:2
  29:22,23 42:10,20
  43:10,11 44:17
  45:15
**arrive** 40:23
**asked** 16:17 31:11
  31:16
**aspect** 44:14
**assigned** 20:19
**associate** 38:17
**associated** 10:3,4
**associates** 46:2
**ASSOCIATION**
  1:16
**assumption** 19:7
**assure** 36:24 39:4
  46:13
**astringent** 44:20,20
**atrocities** 36:5
**attempt** 5:13,15
  9:15 29:3,14
  33:15
**attempted** 26:25
  33:10 35:5
**attend** 40:7
**attention** 11:6 32:4
**attorney** 31:11
**ATTORNEY'S** 1:8

**attribute** 10:13
  13:9
**audio** 1:20 47:5
**August** 32:14
**aunt** 44:7
**author** 10:7
**available** 43:22
**aver** 10:10
**averment** 12:9
**averred** 12:6
**avoid** 38:8
**aware** 13:17 29:2,5
  29:14 39:11,23
**A/K/A** 1:4,4 3:7,7

**B**

**back** 6:10,15,18 7:8
  7:10 8:9 11:1,4
**ball** 45:19
**bandaged** 9:14
**banged** 45:6
**Barcelona** 23:10
  24:15 26:16
**based** 6:6 10:18
  12:14,17 19:9
  20:25 24:3,3 26:1
  46:10
**basically** 6:8 7:19
  9:12 22:6 27:21
  27:24 37:11
**bed** 23:8 24:5 30:18
  37:7
**bedroom** 23:7 24:4
  30:18,20
**beginning** 43:6
**begun** 41:16
**behavior** 37:18
**beheadings** 36:5
**believe** 6:16 12:16
  20:6,6,9,9 22:10
  24:10 28:3,17
  33:14 37:3 44:14
**believed** 11:14
**best** 41:1 47:6
**beyond** 29:25 31:20
  31:24
**big** 45:12

**birth** 21:9 22:15
  26:8
**bit** 18:6 32:18
**born** 40:4
**break** 29:11
**breakfast** 43:12
**briefly** 31:11 45:3
**brother** 44:7
**brought** 13:22
**browser** 23:12
**Building** 1:17
**buses** 24:15
**business** 29:6
**button** 8:4,7

**C**

**C** 1:20 47:1,1
**call** 3:17 25:22
  38:20 40:10,22,22
**called** 7:21
**camp** 12:11,13,15
  12:21,24
**capping** 37:11
**case** 3:5,8 35:22
  36:23 37:4 38:16
  39:14,20,25 44:15
  44:17
**cause** 1:6 4:23
  13:19 21:1 29:25
  35:3 37:3 39:10
**CC** 9:22 12:7 14:17
  14:22,25 15:10,24
  16:4,15,24,25
  17:5,11,18 19:15
  19:15,19 31:18,20
  31:23 32:1,3,5
  34:6,11,20
**cell** 21:25 22:2,3
  33:20 42:8 44:3
**Certainly** 32:20
**certify** 47:4
**changed** 45:18
**changes** 4:16
**charge** 5:12,13
  9:15 39:20
**charged** 35:4 36:21
  44:17

**charges** 35:22
  39:10 45:17
**Charles** 40:22,24
**chatter** 42:2
**Chestnut** 1:9
**children** 30:23
  36:19 37:21 40:6
  41:8,12 43:12
  44:7 45:23
**circles** 27:23
**city** 29:3 40:21
**clarification** 13:13
**clarify** 34:23 45:3
**clear** 13:23 39:3
**clearly** 6:10 42:21
**CLERK** 3:1,19,23
  4:1
**click** 8:6
**clicked** 8:3
**client** 41:7,18
**client's** 43:17
**close** 38:17 40:7
**coconspirator** 8:23
  9:23 10:2,15,19
  10:23 11:24 18:9
  14:2,20 18:25
**coconspirators**
  8:17 31:17
**COLLOQUY** 2:3
**combination** 36:23
  39:3 46:12
**combinations**
  39:21
**come** 8:12 16:25
  21:19 23:3 26:24
  41:4
**coming** 6:23
**committed** 35:4
**common** 27:21
**communicated**
  36:9 38:2
**communicating**
  19:15
**communication**
  15:1,12,24 16:24
  18:18 32:7 34:11
**communications**

8:16 9:2,5,22
  10:13 12:18,20
  13:14,16 15:17
  17:7,18 19:10,19
  31:17,20,23 32:5
  32:13,16,20 37:5
**community** 27:22
  35:25 36:25 37:15
  37:24,25 38:1,11
  38:14 39:5,22
  42:11,15,23 43:5
  44:16,22 45:25
  46:6,14
**company** 1:23
  12:16
**comparison** 37:24
**complaint** 4:6 5:11
  5:13,18 7:14 8:15
  8:22 9:2,8,18 10:2
  10:10 12:2 31:18
  41:16 45:15
**completely** 45:18
**computer** 22:4,22
  23:6,8 24:6 44:3
**computers** 28:6
  42:8 44:5
**concepts** 28:1
**concern** 38:9
**concerning** 9:15
  19:19 34:6
**concerns** 43:14,15
  44:13
**condition** 36:23
  39:3 46:12
**conditions** 36:24
  39:3,21 43:13
  44:2,20,21 46:12
**conducted** 23:2
**confined** 43:20
**confining** 10:14
**confiscated** 22:3
**connected** 39:1
**consideration** 35:1
**considered** 39:1
  46:10
**consistency** 19:9
**consisting** 37:4

**contact** 14:17 15:10
  40:2,24
**contacts** 10:19,22
  13:8 14:3
**contained** 14:3
**content** 19:9,10
  31:3
**continued** 44:22
**continuing** 31:20
  31:24
**conversation** 14:20
  15:4,23,24 18:21
  41:19,21
**conversations**
  15:17 16:4
**convicted** 39:2
**cooking** 43:12
**copy** 4:8 26:3
**correct** 4:12,14
  5:16 8:1 11:23
  15:5,8,19,21,22
  17:4,13,16 18:10
  18:12 19:13 21:5
  21:9,11 22:12,15
  22:17,23,24 23:25
  26:6,8,10 28:9
  29:20 30:12 31:15
  32:9 33:16,17
  34:13,22
**corrections** 4:16
**counsel** 3:12 13:2
  13:13 31:16 32:4
  33:13 35:13 46:10
  46:19 47:6
**counsel's** 32:10
**counter** 37:16
**counterterrorism**
  27:23
**country** 45:11
**couple** 41:9
**course** 17:19 39:12
**court** 1:1,23 3:1,3,5
  3:6,14,16 4:25 5:3
  5:5 11:3 13:3,21
  30:1,4 32:18
  34:24 35:1,2,13
  35:16,20,21 36:1

37:2 39:4,7,9,11
  39:23 40:12,14
  41:2 42:5 43:14
  43:15,16,17,18
  44:21,24 45:1
  46:3,9,16,19
**courtroom** 40:10
**cousin** 40:18,20,20
**crime** 35:4
**criminal** 37:18 40:2
  45:15
**Cross-Examinati...**
  2:5 5:7
**Curtis** 1:17
**custody** 29:16
  46:17

**D**

**D** 2:1
**danger** 35:25 38:11
  38:14 42:3 44:16
**dangers** 44:13
**Daniella** 40:17
**data** 12:12
**date** 14:16 21:9
  22:9,15 26:8,13
  42:17,22
**dates** 14:10 17:22
  23:18,21 24:18,25
  25:4,6,6,7,8 31:19
  31:21,24
**daughter** 41:13,14
  43:18
**day** 21:23 26:25
  28:15 47:13
**days** 13:10 17:19
  33:14 36:3 42:24
**Deactivated** 18:25
**deal** 6:3
**Debbie** 40:15
**December** 9:6 10:6
  10:18,22 13:10
  14:10,15
**decision** 36:6,7
  39:9
**defendant** 1:5,12
  21:25 31:9 35:3

46:15
**defendant's** 21:23
  24:4,4,5 30:17,18
  30:18,20 46:13
**DEFENDER** 1:16
**DEFENDERS** 1:12
**defense** 13:2,13
  31:11,16 32:4,10
  33:13 35:13 39:17
  39:18,24 44:19
**demonstrated**
  44:15
**Department** 20:19
**DEPUTY** 3:1,19,23
  4:1
**describe** 15:12
**described** 8:17,22
  8:22 10:1 12:6
  15:18 17:6
**description** 18:18
**designated** 9:9 35:7
  36:21
**designation** 9:19
  31:12
**desire** 38:3,5,12,18
**detained** 46:7,16
**detention** 3:13
  35:11,14,23 43:20
**determination** 12:4
**determine** 5:24 6:6
  25:7,19
**deterrent** 37:18
**devoted** 41:12
**difference** 45:13
**different** 8:16 10:4
  23:9
**Diggs** 40:19
**direct** 2:5 13:22
**disagree** 16:13
  39:18
**discuss** 23:1
**discussed** 12:25
**discussing** 46:1
**discussion** 8:15
  38:7
**distortion** 16:9
  18:7

**DISTRICT** 1:1,1,7
**Docket** 3:8
**door** 38:22 45:6
**drafted** 8:1
**dramatically** 45:20
**draw** 11:5
**drive** 23:8
**driver** 41:4
**due** 25:25 26:12
    39:20

— **E** —
**E** 2:1 47:1,1
**early** 43:11
**EASTERN** 1:1
**effort** 36:11
**either** 11:14
**eldest** 41:14
**electronic** 1:22
    8:15 12:18 15:1
    15:12,17 27:9
    28:6 37:8
**electronics** 44:2
**else's** 20:25
**employed** 41:6
**employment** 41:10
**enforcement** 36:12
    38:6,9
**ensure** 39:21 43:14
    44:9,22 45:22
**entering** 39:14
**entire** 40:5,5
**equally** 39:23 41:2
    43:3
**equipment** 27:9
**ESQ** 1:8,12,16
**essentially** 13:9
**establish** 6:10
**established** 35:3
**evade** 36:12 38:6
**evidence** 28:5
    36:15,17 37:4
    42:17
**examination** 2:5,6
    3:9,13,15 13:19
    30:8 32:12
**example** 31:7

**exceeded** 37:10
**execute** 45:14
**executed** 27:6
    28:18 30:11 38:16
    42:6 43:7 45:4
**executing** 29:15
**execution** 28:21
    29:1
**existing** 31:13
**experience** 44:23
**explosion** 38:24
**expressing** 38:18
**extend** 38:18
**extent** 26:19
**extremely** 40:9
**eyes** 38:8
**e-mail** 6:25 7:6
    15:13 22:6,19,22
    22:24
**e-mails** 6:18
**e-Visa** 21:21 33:5

— **F** —
**F** 47:1
**face** 39:2
**faces** 37:9
**facilities** 7:7,8 31:8
    31:10
**facing** 45:18
**fact** 10:18 22:19
    23:4 31:7 37:6
    39:14 41:24 44:19
    45:5
**factors** 38:25
**facts** 28:1
**fair** 13:11 24:2
    27:19 28:7,8
    32:12
**familial** 37:17
**familiar** 7:16 8:25
    27:18 35:22
**family** 37:20,22
    40:9,11,13 45:22
    46:5
**far** 8:8 10:7 26:19
    29:5,7
**Fatayat** 1:4 3:7

    24:6,7 30:25 31:2
**FBI** 3:12,18 41:17
    42:4 43:6
**February** 13:10
    14:13 15:25 17:24
    18:19 25:11 33:7
**federal** 1:12 21:22
    29:15
**feel** 42:14 44:15
**fight** 36:10
**fighter** 11:25 12:5
    12:7 14:25
**final** 16:23
**Finally** 9:13
**find** 6:13 14:6
    19:18 46:11
**finds** 35:2
**fine** 25:2 40:14
**first** 3:5 8:21 14:16
    14:22,25 25:10
    41:13
**five** 42:24
**fled** 37:22 45:24
**flee** 29:3,14 37:13
    37:16 38:6 45:13
    45:19
**flight** 25:24 26:15
    26:15 35:25 36:2
    36:18 43:4,13
**flying** 26:19
**folks** 45:7
**follow** 25:1 44:11
**follow-up** 34:1
**force** 20:18,19
    25:23 26:18 38:23
**foreign** 35:7 36:4
    36:22
**forensic** 22:4 23:9
    25:8 42:9,21
**form** 41:23
**forth** 5:12
**found** 6:12,20 37:2
    37:7 39:10
**fourth** 41:14
**frequently** 32:14
**Friday** 28:20
**front** 4:8

**full** 3:23
**fully** 40:25
**further** 5:1 10:19
    10:22 20:16 46:16
    46:19,21

— **G** —
**game** 45:19
**Gaughan** 1:12 39:7
    39:8 40:15 44:24
    44:25
**gentleman** 41:3
**gives** 37:12
**go** 11:1,4 18:14
    26:25 27:1 33:15
    41:22 42:19 43:25
**goes** 19:3 29:24
**going** 5:10,25 11:14
    12:10,13 24:23
    30:1 32:15 44:9
    45:9 46:4
**good** 3:3,4,10 4:3,4
    22:10
**government** 22:5
    35:3,10,23 36:16
    38:16 42:1,13,21
    42:25 43:15 44:4
    45:14,16,24
**government's**
    39:16 44:14
**GPS** 43:21,23
    45:21
**grade** 41:14,14
**grand** 6:8,14
**grandmother** 40:17
    44:6 45:5
**granted** 4:25
**greater** 19:1
**grounds** 35:24
**group** 32:24
**guideline** 37:11
**guilty** 39:15

— **H** —
**hair** 41:7
**hand** 3:19 47:12
**handle** 8:12 31:1

**handles** 31:4,10
**hard** 23:8 26:3
**healthcare** 41:7
**hearing** 1:6 3:13
    4:24 13:19 21:1
    47:5
**Heffley** 1:6 3:2
**help** 38:5
**history** 41:10
**holiday** 29:11
**home** 28:22 33:18
    36:17 37:19 41:7
    41:10,17,22 42:6
    43:6,11,18,20
    44:1,5 45:5,7,8,10
    45:10,22 46:5
**Homeland** 20:20
    25:22
**Honor** 3:4,10,14,17
    4:22 5:4 6:9,16
    7:19 11:2 12:15
    13:1,12,18 14:19
    16:9 19:5 20:13
    20:18 21:21 23:5
    24:23 25:21 27:22
    28:17 29:24 30:3
    30:6,17 31:8 32:9
    32:15 33:19,21
    34:25 35:12,17,18
    35:19 36:15,20
    37:14 38:15,25
    39:8,8 40:8,16
    41:15 42:25 43:10
    43:21 44:12,18
    45:3,3 46:7,18,20
**Honorable** 1:6 3:2
**hour** 45:4
**house** 21:23 22:1
    23:6 24:4 26:22
    27:7 28:6,11
    29:16 30:12,17,18
    30:19 33:1 43:7
**household** 44:10

— **I** —
**icons** 38:24
**identified** 10:23

11:25
**identifying** 11:17
**impending** 18:9
**incentive** 37:13,16
  45:13,19
**incident** 29:22
**include** 9:20
**including** 35:6
  45:23
**increased** 42:2,3
**indicate** 5:21 9:8
  9:18 38:9
**indicated** 42:7
**indicates** 38:13
**indicating** 38:22
**indication** 29:21
  31:5 36:16 43:8
**indications** 43:12
**indictment** 39:13
**indirect** 23:3 36:12
**indiscernible** 9:17
  22:7
**individuals** 8:16
  33:1 38:4
**information** 17:14
  21:2,18 26:24
  27:11,24
**informed** 25:24
**informs** 18:24
**ing** 39:19
**initially** 42:12
**initiated** 14:17,20
  15:10 16:4
**innocence** 39:13
**inquire** 40:23
**inside** 23:7 27:19
  45:9,22
**insufficient** 37:23
**intended** 37:21
**intent** 11:8
**intention** 16:12
**interested** 47:7
**international** 36:2
**Internet** 44:3
**interpreted** 11:8,11
**intervened** 36:16
**investigation** 19:18

20:16 21:19
**Investigations**
  25:23
**investigative** 6:9
**involved** 38:11 42:5
**involving** 38:8
**in-home** 43:20
**IP** 6:16,18,20 7:11
  7:12 33:2 37:5
**Iraq** 9:13 19:4 35:8
**ISIL** 5:16 9:8,18,20
  10:3,7,16 11:5,
  11:20 12:7 14:25
  15:19 16:8,20
  17:12,15 18:5,23
  19:8,12 27:4
  31:12,13 32:6,8
  32:11,13,25 34:9
  34:17 36:3,9 38:3
**ISIS** 9:16 10:3 11:5
  11:15,22,25 12:5
  16:13 18:9,9,11
  18:23 19:3,4,6
  27:3,25 32:25
**ISIS/ISIL** 9:13
**Islamic** 35:8
**Istanbul** 23:11
  24:15

**J**

**J** 1:16
**JAMES** 1:16
**james_mchugh@...**
  1:19
**Janine** 1:20 47:16
**January** 17:22 18:1
**Jennifer** 1:8 3:11
**jennifer.a.willia...**
  1:11
**Jihadi** 27:22
**Jihadists** 36:10
  37:25
**join** 10:16 11:5,8
  16:12 18:5,9,11
  18:23 19:6,8
  34:17 36:3 38:3
**joining** 11:12 15:19

16:8
**joint** 20:19 25:23
**JR** 1:16
**JUDGE** 1:7
**Julia** 40:16
**jury** 6:8,14
**justice** 40:2

**K**

**Kafir** 11:7 36:13
**KATHLEEN** 1:12
**kathleen_gaugha...**
  1:15
**Keonna** 1:4 3:7 4:6
  6:11,19 7:8 8:10
  8:11 14:20 15:1
  21:7,25 22:5,7
  23:6,7,7 25:24
  33:4,6 40:16,17
  40:25 41:6
**Keonna's** 24:9
**Khilafah** 1:4 3:7
  24:6,7 30:25 31:2
**kids** 29:8,9 30:23
**kin** 47:6
**knew** 10:8 45:7
**know** 6:5 12:5,12
  12:25 14:21 22:8
  24:1,4,18,21
  26:15 27:1 28:4
  29:7,9 35:21
  37:20 41:2 43:23
**knowingly** 35:5
**knowledge** 27:12
  27:13,16,17,21
**known** 6:16,18
  11:25 12:6 27:25
  28:1 36:9
**knows** 36:1 45:16
  45:16

**L**

**laboratory** 22:4
**lady** 43:24
**land** 11:7,12 36:13
**laptop** 23:24,25
  24:5 30:14,16,24

33:22 37:7
**late** 41:1
**law** 36:12 38:6,8
**leading** 33:14
**leave** 11:8 18:25
  25:25 26:12 29:3
  37:21 41:22 45:11
**leaving** 11:6,11,12
  18:8,13,14 36:18
**left** 19:24 41:20
  43:5
**let's** 14:15 15:23
  18:1,17
**Levant** 35:8
**liberty** 43:19
**life** 37:23 40:5,5
  43:9
**lifelong** 40:21
**light** 39:1
**limited** 13:19
**Lioness** 3:8
**listed** 31:17
**listening** 25:4
**little** 18:6 32:18
**live** 43:8
**lived** 42:15
**lives** 37:19
**living** 24:12 33:1
**located** 19:3 38:4
**locater** 43:21 44:11
**location** 40:7
**longstanding** 40:3
**look** 15:23 18:17
  32:6
**looked** 23:8
**looking** 12:11 14:1
  15:16 20:1 21:13

**M**

**M** 1:12
**making** 6:7 38:17
**man** 41:3
**managed** 7:8
**manual** 27:3,6,7,11
  27:14,24 28:6,6
**March** 21:24 22:10
  23:6 25:11,21,25

26:14 27:1 30:12
  32:14 33:11 36:1
  36:18 42:3,17,20
**Marilyn** 1:6 3:2
**Market** 1:24
**Marshal** 46:17
**Martin** 2:4 3:12,18
  3:21,25
**martyr** 16:11,17
  36:10 38:4
**martyrdom** 38:12
  38:20
**material** 5:15 35:6
  36:21
**maximum** 37:9
**ma'am** 30:15 33:23
**McCormick** 40:18
**McDonald** 2:4 3:12
  3:18,21,25 5:10
**McHugh** 1:16 2:5,6
  5:3,4,9 11:10 13:7
  13:15,18,22,25
  20:15 24:24 25:2
  25:5 30:3,4 32:15
  34:1,5 46:21
**mean** 6:12 11:12
  23:14 24:10
**meant** 7:18
**member** 10:7 17:11
  17:15 25:23 40:13
**members** 37:20
  40:11
**memorization**
  12:12
**mention** 11:17
  15:18 16:8,20
  18:5,22 19:12
  23:21 34:9
**mentioned** 18:10
  34:15
**message** 15:15
**MID-ATLANTIC**
  1:24
**minute** 6:1
**mistake** 25:3
**misunderstood**
  32:10

**moment** 13:2 14:21
**monikers** 6:10,15
  6:17
**monitored** 42:13
**monitoring** 26:17
**morning** 25:21
  26:2 28:16 43:11
**mother** 40:6,16
  41:6 43:17 44:6
**motion** 8:5 35:13
  35:23
**move** 4:22 26:21
  36:7
**movement** 43:23
**movements** 26:17
**moving** 7:13 11:24
  17:5
**MULTIPLE** 3:4
  46:20
**multiplied** 45:19
**M-C-D-O-N-A-L...**
  3:25

**N**

**N** 2:1
**name** 3:23,24 7:4,6
  9:14 21:5 22:12
  26:6 30:24 37:6,8
**named** 24:6
**names** 40:11
**NATIONAL** 1:23
**nature** 19:9 39:20
**necessitated** 42:4
**need** 38:8
**neither** 47:6
**never** 43:5
**niece** 41:3,5
**nine** 40:6
**nonbelievers** 11:7
  11:12 36:14
**normal** 29:5 41:22
  43:9
**North** 21:23 28:13
  41:18
**Notary** 1:21 47:17
**notify** 45:24
**number** 3:8 5:18

7:13 8:23 9:22,23
  10:2,15,20,23
  11:24 12:7 13:8
  14:2,17,22 15:1
  15:10,15,24 16:4
  16:15,24,25 17:5
  17:11,18 18:19
  19:15,15,19 24:11
  26:15 32:10 34:6
  34:11,20

**O**

**object** 20:13 24:24
  32:15
**objection** 29:24
  30:2
**obtain** 42:5
**obviously** 13:18
  22:24 24:9 44:8
**occurred** 9:5,23
  13:9 14:3 15:25
  25:14
**occurring** 10:6
**offense** 38:11
**Offhand** 24:20
**office** 1:8,12 26:3
**officer** 20:18
**official** 47:12
**Oh** 16:16
**Okay** 5:15,18,21
  6:25 7:13,22,25
  8:14,21,24 9:2,5,8
  9:15 10:1,6,12,18
  10:25 11:24 12:23
  14:1,10 15:9,16
  15:23 16:7 17:10
  17:14 18:1,13,17
  19:2,11,14 20:1
  21:13,18 22:12,24
  23:18,24 24:1,8
  24:14,21 25:6,10
  25:13,19 26:6,12
  26:17,24 27:3,6,9
  27:16 28:10,12,15
  28:18,21,24 29:1
  29:12 30:1,24
  34:14,23

**once** 26:2
**online** 6:10,15,17
  23:2 24:15 27:22
  31:5,10 36:11
  37:24 38:18 46:1
**opened** 24:5
**operated** 6:19
**operation** 16:11,17
**operations** 38:21
**OPERATOR** 1:20
**order** 41:4 43:17
  46:15
**organization** 9:9,14
  11:9,13 31:14
  35:7 36:4,22
  38:13
**organizations** 10:5
**original** 7:23 8:2
**outcome** 47:7
**outlined** 9:3
**outside** 26:21 45:5
  45:8,10
**overcome** 44:13,19
**overseas** 11:9,13
  12:6 33:10
**owned** 6:19

**P**

**PA** 1:3,10,14,18
**Page** 2:2
**paper** 28:1
**paragraph** 5:11
  11:6 12:1 14:22
  14:23 15:18 16:24
  17:8,20 18:10,12
  18:17,24 19:11,14
  20:1 21:13 23:1
  24:14 25:11,16
  27:4,20 32:4,7
  34:6
**paragraphs** 5:11
  5:18 6:3 7:14 9:3
  14:5,7,7 16:1
  24:24
**part** 12:10 23:5
  26:18 44:1
**partake** 16:17

**particular** 18:24
**particularly** 31:18
**party** 47:7
**passport** 20:2,8,9
  20:11,21 21:2
  33:2,7
**Pause** 13:5
**penalty** 37:9
**pending** 46:8,16
**Pennsylvania** 1:1
  1:25 28:13
**people** 24:11
**performed** 24:19
**period** 14:4 33:13
**person** 10:1,3,7,23
  11:17,25 12:23
  13:9 17:2,6,11,15
  22:3 24:10 34:20
**personal** 37:5
  38:12
**personnel** 35:6
**person's** 12:17
**ph** 40:18,19
**Philadelphia** 1:3,10
  1:14,16,18,25
  20:4,22 21:3
  28:13 37:15,15
  38:6 39:17 40:4,5
  40:21
**phone** 21:25 22:2,3
  22:5,6,20,23
  23:24 25:22 33:20
  42:22 44:3
**phones** 42:8
**photographs** 31:7,9
  37:6
**pieces** 42:8
**Pittsburgh** 40:4
**place** 17:18 32:24
  43:19 44:21
**placed** 42:22 43:14
**Plaintiff** 1:3,8
**plan** 36:8,10 37:20
**plane** 26:12 42:17
  42:19
**planning** 36:7
**plans** 19:16,20 38:3

38:3
**plea** 39:15
**please** 3:5,16,23
  32:6 35:16
**pledged** 36:9
**pocket** 21:25
**podium** 35:19
**point** 12:12 24:24
  29:13 32:4 33:18
  33:20,22 36:20
  38:15 42:12 44:8
  45:6,15
**points** 36:15
**poses** 35:24 38:10
  38:14
**position** 39:16,25
**possession** 27:14,17
  28:7
**posted** 5:21 38:20
  38:22
**poster** 7:23
**posting** 5:25 6:4
**postings** 5:19 8:9
  31:3,4 38:18
**posts** 6:7
**preliminary** 3:9,13
  3:15
**prepare** 4:5
**presence** 36:11
  39:4
**presented** 35:2
**presiding** 3:2
**presumption** 36:23
  37:1 39:13,19,24
  39:25 44:19
**pretrial** 35:11,14
  35:23 43:21,25
  44:8 46:4,11
**prevent** 37:23
**previous** 11:4
  19:10 28:20
**previously** 41:10
**primary** 7:5,7
**printout** 26:3
**prison** 37:10,12
  38:22
**probable** 1:6 4:23

13:19 21:1 29:25
35:3 37:2 39:10
**proceed** 3:14,16
39:11
**proceedings** 1:22
46:16
**processed** 20:9,22
**produced** 1:22
**property** 42:8,9
**protect** 45:25 46:5
**prove** 37:17
**provide** 5:15 9:16
35:5
**providing** 36:21
**public** 1:21 38:17
47:17
**purchase** 37:7
**purchased** 25:19
25:24 36:2
**purchasing** 25:16
**purposes** 4:23
**pursuant** 41:16
**put** 27:25,25 38:23
43:22 44:21
**p.m** 1:5 26:14

**Q**

**question** 8:8 10:21
11:5 16:16 20:14
20:21 24:14 32:10
32:16 34:6,16
**questions** 5:1 10:14
13:13

**R**

**R** 47:1
**raise** 3:19
**raised** 40:4
**range** 37:11
**read** 11:7 22:19,21
28:7
**real** 37:24
**reason** 24:10
**reasonable** 28:3
**reasonably** 36:24
39:4 46:13
**reasons** 44:18 46:6

**rebut** 37:1 39:25
**rebuttable** 36:22
39:19,23
**recall** 14:19,21
23:18,22,23 26:15
**received** 20:23 23:1
25:21
**recognition** 45:17
**recognize** 40:12
**record** 3:24
**recorded** 1:22
**recording** 1:22
47:5
**recover** 27:7
**Recross-Examin...**
2:6 34:3
**redirect** 2:6 30:5,8
**reduced** 36:11
**reference** 11:1 15:3
15:4 32:6,7
**referenced** 31:3,19
32:21 33:13
**references** 32:13
**referencing** 31:18
**referring** 5:10 12:1
13:14 14:5 17:19
**regarding** 19:16
32:3
**REGION** 1:24
**registered** 6:21 7:3
**regularly** 32:14
38:2
**release** 44:2 46:12
**remain** 42:11,23
**remained** 41:23
**remanded** 46:17
**removed** 23:6
**rendered** 39:9
**repeat** 10:21
**replies** 16:10
**report** 46:11
**REPORTING** 1:23
**repost** 7:19,21,21
7:24
**reposted** 8:4
**reposting** 5:25 8:9
**repostings** 7:14,18

8:9
**required** 36:24
39:4 46:13
**research** 23:2
24:15
**researched** 36:12
**residence** 41:24
43:5
**residency** 41:24
**residents** 40:21
**resides** 40:7 41:19
44:6
**resolve** 6:10,15,18
**resolved** 33:2
**resources** 35:6
**respond** 16:12 45:2
**responded** 16:18
**response** 16:14,16
16:19 17:2 18:7
**responsible** 36:4
**restraints** 43:19
**result** 21:24 22:4
**results** 6:15
**return** 43:18
**returned** 39:14
**returns** 6:14
**Retweeted** 8:7,13
**review** 46:11
**reviewed** 27:18
**rhetoric** 42:2
**right** 3:19 5:19,22
6:20 8:3,14,19,25
9:3,10,16,20
10:12,20 11:16,24
12:1,4,12 13:10
13:21 14:11,15,18
14:23 15:3,3,6,21
16:3,14,15,20,23
17:3,5,12,17,19
17:22 18:15,19
19:24 20:4,5,11
20:24 21:3,5,14
22:13,20,24 23:12
23:21 24:11,12
25:10,11 29:16,18
34:18,21 46:9
**rise** 40:11

**risk** 35:24 38:11,14
43:4,13
**risks** 45:18
**robust** 37:25
**Rocca** 12:14 32:24
**routes** 19:16,19
23:3 36:13
**running** 41:1

**S**

**safety** 36:25 39:5
39:21 43:16 44:22
44:22 45:22,25
46:5,14
**satisfy** 44:12
**saw** 20:8,8,11,12,12
25:9 26:3,4
**saying** 7:11 15:4
22:6 34:15
**says** 14:25 18:13
**scheduled** 3:8
**school** 29:8,10 40:7
41:13
**seal** 47:12
**search** 21:21,22,24
23:5 27:7 28:5,18
28:18,21,22 29:1
29:15 30:11 36:17
38:16 42:6,7 43:7
44:1 45:4,14 46:3
**searched** 27:9
33:18
**searches** 23:9,10,14
23:18 24:2,19
25:7,9,14 44:9
**seated** 3:5
**second** 8:5 15:23
18:18,18 21:15
**Secretary** 9:19
**Security** 20:20
25:22
**see** 8:12 15:2,3 16:1
17:2 18:1 19:16
20:22 24:16 25:17
27:4 33:15 45:9
46:4
**seek** 13:12

**seeking** 35:11
**seized** 30:14,16
33:20,22 36:17
44:3
**sent** 15:1 22:5
**sentence** 14:25 39:2
**sentencing** 37:11
**September** 22:11
**serious** 35:24 38:11
38:14 45:17
**serve** 37:17 45:23
**served** 21:22,23
**service** 1:22 46:17
**services** 43:21,25
44:8 46:4,11
**session** 3:1
**set** 5:12 39:20
**seven** 40:6
**Shabab** 11:15
**Shabaz** 11:18
**Sham** 19:1,1,4
**shape** 41:23
**short** 9:11
**show** 6:15 8:7 43:3
**showed** 22:5 23:9
**sidebar** 13:2
**signed** 6:13
**significant** 38:7
39:17 43:19
**simply** 12:20 31:13
45:23
**sir** 5:17,20,23 7:12
7:12 8:18 9:1,4,7
9:25 10:9,11,17
10:21,24 11:14,19
12:3 14:5,9,14
15:20 16:1,2,6,22
17:1,9,23,25 18:2
18:3,6,10,20
19:13,17,21 20:3
22:14 23:23,25
24:17,20 25:3,18
26:23 27:5,15
28:8,25 29:4,20
34:8,10
**sit** 4:14
**small** 30:23 41:8

**snap** 36:6
**solely** 12:17 13:14
**solid** 45:8
**someone's** 19:7
　45:13
**soon** 18:8,14
**sorry** 10:21 13:23
　13:24 14:7 27:4
　32:9 35:16
**sound** 1:22
**speak** 8:6
**SPEAKERS** 3:4
　46:20
**speaks** 11:6
**special** 3:12,18
　25:22
**specific** 15:4,25
　17:20 23:14 25:13
　28:8 31:19 32:17
　32:19
**specifically** 7:10
　32:8,11
**Spell** 3:24
**spent** 40:5
**sport** 36:21
**stand** 3:18 35:15
　38:23
**starts** 17:7
**state** 3:23 9:19 18:8
　18:13 20:20 32:11
　35:8
**stated** 12:20 16:15
　27:18
**statement** 38:22
**statements** 10:14
　10:15
**states** 1:1,2,7 3:6
　3:11 16:25 46:17
**stating** 34:17
**stayed** 30:20
**step** 35:15 44:12
**steps** 41:22 42:18
**street** 1:9,13,17,24
　21:24 28:13 41:18
　43:2
**strong** 37:4,25 40:3
　40:9 43:4

**stuff** 28:6
**submit** 36:25 37:14
　38:10,25 39:24
　42:5,25 44:12,18
　45:12,21 46:3,7
**submitted** 20:17
　22:3 35:13,23
**subpoena** 6:14
**subpoenas** 6:8
**subsequently** 41:20
**substantial** 35:25
　37:12,13,16 39:2
**sudden** 45:25 46:6
**Suite** 1:9,13,17,24
**support** 4:5 5:15
　9:16 32:13 35:6
　36:9 38:12 40:9
　40:10,12,19,20
　41:4
**supportive** 40:25
**supports** 41:2
**sure** 6:2,8 9:17,17
　20:7 23:15 43:15
　45:11
**surveillance** 45:4,6
　45:8
**surveilled** 45:7
**sustain** 30:1
**swear** 4:10
**swore** 21:18
**SWORN** 3:21
**Syria** 12:14,15 19:1
　19:4,4,5,5,8 32:24
　36:3,13
**system** 40:3

_____
**T**
**T** 47:1,1
**table** 3:12
**take** 16:11 21:16
　41:13
**taken** 22:2 43:1
**takes** 17:18
**talk** 5:19 8:21
　14:15 18:1 19:14
　20:1 27:3 42:2
**talked** 24:14

**talking** 6:3 7:14
　14:1 15:13,13
**talks** 14:22 19:14
　21:13 25:10,16
**task** 20:18,19 25:23
　26:18
**tell** 7:18 32:7
**telling** 12:13
**terms** 45:13
**Terrorism** 20:19
**terrorist** 9:9 10:4
　11:8,11,12 12:16
　32:24 35:7 36:4
　36:22 38:13
**testified** 30:11
　33:15
**testimony** 4:19
　35:1
**testing** 42:9,21
**thank** 4:1,25 5:2
　13:21 22:6 30:4,6
　33:24 34:24,25
　35:17,18,21 39:6
　39:7 40:15 44:24
　44:25 45:2 46:8,9
　46:18
**theme** 19:3
**thereof** 47:8
**thing** 8:11,13
**think** 9:11,11 16:9
　16:10,11 18:6
　22:10 27:20 29:9
　29:10,10 30:22
　42:25
**Thomas** 1:4,20 3:7
　4:6 5:21 6:11,16
　6:19 7:8,25 8:10
　8:12 10:13 11:17
　13:9 14:18,21
　15:2,19 16:5,8
　17:3 18:5,22 21:7
　21:25 22:8 23:2,6
　23:7,7 26:17
　30:12 31:1,6,7
　32:6,13 33:1,4,6,7
　33:10,14 34:12,17
　34:21 35:24 36:2

36:7,17,20,25
　37:9,13 38:6,8,10
　38:17,21 39:2,12
　39:14,16 40:1,15
　40:16,17,17,18,20
　40:23,24,25 41:6
　41:7,18,21,24
　42:2,6,10,11,14
　42:18,20,22 44:3
　44:6,21 45:5,7,11
　45:15,19,21,24
　46:1,5,7 47:16
**thorough** 28:5
**thought** 20:21
**threat** 42:14 43:1
**three** 8:16 17:5,18
　18:19 19:15 32:1
　36:2
**ticket** 25:24 26:4
　36:2 37:8 42:17
**tickets** 25:17,20
**ties** 37:15,17,22
　39:17 40:3 43:4
**time** 4:12 11:14
　12:25 19:4 21:16
　23:15 26:12,18
　28:15,22 29:1,13
　29:19 33:13 36:8
　37:12 40:8 42:10
　43:5 44:1,8
**Title** 35:8
**today** 4:14,20,24
　40:10 41:4,19
**told** 21:20 26:1
**Tonia** 40:19
**tools** 6:9
**total** 37:9
**totally** 39:18
**trace** 7:8 8:9
**traced** 37:5
**tracing** 7:10
**tracker** 43:23
**traffic** 41:1
**training** 12:11,13
　12:15,16,21,24
**transcribed** 47:5
**TRANSCRIBER**

1:20
**transcript** 1:6,22
**transcription** 1:22
**transgression** 9:12
**travel** 18:9 19:16
　19:20 23:3,10
　33:3,10 36:3,8,12
　38:3
**traveling** 19:5,7,8
　26:20
**trial** 39:11 44:23
　46:8
**truck** 38:24 41:3
**true** 4:12,14 16:25
　32:5 37:8 41:8
**truth** 4:10 16:9
**try** 45:11
**trying** 41:1
**Turkey** 22:7 23:3
　33:5
**Turkish** 22:5
**turned** 9:12
**turning** 32:3
**tweets** 5:22 6:23
**Twitter** 5:19 7:20
　8:4,12 15:15
　18:25 31:1,3,4,9
　38:20,22
**two** 5:11 11:25 12:7
　13:8,10 14:2,10
　14:17,23 15:1,10
　15:24 16:4,15,24
　16:25 17:19 19:15
　19:19 30:22,22,23
　30:23 31:23 32:3
　34:6,11,20 36:18
　37:21 40:6 41:8
　43:12 44:6
**Two's** 32:5
**two-day** 14:4
**type** 46:1
**typed** 23:16 24:1
**typing** 24:22

_____
**U**
**unable** 25:13
**unannounced** 44:9

**uncle** 40:25
**understand** 35:10
    39:9,19
**unemployed** 37:19
    41:9
**unique** 6:16
**United** 1:1,2,7 3:6
    3:11 46:17
**unknowing** 36:7
**untoward** 44:9
    46:4
**user** 30:24 37:5
**utilized** 6:19
**U.S** 1:8 37:24 38:19
    38:21
**U.S.C** 35:9 37:3

**V**
**vague** 32:16
**van** 45:6
**various** 23:2 31:5
    31:17
**verified** 19:19
    20:20 26:5
**verify** 12:23
**VERITEXT** 1:23
**versus** 3:6
**videotaped** 36:5
**violated** 37:3
**violation** 35:8
**violence** 38:12,18
**violent** 36:9 37:25
    38:13 45:25 46:6
**visa** 21:14 22:7,10
    37:8
**vs** 1:3
**vulnerable** 45:23

**W**
**Walnut** 1:13,17
**want** 8:21
**wanted** 16:17 34:17
    34:23
**wanting** 10:16 11:5
    18:5,23
**wants** 18:11 41:2
    43:18

**WARDLAW** 1:20
**warning** 36:19
    37:22
**warrant** 4:6 21:21
    21:22,24 23:5
    27:7 28:19,22
    29:2,15 30:11
    36:17 38:16 42:6
    42:7 43:7 45:4,14
**wasn't** 9:18 13:23
    16:12
**watching** 26:21
    45:10
**way** 7:9 16:21 18:7
    29:3,25 41:21,23
    42:22 43:9
**websites** 23:12
**week** 28:19 29:16
    29:17
**went** 22:1 29:5
    41:17
**weren't** 7:23 26:21
**West** 1:17
**we're** 14:1
**whatsoever** 40:2
    42:18 43:8
**Williams** 1:8 2:5,6
    3:10,11,16,17 4:2
    4:22 5:1 13:1,12
    13:16 20:13 24:23
    29:24 30:5,6,10
    32:20,23 33:25
    34:25 35:10,12,18
    35:21 45:1,2 46:9
    46:18
**wish** 16:25
**witness** 2:4 3:25
    11:4 13:17,24
    25:1,3 32:22
    35:17 47:12
**witnessed** 22:2
**woman** 40:1
**word** 18:9 20:23
**words** 23:16,16
**work** 41:10
**working** 41:3
**works** 27:23

**world** 38:5
**would've** 27:18
    36:18 43:1
**written** 22:22
**wrote** 8:1

**X**
**X** 2:1

**Y**
**yeah** 8:5,6 9:17
    12:6,8 15:8,8
    16:16 20:8 21:16
    22:21 23:14,14,17
    25:8,8 26:19
    29:20 34:19
**year** 36:8 41:17
**years** 37:10,11 41:9
    41:25 42:15
**young** 3:7 36:19
    37:21 43:24
**younger** 30:23 44:7
**youngest** 41:13
**YOUNGLIONESS**
    1:5

**1**
**1:23** 1:5
**10** 41:25 42:15
**10th** 21:24 28:13
    41:18
**10:00** 28:16
**11** 9:3
**11:00** 43:11
**12** 11:6
**1250** 1:9
**13** 9:3
**14** 17:24
**14th** 18:19
**15** 37:10,11
**15-417m** 3:8
**17** 13:11 14:13
    15:25
**18** 35:9 37:3
**1800** 1:24
**1801** 1:24
**19103** 1:25

**19106** 1:10,14,18
**19123** 28:14

**2**
**2** 13:10 14:10,15
**2:15-mj-00417-1**
    1:2
**20** 22:11 26:14
    34:19
**2013** 9:6 10:7,18,22
    32:14 41:17,17
    43:6
**2014** 9:9,20 13:10
    14:10,15 31:12
**2015** 1:5 4:10 13:11
    14:13 15:25 17:22
    17:24 18:1 22:11
    32:14 33:8,11
    36:1 47:13
**215** 1:10,14,18
**23** 14:7
**23rd** 22:9
**2339A(b)** 35:9
**2339(b)** 37:3
**24** 45:4
**25** 12:1 14:7,23
    15:15,18
**25th** 22:10
**26** 32:4,7,10 34:7
    36:1
**27** 14:7,7 15:18
    25:21 30:12
**27th** 21:24 23:6
**29** 17:8,20 36:18
**29th** 25:25 26:14
    27:1 42:17,20

**3**
**3** 2:3,5 4:10
**3rd** 42:24 44:17
**30** 2:6 17:22 18:1
    20:1
**30-year-old** 40:1
**31** 17:20 18:17,24
**32** 19:14
**33** 14:8 16:1
**34** 2:6 14:8 16:1,24

**35** 2:3 23:1 24:24
    25:11
**36** 21:13
**37** 27:4,20
**38** 24:14,25
**39** 25:16

**5**
**5** 2:5
**540** 1:13,17

**6**
**6:30** 26:2
**6:55** 26:14
**601** 1:13,17
**615** 1:9

**7**
**71.23.230.0** 6:17

**8**
**802** 21:23 28:13
**861-8474** 1:10

**9**
**9** 1:5
**9:00** 28:16
**928-0520** 1:18
**928-1100** 1:14