MMB

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 15-171 |
| KEONNA THOMAS,<br>    a/k/a "Fatayat Al Khilafah,"<br>    a/k/a "YoungLioness" | :<br><br>: | FILED UNDER SEAL |

**GOVERNMENT'S MOTION FOR ADDITIONAL
SECURITY MEASURES OUTSIDE THE COURTROOM**

The United States of America, by and through its counsel, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Jennifer Arbittier Williams, Assistant United States Attorney for that district, respectfully requests that the Court grant its Motion for Additional Security Measures Outside the Courtroom.

**A.    Background**

On April 23, 2015, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment charging Keonna Thomas with providing material support and resources to the Islamic State of Iraq and the Levant (ISIL), a designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B. Thomas is alleged to have pledged and incited support for ISIL, communicated with known violent jihadists about her plan to fight with ISIL in pursuit of martyrdom, and purchased a ticket on an international flight so that she could travel to Syria and join ISIL. Had the government not intervened with a search warrant of Thomas's home, all of the evidence indicates that she would have fled the country on March 29, 2015, as planned, leaving behind her two young children in order to "join our brothers in the front lines" and "do Istishadee [martyrdom operations]" abroad.

After the government executed a search warrant at Thomas's home, her very close associate posted on Twitter a call for martyrdom operations in the United States. And when the government arrested Thomas shortly thereafter, the same associate posted on Twitter a number of statements expressing outrage about the arrest, as well as this statement (followed by images of a truck and explosion): "no prison door will be able to stand against the force . . . ." Thus, the government has strong reason to believe that there may be an outside threat to proceedings relating to this case.

Based on the above, the government is filing this motion to request that certain additional security measures be implemented outside of the courtroom during every court proceeding relating to this case.

**B.  Discussion**

Trial judges "have wide discretion in maintaining courtroom security and in protecting their processes from outside interference." United States v. Scarfo, 850 F.2d 1015, 1024 (3d Cir. 1988). In this case, the government respectfully requests that the Court order the following security measures to be implemented outside the courtroom, in order to protect the security of the courtroom and the integrity of the proceedings[1]:

   a. The United States Marshal Service shall require all persons to show identification prior to entering the courtroom and shall record the name, address, and birth date of every such person;

   b. The United States Marshal Service shall require all persons to turn off all cellular telephones and electronic devices and to leave such items with the

---

1  The government asks that an exception be made for Your Honor's staff, for government counsel and case agents, for defense counsel, and for the jurors in this case.

       security screening station in the courthouse lobby prior to entering the courtroom; and

  c. The United States Marshal Service shall set up and operate a magnetometer device outside the courtroom and shall require all persons to pass through the magnetometer prior to entering the courtroom.

These security measures are appropriate in this case because they are substantially justified by the circumstances, they do not prejudice the defendant, and they would act as a reasonable deterrent to outside interference and threats to these proceedings.

      **1. The Proposed Security Measures Do Not Violate Defendant's <u>Right to a Fair Trial Because They Do Not Prejudice the Defendant</u>.**

Some defendants have attempted to challenge courtroom security measures on the ground that they infringe upon the right to a fair trial.   Holbrook v. Flynn, 475 U.S. 560 (1986). Such a challenge would not succeed in this case, because the proposed security measures would be neither inherently prejudicial nor actually prejudicial towards the defendant in the eyes of the jury.

When a "fair trial" challenge is raised to security measures, a court must engage in a three-part analysis.   First, the court must "look at the scene presented to jurors" and determine whether the sight is "so inherently prejudicial as to pose an unacceptable threat to a defendant's right to a fair trial."   Id. at 572.   Second, even if security measures are not inherently prejudicial, the court must determine whether the security measures would actually prejudice members of the jury.   Id.   And third, where prejudice is found, the court must scrutinize the measures to determine if they are necessary to further an "essential state interest,"

such as courtroom security and the integrity of the judicial process.  Estelle v. Williams, 425 U.S. 501, 504 (1976).

In this case, the proposed security measures are not inherently prejudicial, because they are proposed for implementation <u>outside</u> the courtroom.  As held consistently by courts to have considered the issue, security measures outside of a courtroom do not lead to the necessary inference that the defendant is dangerous.  To the contrary, such measures lead to the inference that there may be a threat of disruption from outside the courtroom, but not from the defendant herself.  Thus, they are not inherently prejudicial.  See, e.g., Hayes v. Ayers, 632 F.3d 500, 522 (9th Cir. 2011) (courtroom entry-screening procedures are not inherently prejudicial, because they suggest that the security is designed 'to guard against disruptions emanating from outside the courtroom,'" and not from the defendant); Hellum v. Warden, 28 F.3d 903, 908 (8th Cir. 1994) ("Such measures as additional security personnel and the use of metal detectors are even less prejudicial because of 'the wider range of inferences that a juror might reasonably draw' from their use."); see also Holbrook, 475 U.S. at 569 (holding that the presence of guards at a defendant's trial is not inherently prejudicial, because it need not be interpreted as a sign that defendant is particularly dangerous or culpable, but instead may indicate that the officers are guarding against disruptions emanating from outside the courtroom); see also Scarfo, 850 F.2d at 1024-25 (citing cases other circuits and concluding that the "use of metal detectors positioned directly outside the doors of the courtroom in which the defendant is being tried have been approved").

For the same reason, the proposed security measures would not actually prejudice the jury, because they would not cause the jury to presume that the defendant is posing a threat to

4

the proceedings or courtroom. Further, any possible risk of prejudice could be resolved by a "curative instruction advising the jury to disregard" the security measures when assessing the testimony. Woods v. Thieret, 5 F.3d 244, 249 (7th Cir. 1993). [2]

And finally, the security measures are appropriate and reasonable to maintain "courtroom security and protect courtroom processes from outside interference." Scarfo, 850 F.2d at 1024. As set forth above, the government has a good faith basis for concluding that a risk exists of an outside threat to these proceedings, and the proposed measures are reasonably designed to address that threat while minimizing any possible impact on the jury. Therefore, the proposed security measures do not violate the defendant's right to a fair trial.

### 2. The Proposed Security Measures Do Not Violate Defendant's Right to a Public Trial Because They Are Supported by a Substantial Justification.

Some defendants have also attempted to challenge courtroom security measures on the ground that they interfere with the right to a public trial. However, when courtroom attendees are permitted to enter a courtroom upon submitting to those security measures, this "partial" restriction on trial attendance is permissible as long as there is a "substantial" reason justifying it. United States v. Smith, 426 F.3d 567, 572-73 (2d Cir. 2005) ("substantial" reason justified courtroom security measures that barred entry only by would-be spectators opting not to submit written identification); United States v. DeLuca, 137 F.3d 24, 33-35 (1st Cir. 1998) (same); United States v. Brazel, 102 F.3d 1120, 1155-56 (11th Cir. 1997) (same). A district court's decision regarding the need for security measures in such circumstances receives much deference. DeLuca, 137 F.3d at 34.

---

[2] Importantly, any "fair trial" objection by the defense has no factual applicability during the pre-trial stage, because all pre-trial proceedings are conducted in the absence of a jury. Holbrook, 475 U.S. at 572 (focusing "fair trial" analysis on the jury's perception).

5

In this case, a substantial justification clearly exists. Thomas's very close associate has posted online statements indicating that he may pose a threat to proceedings related to this case. Requiring attendees to pass through a metal detector will help the U.S. Marshal Service detect and eliminate dangerous materials from the courtroom which may have been stored within the courthouse or entered via means other than the front-door metal detectors. Requiring attendees to identify themselves by identification card, name, address, and birth date is appropriate when there are security concerns, for it is a "common sense" conclusion that "[s]omeone who is forced to identify themselves is less likely to pose a threat than someone who is allowed to walk into the building without any [identification] at all." Smith, 426 U.S. at 573. And finally, the elimination of cellular telephones and electronics from the courtroom eliminates the risk of photographs being taken and distributed of courtroom staff and government personnel (who might be on the receiving end of any threatening behavior), and also decreases the risk of real-time electronic communication to those on the outside of the courtroom who may wish to harm those involved.

Taken together, these measures would be a reasonable deterrent against would-be troublemakers, for a "spectator-screening procedure . . . [would] plainly alert[] would-be spectators that their courtroom conduct would be closely monitored, thereby efficiently focusing the desired deterrent effect principally upon those most likely to impede a fair and orderly trial – particularly [defendant's] criminal associates." DeLuca, 137 F.3d at 35 n.9.

Importantly, this court need not wait until an actual attempt to influence or harm the proceedings occurs. Id. at 35. Rather, this Court has wide latitude to decide what security measures are appropriate and reasonable in light of a possible security threat. "These difficult

6

judgments are matters of courtroom governance which require 'a sensitive appraisal of the climate surrounding a trial and a prediction as to the potential security or publicity problems that may arise during the proceedings[.]'" Id. (quoting United States v. Childress, 58 F.3d 693, 702 (D.C. Cir. 1995)).

### C.    Motion to Seal

The government submits that impounding all papers and docket entries relating to this Motion for Additional Security Measures be filed under seal in order to limit any possible resulting prejudice to the defendant, and also to limit any advance or widespread notice to the public about the security measures being put in place. A proposed form of sealing order is attached.

### D.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court order that the following security measures be implemented for all courtroom proceedings related to this case:

   a. The United States Marshal Service shall require all persons to show identification prior to entering the courtroom and shall record the name, address, and birth date of every such person;

   b. The United States Marshal Service shall require all persons to turn off all cellular telephones and electronic devices and to leave such items with the security screening station in the courthouse lobby prior to entering the courtroom; and

   c. The United States Marshal Service shall set up and operate a magnetometer

7

device outside the courtroom and shall require all persons to pass through the magnetometer prior to entering the courtroom.

A proposed form of Order is attached.

                                        ZANE DAVID MEMEGER
                                      UNITED STATES ATTORNEY

                                      JENNIFER ARBITTIER WILLIAMS
                                      Assistant United States Attorney

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Additional Security Measures Outside the Courtroom was served by e-mail on the following defense counsel:

> Kathleen Gaughan, Esquire
> James McHugh, Esquire
> Defender Association Of Philadelphia
> Federal Court Division
> The Curtis Center Building
> 601 Walnut Street, Suite 540 West
> Independence Square West
> Philadelphia, PA 19106

JENNIFER ARBITTIER WILLIAMS
Assistant United States Attorney

Date: 7-22-15