UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,    )  15-CR-171-1
    )
    )
    vs.    )
    )
    )
KEONNA THOMAS,    )
    )  Philadelphia, PA
    )  May 12, 2016
    Defendant.    )  10:01:49 a.m.


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MICHAEL M. BAYLSON
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:    JENNIFER WILLIAMS, ESQUIRE
    ASSISTANT UNITED STATES ATTORNEY
    UNITED STATES ATTORNEY'S OFFICE
    615 Chestnut Street
    Suite 1250
    Philadelphia, PA  19106


For the Defendant:    ELIZABETH TOPLIN, ESQUIRE
    KATHLEEN GAUGHAN, ESQUIRE
    FEDERAL DEFENDERS ASSOCIATION
    The Curtis Center
    Suite 540 West
    Philadelphia, PA  19106


Audio Operator:    JANICE LUTZ


Transcribed by:    DIANA DOMAN TRANSCRIBING, LLC
    P.O. Box 129
    Gibbsboro, New Jersey  08026
    Office:  (856) 435-7172
    Fax:     (856) 435-7124
    Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript produced by transcription service.

<u>I N D E X</u>

<u>PAGE</u>

Appearances....................................3

<u>ARGUMENT</u>

    By Ms. Toplin............................4/18

    By Ms. Williams.........................13/20

<u>THE COURT</u>:

Decision.....................................23

<u>SCHEDULING</u>...................................24


<u>EXHIBITS</u>:                                <u>IDENT</u>.

GOV-A  Letter dated 8/26/15...................14

GOV-B  Letter date 2/29/16...................14

1        (The following was heard in open court at 10:01 a.m.)

2             THE COURT:  Please be seated.  Okay.  Good morning.

3             MS. WILLIAMS:  Good morning, Your Honor.

4             MS. TOPLIN:  Good morning, Your Honor.

5             THE COURT:  Okay.  We are here for a pretrial

6  hearing in United States versus Keonna Thomas, Criminal Number

7  15-171.  And, we have present counsel, Jennifer Williams, here

8  for the United States.

9             MS. WILLIAMS:  Good morning, Your Honor.

10            THE COURT:  And, for the defendant, Ms. Elizabeth

11  Toplin and Kathleen Gaughan.  And, the defendant is here.

12  And, Mr. Andrew Dalack, is that right?

13            MR. DALACK:  Yes, Your Honor.

14            THE COURT:  Okay.  Good after -- Good morning,

15  everyone.

16        All right.  I scheduled this hearing mainly to

17  discuss the Bill of -- the motion for a Bill of Particulars

18  which has been filed by the defendant.  And, there has been a

19  response by the United States and a reply brief filed by the

20  defendant.  And, then when we are done that, we are going to

21  discuss the scheduling issues.

22        Now, here's the question I have for defense counsel

23  concerning the Bill of Particulars.  The Government states in

24  its response that the Government has provided a great deal of

25  information.  The warrant in support of -- rather the

1    affidavit in support of the arrest warrant was very detailed.

2    And, the Government has also supplied a great deal of

3    information -- a great deal of evidence that it intends to

4    introduce for trial.  And, they represent it includes all of

5    the conversations with the defendant and material of that

6    nature.  Is there any dispute about that from the defense

7    side, Ms. Toplin or Ms. Gaughan?

8         MS. TOPLIN:  Your Honor, I would agree that the

9    Government has provided us with a significant amount of

10   information.  I don't know if I would necessarily agree that

11   the Government has provided us with a significant amount of

12   evidence against Ms. Thomas.

13        THE COURT:  Well, maybe everything is too broad a

14   word.  But is there anything specifically that you think the

15   Government -- aside from answering the Bill of Particulars,

16   which we will get to -- but do you think there is any specific

17   evidence that the Government has in its possession, custody or

18   control to which you are entitled that you have not received?

19        MS. TOPLIN:  Well, yes.

20        THE COURT:  What is that?

21        MS. TOPLIN:  We actually -- it's a completely

22   separate issue, Your Honor, but I will advise the Court at

23   this time, we filed a supplemental discovery request asking

24   specifically for surveillance methods and the like used in

25   this case.

1          Ms. Williams has responded to that by way of letter.

2          THE COURT:  Could you pull the microphone closer,

3    please.

4          MS. TOPLIN:  Certainly.

5          THE COURT:  When you say certain -- do you mean

6    surveillance methods?

7          MS. TOPLIN:  Yes.

8          THE COURT:  What do you mean by that?

9          MS. TOPLIN:  I mean telephone tracking, Internet

10   tracking, quite simply --

11         THE COURT:  You mean -- by that you mean you want to

12   know -- you want to see memos or documents that relate

13   specifically to this case or do you want to see strategies or

14   policies or things of that nature?

15         MS. TOPLIN:  Well, no, no, no.  Methods used

16   specifically in this case, not policies.  Actual surveillance

17   methods used.

18         THE COURT:  Well, unless they are documented in a

19   piece of paper or on a website or something like that, then it

20   would have to be discussions between agents working on the

21   case or investigating the case.  Is that -- can you be more

22   specific?

23         MS. TOPLIN:  Yes.

24         MR. DALACK:  If I may, Your Honor, we submitted a

25   supplemental discovery request seeking any information

1    concerning warrantless surveillance that the Government may

2    have employed in this case.  Particularly, surveillance

3    pursuant to Foreign Intelligence Surveillance Act, Section 702

4    and 704, in addition to any surveillance conducted under

5    executive order 12 triple three.

6            MS. TOPLIN:  And, Your Honor, in her response Ms.

7    Williams essentially indicated that anything that we were

8    entitled to we've been provided with.  However, it was our

9    intention subsequent to this hearing, to follow up with a

10   motion to compel that discovery, quite simply because there

11   may be pretrial motions that need to be filed based on how the

12   Government obtained certain information.

13            And, we are not adequately prepared to address that

14   because we don't know how they obtained certain information.

15   So --

16            THE COURT:  I don't know who is hammering, but it's

17   annoying.

18            MS. TOPLIN:  That's a completely separate issue --

19            THE COURT:  Let's just go off the record.  Can we

20   get any -- Janice

21       (Off record/on record)

22            MS. TOPLIN:  -- that doesn't go to the Bill of

23   Particulars.  The Bill of Particulars actually goes to

24   information that the Government has already provided.

25            THE COURT:  Right.  Okay.  So let's stick to the

1    Bill of Particulars because that's -- (hammering in

2    background) could one of the marshals -- all right, thank you.

3    See if you can get that stopped.  All right.  Go ahead.

4              MS. TOPLIN:  Okay.  So, Your Honor, not only does

5    the Indictment in the instant case track the language of the

6    statute and the Government sort of has consistently offered

7    that Ms. Thomas attempted to provide material support and

8    resources, including herself as personnel, but that's really

9    all that the Government has relied on and consistently relies

10   on.  And, while they have given us information about

11   conversations that occurred, and they put snippets of those

12   conversations, all be (sic) them out of context in their

13   responses to our filings, they don't point to specific

14   conduct.

15             In the denial in the Bill of -- I'm sorry, in the

16   denial of the motion to supp -- motion to dismiss, the Court

17   actually provided in the footnote on page 3 that, "Although

18   Thomas is correct in arguing that the statute does not

19   prohibit being a member of one of the designated groups or

20   vigorously promoting and supporting the political goals of the

21   group, fighting and martyring oneself to benefit FTO clearly

22   goes beyond mere membership promotion, it crosses the line

23   into material support if done under the FTO's direction or

24   control."

25             Okay.  So the Government has never provided us or

1    has pointed to nothing in what they have provided us that

2    indicates exactly what the Court put its finger on here which

3    is --

4              THE COURT:  Well -- go ahead.

5              MS. TOPLIN:  -- which is quite simply that Ms.

6    Thomas' conduct goes beyond what's legal and permissible.

7              THE COURT:  Well, they've delineated, according to

8    the briefs -- I mean I haven't reviewed any of the underlying

9    discovery myself, I don't see a need to to rule on this

10   motion, but they've delineated in some detail what -- the

11   contents of the evidence that they have produced so far.  And,

12   the conduct that the defendant that -- alleged conduct that is

13   described is that she bought a round trip ticket to go to

14   Barcelona, Spain.  She looked into bus travel from Barcelona

15   to Turkey, or had an email where she had some intent to to

16   that.

17              And, there is an exchange of emails with this other

18   individual who you characterize as some kind of flirtation and

19   the Government characterizes as conspiratorial in terms of

20   being interested in martyrdom.  I mean, that's the dispute

21   here.  And, it seems to me that that is an issue for the jury

22   and that you're sort of -- and if I'm wrong about this I want

23   you to correct me -- but it's like you -- it's sort of like

24   you want the Government to tell you now how they're going to

25   argue this case to the jury.  You want to know what their

1   theory is and they are resisting telling you that in a Bill of

2   Particulars, but they certainly told you what evidence they

3   have.  And I -- we all know the Government is under

4   obligations to produce any exculpatory material or any

5   material that would be important or material to impeach one of

6   their witnesses.

7            I assume, Ms. Williams, you've done all that, right?

8            MS. WILLIAMS:  Yes, Your Honor.

9            THE COURT:  All right.  So with that out of the way

10   or at least according to Ms. Williams it is out of the way,

11   I'm at a little bit of a loss of what you think you're

12   entitled to from the Government by way of a Bill of

13   Particulars, --

14            MS. TOPLIN:  Your Honor, --

15            THE COURT:  -- unless it's, you know, what the

16   theory of the case is.

17            MS. TOPLIN:  -- it's not what's the theory of the

18   case, but what specific actions on the part of Ms. Thomas are

19   being identified by the Government as illegal, because they --

20            THE COURT:  Well, as I understand -- yes, well, let

21   me -- just answer what I said.  They gave you -- their

22   allegations according to the briefs that they gave you is that

23   she had this discussion on email; that she bought a round trip

24   plane ticket; she had further discussions about getting to

25   Turkey; and she had some exchanges about possible martyrdom,

1    which they will ask the jury from -- refer to that, that Ms.

2    Thomas was interested in being a suicide bomber.

3           I mean, that's -- those words were not used, but it

4    doesn't take a lot of imagination for a lawyer to want to

5    argue that theory to a jury.

6           MS. TOPLIN:  Well, okay.  So, Your Honor, I think

7    that the problem that we have is, in fact, having reviewed the

8    discovery, it's actually -- it's devoid of any concrete plans

9    on the part of Ms. Thomas to -- and I will track the language

10   of the statute here -- manage, supervise, otherwise direct any

11   ISIL activities, which is what is required under the Material

12   Support Statute.

13          The only discernible allegation supported by the

14   discovery is Ms. Thomas' alleged or purported desire to marry

15   someone, maybe an ISIL fighter.  And, if that is the extent of

16   the allegation then fine, then we'll go to trial.  Our

17   concern, Your Honor, is just -- is more than is just that

18   we're unclear.

19          How can we have concrete discussions about Ms.

20   Thomas?  The Government has provided us a range of dates, an

21   extensive range of dates.  And, they said, during this time

22   Ms. Thomas engaged in these -- in activities were an attempt

23   to provide material support.  How can we have concrete plans

24   with Ms. -- concrete discussions with Ms. Thomas about whether

25   or not to resolve any of this by way of non-trial if we can't

1    focus on what the Government is specifically claiming they

2    did.

3          And, furthermore, how can we have a just as basic

4    conversation with her about whether or not the Government's

5    case is based on fear mongering and maybe this is not a case

6    to put before a jury, but maybe this is a case just to put

7    before the judge.

8          THE COURT:  Well --

9          MS. TOPLIN:  Because we don't know on what the

10   Government is focusing.  It creates a problem in terms of

11   double jeopardy, because the Government is relying sort of on

12   an amorphous --

13         THE COURT:  Well, you don't get to a double jeopardy

14   issue until your client has been tried and either convicted or

15   acquitted and then the Government tries to prosecute her

16   again.

17         MS. TOPLIN:  Of course, but we have to consider

18   that, Your Honor.

19         THE COURT:  Well, but -- yes, but that is something

20   that depends on what evidence the Government introduces at

21   trial.  And, I presume that the evidence is going to be

22   basically what they've already produced to you.

23         MS. TOPLIN:  I think that the problem, Your Honor,

24   is that the Court has to presume, just as the agent did when

25   he testified in front of the Grand Jury.  Everything was based

1   on presumptions, presumptions, presumptions.  And, all we are

2   simply asking is, before Ms. Thomas begins a trial, that she

3   understands with what actions specifically she is being

4   charged.

5          THE COURT:  Well, she's not -- you know, the charge

6   is in the Indictment.  And, we all know that -- well, let me

7   put it this way, I've already ruled that the Indictment is

8   sufficient to satisfy the statute and to put her on notice.  I

9   mean, that was your -- basis of your motion to dismiss, which

10  I denied with a written opinion.

11          And, I mean, I think your filing a motion for a Bill

12  of Particulars is an appropriate strategy in representing your

13  client, don't get me wrong, but given all the discovery which

14  the Government contends it has produced, and I now hear that

15  there is an issue as to whether you're entitled to more, but

16  I'm not ruling on that right now, I would -- I'm having

17  trouble, you know -- let me go back.

18          You know, sometimes in some conspiracy cases, we

19  know that the Government has to allege what is called manner

20  and means, that is by which a defendant carried out

21  conspiratorial scheme.  And, the Government often does that.

22  Now, there are some statutes that require that and some that

23  do not require that.  And, where a statute doesn't require it,

24  the Government doesn't do it.

25          And, the Third Circuit has upheld a prosecution and

1    a conviction for a conspiracy where the Government did not

2    list manner and means in the Indictment because the statute

3    didn't require it.

4              Now, I think -- are you sort of making that same

5    argument here that the Government is required or I should

6    require the Government list the manner and means in which the

7    scheme that is alleged in the Indictment was carried out?  Is

8    that more of what you want?

9              MS. TOPLIN:  Yes.

10             THE COURT:  All right.  Okay.  Now, let me turn --

11   now that we've got that clarified, let me turn it over to Ms.

12   Williams.  Good morning.

13             MS. WILLIAMS:  Thank you, Your Honor.  I do the

14   Court really hit the nail on the head in questioning the

15   defense, because the motion for a Bill of Particulars does

16   read a lot like a motion to dismiss or a motion arguing that

17   the Government won't be able to sustain it's burden.  But that

18   is, now that the Court has denied the motion to dismiss, it is

19   an issue for the jury or an issue to be argued on a Rule 29

20   motion after the Government presents its case in chief,

21   because the bottom line is the Indictment is sufficient and

22   the Government has provided all necessary detail for the

23   defense to know what it is entitled to know going into the

24   trial.

25             I do have here for the Court, so that the Court does

1    not have to presume, a copy of the Government's two discovery

2    letters.  This does not include a copy of the letter

3    responding to the defendant's most recent discovery request

4    since that is still pending.  But I have here Government's

5    letter dated August 26th, 2015, which I'll mark as

6    Government's Exhibit A and a letter dated February 29th, 2016,

7    which I'm mark as Government's Exhibit B and I'll hand a copy

8    of each to the defense even though they do have them.

9            THE COURT:  Okay.

10           MS. WILLIAMS:  May I approach, Your Honor?

11           THE COURT:  Yes.  Thank you.  Okay.  Well, I assume

12   you are familiar with these letters.

13           MS. TOPLIN:  Absolutely, Your Honor.

14           THE COURT:  All right.

15           MS. WILLIAMS:  So as the Government laid out in its

16   response to the defendant's motion, the Government has not

17   only provided extensive discovery and laid out its case in

18   great detail in the affidavit attached to the complaint, but

19   the discovery was provided in a very organized way.  The

20   Government highlighted pertinent portions.  The Government

21   printed out pertinent portions of what's contained on disk and

22   on hard drive in order to help guide the defense in reviewing

23   the evidence so that the defense wouldn't be overwhelmed by a

24   mountain of evidence.

25           And, we even met with defense counsel to discuss

1    additional things that are part of public discourse just to

2    talk about who the unidentified co-conspirators are in the

3    complaint, so that the defense would really be able to process

4    the Government's evidence without much effort.

5            A Bill of Particulars is not the appropriate vehicle

6    for arguing whether or not the Government can sustain its

7    burden.  A Bill of Particulars is really more in the nature of

8    an Indictment in that it is not designed to provide the

9    defendant with the fruits of the Government's investigation

10   but is rather designed to really limit what the Government's

11   evidence is permitted to be at trial.

12           In this case it is unnecessary not only because of

13   the discovery productions and the complaint, but also because

14   the statutory definitions are very specific.  The defense

15   argues that they can't know how Ms. Thomas provided herself as

16   personnel or whether the Government is able to prove that she

17   did anything other than wish to travel to a particular country

18   and wish to marry a particular person.  But the statute lays

19   out very clearly what the Government's burden is and what the

20   Government is required to prove in order to prove that Ms.

21   Thomas provided material support in the form of personnel.

22           Just to correct something defense counsel said, the

23   Government is not required to prove that she managed,

24   supervised or directed the operations of ISIS.  The Government

25   can also sustain its burden by proving that she worked under

1    that terrorist organization's direction or control, or

2    attempted to so work.  And, the definition of -- that's

3    included in the definition of personnel.  And, the cases have

4    held that Bills of Particulars are not appropriate when an

5    Indictment says exactly what our Indictment says.  And, that

6    it specifies that she attempted to provide material support in

7    the form of personnel.  That is the detail to which the

8    defense is entitled.

9              THE COURT:  Well, one of the questions the Gov --

10   the defense raises, if I understand it correctly, is that when

11   you use that term personnel, are you referring to Ms. Thomas

12   herself or are you referring to somebody else or all of the

13   above?  Are you willing to make a statement on that issue?

14             MS. WILLIAMS:  The Indictment actually specifically

15   charges that it was Ms. Thomas providing herself as personnel

16   and the complaint affidavit makes that very clear, that she

17   bought a ticket and intended to travel.

18             THE COURT:  Well, there you have the answer to one

19   of your questions.  Now, are you limiting it to Ms. Thomas

20   herself or might you introduce evidence that the term

21   personnel also refers to somebody else?

22             MS. WILLIAMS:  Well, the Indictment says that she

23   attempted to provide material support and resources, including

24   herself as personnel.

25             THE COURT:  Right.  So that leaves the option that

1    there may have been somebody else who was being provided as

2    personnel, is that correct?

3              MS. WILLIAMS:  Well, it leaves the option that there

4    might be other forms of material support and resources but

5    certainly the complaint lays it out as it was Ms. Thomas

6    preparing to join an ISIL fighter by traveling to Syria to

7    join him in pursuit of martyrdom.

8              THE COURT:  Right.  Okay.

9              MS. WILLIAMS:  And, there is no evidence that the

10   Government is holding back.  It's all been provided to Ms.

11   Thomas.  It's all been organized for her.  The complaint lays

12   it out in chronological order highlighting the most important

13   conversations.

14             THE COURT:  Right.

15             MS. WILLIAMS:  So there is no hiding the ball here,

16   Your Honor.

17             THE COURT:  All right.  Well, I learned today now

18   there is an embryonic discovery dispute that might be

19   resolved.  Is there any point discussing it now or should I

20   wait for you to continue -- complete your discussions and if

21   necessary have a, you know, ruling on a motion to compel?

22             MS. TOPLIN:  I think that that's probably -- it's

23   probably prudent to wait, Your Honor.

24             THE COURT:  To wait?

25             MS. TOPLIN:   Yes.

1    THE COURT:  All right.  Well, I'm not going to rush

2  the defense if that's what they want to do.

3    MS. WILLIAMS:  Certainly, Your Honor.

4    THE COURT:  All right.  Ms. Toplin, do you have any

5  case law from the Third Circuit or the Supreme Court

6  supporting your theory of what you're entitled to under a Bill

7  of Particulars, because I didn't see it in your brief?

8    MS. TOPLIN:  No, Your Honor.  But on that point I do

9  want to raise one issue.  The case on which the Government

10  relies, it's really one case, Your Honor, and it's the Pugh

11  case.  And, --

12    THE COURT:  Well, you cite -- that's not a Third

13  Circuit case though.

14    MS. TOPLIN:  The Government cites it in its

15  response.  And, it's so completely distinguishable and I just

16  do want to raise that, Your Honor.

17    THE COURT:  Yes.

18    MS. TOPLIN:  In fact, Mr. Pugh was convicted.  In

19  fact, it was an Avionics instructor, a military Avionics

20  instructor that offered his services to Isis to train them in

21  Avionics.  And, in fact, his actions were articulable, clear,

22  frankly, fairly obvious.  And, yet, I also want the Court to

23  be aware that his conviction was the very first time that a

24  jury found an individual guilty of attempting to provide

25  material support to Isis.  It couldn't be more different than

1    the situation that we have here.

2              And, it was the first time.  There has never been a

3    situation, never been a case like the case before the Court,

4    like the instant case.  So, you know, we've raised these

5    issues and we're asking these questions because this is a case

6    of first impression.  And, if the Government is saying that

7    the allegations that Ms. Williams just referenced, if that's

8    it, if that's what the Government is proceeding upon, well,

9    then now we know.

10             THE COURT:  Well, you heard her say it as well as I

11   did, but I want -- I think what she said is consistent with

12   what's in the Indictment.

13             MS. TOPLIN:  Well, it is.  It is consistent with

14   what's in the Indictment it's just more specific than what's

15   in the Indictment.

16             THE COURT:  Well, maybe slightly more specific but,

17   I mean, you raised the question what the term "personnel"

18   meant.  And, she made clear, which is what the Indictment

19   says, that it refers to Ms. Thomas making herself available to

20   ISIL.

21             Now, Ms. Williams left open the possibility that it

22   could include somebody else, which the Indictment also says.

23   Now, is it your position that you want to know the names of

24   these other persons -- other people who might be such

25   personnel?

1            MS. TOPLIN:  Well, obviously, I believe that we

2      would be entitled to those names, Your Honor.

3            THE COURT:  Okay.  What's the Government's position

4      about that.

5            MS. WILLIAMS:  Your Honor, the Government is not

6      alleging and would not be proving that Ms. Thomas arranged to

7      provide any other personnel to Isis.  However, the evidence

8      already provided to the defense and laid out in the complaint

9      might support an argument that she attempted to provide other

10     material support and resources.  But in terms of the

11     allegation that she provided personnel, it is simply Ms.

12     Thomas.

13            The Government would not agree that evidence of her

14     other communications with the individual on the ground in

15     Syria would somehow not be admissible because it doesn't

16     particularly relate to her provision of herself as personnel.

17     That is the charge, but they may go to other forms of material

18     support and resources.

19            THE COURT:  Right.  Okay.  All right.  By the way, I

20     left out one fact also that the Government has stated in its

21     brief that could be relevant.  That is that Ms. Thomas applied

22     for and secured a Passport preliminary to some of the other

23     activities, but the record will reflect that.

24            All right.  Well, I appreciate counsel clarifying

25     some of these issues that I had.  My opinion is that under the

1    existing law that I should deny the motion for a Bill of

2    Particulars for the reasons that I've stated here and the

3    Government has stated and the absence of any Third Circuit

4    law.

5              But I am going to prepare a short memorandum putting

6    this --

7              MS. TOPLIN:  Thank you.  Your Honor, may I just be

8    heard briefly in response to Ms. Williams?

9              THE COURT:  Yes, sure.

10             MS. TOPLIN:  I think that Ms. Williams' final

11   comments there brought us right back to the beginning of this

12   hearing because it is the defense's position that the -- Ms.

13   Thomas' double jeopardy concerns can't be assuaged simply by

14   pointing to a particular date range and making an allegation

15   that certain things that she did within this range might be

16   considered material support.

17             Material support can encompass many, many different

18   activities from --

19             THE COURT:  Well, but okay, I read your argument and

20   I think it is very creative, but I -- as I understand the law,

21   you know, you're not entitled, you don't have standing to

22   raise a double jeopardy argument until your client has either

23   been -- has either been -- has been tried and has, subsequent

24   to that trial, the Government then attempts another

25   prosecution.  That's when you can and you should raise a

1    double jeopardy objection.

2           I -- I don't know any authority that would allow me

3    to curtail the Government's evidence at this upcoming trial

4    because of some possible potential future double jeopardy

5    issue that your client faces.

6           What's -- can you persuade me that I am wrong about

7    that?

8           MS. TOPLIN:  I'm not suggesting that they curtail

9    it.

10          THE COURT:  What?

11          MS. TOPLIN:  Your Honor, I'm not suggesting that the

12   Government curtail any evidence.  I'm simply suggesting that

13   if they're going to bring it they bring it, but identify what

14   actions are being prosecuted.

15          THE COURT:  Well, she's identified those in the

16   complaint -- strike that -- in the affidavit that supported

17   the complaint and in the evidence that she's produced, that

18   she summarized in her brief, and that she has further

19   articulated here on the record.

20          I mean, there is no allegation that your client

21   actually went to Turkey or Syria.  There's no allegation your

22   client actually attempted to -- she actually took steps to

23   specifically be a suicide bomber or to be martyrdom, there's

24   only evidence that she discussed that and she did -- but she

25   did take certain actions which the Government says were

1    towards that goal.

2            And, the Government's position is that is sufficient

3    for a conviction, your position is it's not.  So we will see.

4    I have ruled on the motion to dismiss.  You'll reserve your

5    rights as to how I should charge the jury.  If your client is

6    convicted, you've got your rights under Rule 29 and an appeal.

7    And, I can't see how I can -- you haven't articulated to me

8    any legal principle supported by any case law that I should

9    grant the Bill of Particulars because of some double jeopardy

10   problem that might arise in the future.

11           Now, do you want a week to do some more research and

12   send me a supplemental brief on this issue or any other?  I'll

13   give you that opportunity.

14           MS. TOPLIN:  I doubt that it will be necessary, Your

15   Honor, but I will take the week to respond.

16           THE COURT:  Okay.  Well, if you take a week and you

17   -- I won't rule -- I won't file a memorandum --

18           MS. TOPLIN:  Thank you, Your Honor.

19           THE COURT:  -- but assume I'm going to deny the Bill

20   of Particulars until and unless you give me some authority on

21   this double jeopardy issue.  And, if you file something within

22   a week, then I will give Ms. Williams a week to respond.

23           Okay?

24           MS. TOPLIN:  Yes.  Thank you, Your Honor.

25           THE COURT:  All right.  Now, let's turn to the

1    scheduling issues.  And, I appreciate that you have had some

2    discussions with my deputy, Ms. Lutz, who is here.  And, we

3    had originally talked about having jury select -- we have it

4    scheduled for voir dire submissions at the end of September,

5    motions in limine by September 15th, expert testimony by --

6    being summarized by September 29th, and then certain other

7    things, summary - inspection of summary and demonstrative

8    evidence by October 13th.

9          There's just -- an issue as arisen, and I'll be very

10   candid what it is, I've been invited to speak at two programs

11   the week of October 24th.  But another problem and a longer

12   one is that the Federal Courts have a conference every year

13   for judges who handle multi-district litigation, which is a

14   very significant conference that I always go to when I'm --

15   when I have one of these cases, because it's a very valuable

16   learning experience.  And, that is going to be October 31st,

17   November 1st and 2nd.  And, it is possible that this trial

18   could extend into that week.

19         So in a letter yesterday I asked counsel to bring

20   your calendars in, that I would prefer if at all possible to

21   try the case in early October.  And, -- so let me find out --

22   I don't know if you've discussed this among yourselves, but

23   can you tell me where this stands.

24         MS. WILLIAMS:  Your Honor, we had previously

25   discussed our schedules and the Government's situation, which

1    I had explained to defense counsel and they were kind of

2    willing to work around, is my primary case agent on this case,

3    the individual who signed the complaint affidavit and the

4    search warrant affidavits, is going to be in Afghanistan.  He

5    returns October 10th and will be back at work October 12th.

6              One additional complication, Your Honor, is that the

7    expert that the Government hopes to use at trial has advised

8    he's unavailable on the Jewish high holidays, which I think

9    Yom Kippur --

10             THE COURT:  Well, that's the same -- the same

11   applies to me.  That is October 3rd and 12th.

12             MS. WILLIAMS:  That's correct, Your Honor.  And, he

13   would be coming from D.C.  So he's unavailable on those dates

14   and I guess immediately before and after.

15             THE COURT:  Okay.

16             MS. WILLIAMS:  And, because the case agent wouldn't

17   be back at his desk until October 12th, I asked defense

18   counsel of they would be willing to do the October 24th trial

19   date so that he had a chance to get over his jet lag and dig

20   into the case again.

21             We are all available into October, up to the week of

22   Thanksgiving.  I'm sorry, into November.  So I would certainly

23   have no objection to pushing it into November to accommodate

24   the Court's schedule.  But I would ask that it not be

25   scheduled at a time when my case agent is out of the country.

1          THE COURT:  Well, let me -- I am not going to

2     schedule it while your case agent is away.

3          MS. WILLIAMS:  Thank you, Your Honor.

4          THE COURT:  Is he here today or is this --

5          MS. WILLIAMS:  No, this is the secondary case agent.

6     The primary case agent is being trained today for them.

7          THE COURT:  All right.  Well, let me find out from

8     Ms. Toplin.

9          MS. TOPLIN:  Your Honor, our dates are flexible.  We

10    understand Ms. Williams' conflict, so --

11         THE COURT:  Well, look, here's what I would really

12    like to do.  And, I understand problems with jet lag and so

13    forth.  But what I would really like -- let me just -- let me

14    talk to Ms. Lutz just a second.

15        (Pause - Judge confers with Deputy)

16         THE COURT:  Let me see.  Ms. Williams, what I would

17    -- what I would really like to do is pick a jury on the 13th,

18    and try the case beginning on the 17th.  I can't imagine if

19    your case agent has been involved in the case that, you know,

20    having -- he doesn't have to be involved in jury selection

21    obviously.   It would seem to me that that would give him time

22    to catch up or whatever else he does, because I'm well aware

23    that the case agent is very important, but I'm also aware that

24    in this case you have other agents working on the case.

25         MS. WILLIAMS:  Yes, Your Honor.  We can certainly

1    work with that schedule.  I am grateful for the Court's

2    flexibility.

3              THE COURT:  All right.  Just -- let me talk to Ms.

4    Lutz one more time.

5         (Pause - Judge confers with Deputy)

6              THE COURT:  Okay.  All right.  That is what I would

7    like to do.  So we'll have jury selection on the 13th and the

8    trial will start on the 24th.

9              MS. WILLIAMS:  Your Honor, one issue --

10             THE COURT:  On the 17th rather.

11             MS. WILLIAMS:  Yes, the 17th.  I believe this trial

12   can be concluded in two weeks, but the Court will be

13   unavailable October 31st through November 2nd.  Would the

14   Court just recess trial if it's still ongoing?

15             THE COURT:  Well, first of all, if we start the

16   17th, these programs I have the week of the 24th, I -- I mean,

17   if the trial is lasting that long I could cancel and tend to

18   the trial or I could start late one day, something like that.

19             MS. WILLIAMS:  Okay.

20             THE COURT:  So that would not be a problem, but I

21   don't really see this case lasting more than two weeks, do

22   you?

23             MS. WILLIAMS:  I don't anticipate it lasting more

24   than two weeks, but it can be hard to judge.

25             THE COURT:  All right.  Well, I don't think that's

The Court - Scheduling                                28

1   feasible, but if that happened, I might just recess for maybe

2   that Monday and Tuesday and come back Wednesday, so we could

3   work that out.  The same thing with this -- these programs I'm

4   at.

5           Okay.  Now, because of that I have to move back one

6   of the other dates.  And, that's the date for summary and

7   demonstrative evidence, which is now October 13th.  So I would

8   like to move that back one week.  So that date will be October

9   7th.

10          Now, there's already a deadline of October 6th for

11  the Government producing Jencks material, but I don't see a

12  problem with the Government -- both sides producing any

13  summary or demonstrative evidence by October 7th.  Is that all

14  right?

15          MS. TOPLIN:  Yes, Your Honor.

16          MS. WILLIAMS:  Yes, Your Honor.  And, if the Court

17  wished to move all the deadlines -- the proposed deadlines up

18  a week, I would also have no objection to that.

19          THE COURT:  Well, the one that would involve me the

20  most are motions in limine.  And, if you file those by

21  September 15th, I think that will be okay.

22          MS. WILLIAMS:  Thank you, Your Honor.

23          THE COURT:  Okay.  All right.  Okay.  I don't have

24  anything else.  Any counsel want to raise anything else?  (No

25  audible response)  All right.  If you do file this motion to

1  compel, specify whether you want to have a hearing in court or

2  you want to have a phone call or none of the above.  Okay?

3  All right?

4         MS. TOPLIN:  Yes, Your Honor.  Thank you.

5         THE COURT:  But let me be candid.  If you don't come

6  up with some legal authority that is supporting your position,

7  it is doubtful I'm going to grant you the relief you're

8  requesting.  I just want to be candid about that.

9         Okay.  Thanks very much for coming in.  Court's

10  adjourned.

11      (Proceeding ends at 10:39:57 a.m.)

12                    *  *  *  *  *

13              **C E R T I F I C A T I O N**

14         I, Diana Doman, court approved transcriber, certify

15  that the foregoing is a correct transcript from the official

16  electronic sound recording of the proceedings in the above-

17  entitled matter.

18

19                                    June 13, 2016

20  _____        _____

21  DIANA DOMAN                      DATE

22  DIANA DOMAN TRANSCRIBING, LLC

23

24