**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**KEONNA THOMAS**<br>        **a/k/a "Fatayat Al Khilafah"**<br>        **a/k/a "YoungLioness"** | **CRIMINAL NO. 15-171** |

**MEMORANDUM RE DEFENDANT'S MOTION FOR
NOTICE AND DISCOVERY OF SURVEILLANCE**

**Baylson, J.**                                                                          **August 18, 2016**

## I.        Introduction

In this case involving allegations of attempted support for a foreign terrorist organization, Keonna Thomas ("Defendant") has moved the Court for an order compelling the Government to disclose to her all methods of surveillance that the Government used to monitor her communications and activities throughout its investigation.  For the reasons that follow, Defendant's motion shall be denied without prejudice to filing a motion to suppress.

## II.        Facts and Procedural History

On April 23, 2015, a grand jury indicted Defendant for behavior allegedly occurring in this District from August 2013 to March 2015.  The indictment charged that Defendant "knowingly and intentionally attempted to provide material support and resources, as defined in [18 U.S.C. § 2339A(b) (2015)], including THOMAS herself as personnel, to a foreign terrorist organization, to wit: the Islamic State of Iraq and the Levant [i]n violation of [18 U.S.C. § 2339(B) (2015)]."  ECF 12.  On August 18, 2015, the Court approved a stipulated Protective Order pursuant to Rule 16(d) of the Federal Rules of Criminal Procedure governing the dissemination of any materials produced in discovery.  ECF 25.  On August 20, 2015, the Court

entered a scheduling order that, among other things, set the deadline for all defense motions regarding discovery as April 1, 2016.  ECF 27.[1]

On November 13, 2015, the Government filed an *ex parte* motion for a protective order sealing certain information pursuant to Section 4 of the Classified Information Procedures Act, 18 U.S.C.A. App. 3 § 4 (West 2016) ("CIPA") and Rule 16(d)(1) of the Federal Rules of Criminal Procedure.  ECF 31 (under seal).[2]  CIPA allows the Court, upon sufficient showing, to authorize the Government to "delete specified items of classified information from documents to be made available to the defendant through discovery . . . , to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C.A. App. 3 § 4 (West 2016).  The Court granted the Government's Motion on December 1, 2015 after an *in camera* review. Defendant did not seek to participate in the CIPA process and has not yet brought a direct motion challenge to the Government's withholding of any materials under CIPA.

On November 16, 2015, Defendant moved to dismiss the indictment on assorted constitutional grounds, including that the statute under which she was charged is impermissibly vague and overbroad in violation of the First Amendment.  ECF 32.  The Court denied Defendant's Motion on December 23.  ECF 37; United States v. Thomas, CRIMINAL NO. 15-171, 2015 WL 9450870, at *2 (E.D. Pa. Dec. 23, 2015).

On April 1, 2016, Defendant moved for an order compelling the Government to provide her with a Bill of Particulars.  ECF 40.  The Court denied Defendant's motion on June 2, 2016

---

[1] The Court has thrice amended this scheduling order, once on May 12, 2016 (ECF 50), once on July 22, 2016 (ECF 68), and once on August 15, 2016 (ECF 78).  Trial has been set for October 13, 2016.  Pretrial motions in limine are currently due September 2, except that motions in limine pertaining to experts are due September 22.

[2] Although the motion itself was sealed, Defendant had notice that it had been filed via a placeholder document entered on the public docket.  ECF 31.  See also ECF 27 (scheduling order requiring the Government to serve an unclassified version of the CIPA motion on defense counsel).

following oral argument.  ECF 56; <u>United States v. Thomas</u>, CRIMINAL NO. 15-171, 2016 WL 3148204, at *1 (E.D. Pa. June 2, 2016).

On July 20, 2016, Defendant moved to compel notice and discovery of the Government's experts.  ECF 67.  The Court denied Defendant's motion as moot following a July 22 hearing, at which the parties agreed to a timeline for resolving pretrial motions involving expert witnesses. ECF 69.

Defendant filed the present Motion for notice of surveillance on June 30, 2016, and the Court held oral argument on it at the July 22, 2016 hearing.  Defendant originally filed her Motion under seal, <u>see</u> ECF 61, but then filed a redacted copy on the public docket per agreement of the parties at the hearing.  ECF 72.  The Government, too, originally filed a sealed response (ECF 66) which has now been publicly docketed in full (ECF 74).  Both sides submitted supplemental briefing following the July 22 hearing.  ECF 71 (Defendant); ECF 77 (Government).

In her supplement, Defendant requested an opportunity to make an *ex parte* presentation to the Court concerning how the information the Court previously sealed pursuant to the Government's November 2015 motion for a protective order under CIPA might be relevant to her defense.  The Court granted Defendant's request over the Government's objection, and Defendant made her presentation on August 12, 2016.  The presentation lasted approximately 20 minutes, and the record has been sealed.

To date, Defendant has not filed a motion to suppress any of the evidence the Government intends to use at trial against her.  Defendant has taken the position that before she can file any such motion, she needs to know how the Government surveilled her.

### III.     Parties' Contentions

The Government does not deny that it surveilled Defendant in at least some capacity, though it of course has not been willing to publicly comment on what if any classified techniques were employed.  ECF 75 (July 22, 2016 Hr'g Tr.) 27:4-11. The Government instead contends that, because it does not intend to use any evidence obtained or derived from classified surveillance techniques, it has no obligation to inform Defendant of which classified techniques, if any, were used.  See ECF 77 at 2 (clarifying that no evidence to be introduced at trial was derived from classified techniques).[3]  The Government asserts that it has produced all exculpatory material to Defendant in discovery already.[4]   As to information withheld pursuant to CIPA, the Government also argues that the Court can review it to confirm that everything material to Defendant's defense has been produced.

Defendant's argument is, in essence, based on the concept of the fruit of the poisonous tree.  She seeks discovery of all surveillance methods used against her to determine if the Government's surveillance violated her constitutional rights and lead to evidence which could be introduced at trial.  Defendant argues that despite the Government's representations concerning the evidence it will use at trial and the discovery Defendant has received, she is entitled to know if the evidence the Government obtained against her through its lawfully-obtained search warrants was derivative of unlawful surveillance.  In essence, Defendant contends that without knowing the "seeds" of surveillance that the Government used to identify her, it cannot determine if anything in the Government's case in chief is the "fruit" of a potentially poisonous

---

[3] Defendant has not set forth on the record the basis for her challenge to the Government's representation.
[4] Defendant noted in her Motion that one search warrant affidavit that the Government produced to her in discovery makes reference to "other lawful search warrants" the Government used to obtain Defendant's private Facebook communications.  ECF 72 at 5.  The Court credits the Government's representations, made in its opposition and during oral argument, that "[t]his is a reference to warrants executed on third-party Facebook accounts whose users were communicating with Thomas,"  ECF 74 at 10 n.2, and that these warrants and the other materials referenced at ECF 72 pp. 5-6 were produced to Defendant during discovery.  The Court finds that, based on the record as it currently exists, the Government has produced all non-classified exculpatory discovery to Defendant.

tree.  Defendant also devotes a substantial portion of her brief to (mostly hearsay) non-case

newspaper and internet citations concerning the Government's alleged withholding of sources of

surveillance in various contexts.  ECF 72 at 8-25.

    **IV.**    **Analysis of Defendant's Motion for Notice of Surveillance**

        **A.  The Court Will Consider Defendant's Motion Notwithstanding the Fact that It Is Untimely**

The Court begins by observing that Defendant's Motion is untimely.  Per the Court's

August 20, 2015 scheduling order (ECF 27), all defense motions regarding discovery were to be

filed and served on or before April 1, 2016.  Defendant has not sought an extension of this

deadline, though she asserts the Government's discovery was not completed until after April 1.

Nevertheless, in the interests of justice and fairness the Court will consider Defendant's

arguments.

        **B.  The Relief Defendant Seeks is Unprecedented and Her Cases Are Distinguishable**

Defendant has not cited, and this Court has not located, any judicial decision awarding a

criminal defendant the relief Defendant seeks here.  Those opinions the Court has uncovered

have in fact rejected requests mirroring Defendant's.  See United States v. Tsarnaev, Criminal

Action No. 13-10200-GAO, Dkt. 270 (Apr. 16, 2014 Hr'g Tr.) 39:20-40:5 (D. Mass. Apr. 28,

2014) (saying that no action would be taken on the defendant's motion for notice of surveillance

(Dkt. 232)); United States v. Yagman, No. CR 06-227(A) SVW, Dkt. 443 (C.D. Cal. July 17,

2007) (denying defendant's motion for search and disclosure of electronic surveillance).  In

several cases, the Government's representation that no evidence obtained or derived from

classified surveillance would be used was sufficient to render disclosure of the surveillance

unnecessary.  See United States v. Bundy, No. 3:16-cr-00051-BR-3, Dkt. 770 (D. Or. June 24,

2016) (defense counsel withdrawing a motion to compel notice of surveillance based on government representations that no evidence in the case "derives, directly or indirectly, from any form of National Security monitoring"); United States v. Qazi, No. 12-cr-60298-BB, Dkt. 259, at *8 (S.D. Fla Oct. 29, 2014) ("The government has indicated that it will not use evidence obtained or derived from FAA-authorized surveillance as to which Defendants are aggrieved persons in the course of this prosecution. The Government shall be held to this assertion, and accordingly, notice is not merited.").

Defendant appears to have based substantial portions of her Motion from a "Joint Motion for Notice of the Surveillance Techniques Utilized by the Government," which is docket entry 653 in United States v. Muhtorov, Case 1:12-cr-00033-JLK, Dkt. 653 (D. Colo. Oct. 20, 2014). Compare id. at 2, 9 with ECF 72 at 3, 15. Even in that case, the court did not grant the relief sought. It instead denied defendants' motion without prejudice to renew after a CIPA Section 4 hearing, Muhtorov, Dkt. 771 (D. Colo. June 17, 2015), and the record of that case does not show whether that hearing has happened. As previously noted, Defendant has only recently taken an interest in the Government's CIPA Section 4 materials despite the fact that the Government filed its motion for a protective order in November 2015.

Defendant's citations are not on point. For example, in Alderman v. United States, 394 U.S. 165 (1969) the Supreme Court held, in the context of a case in which illegal surveillance had admittedly occurred, that an adversarial hearing was required to determine if the surveillance had unlawfully tainted the proceedings. The Third Circuit specifically held five years later that in camera review is perfectly appropriate to resolve the different threshold question of "whether the alleged illegal surveillance had occurred at all." United States v. D'Andrea, 495 F.2d 1170, 1174 (3d Cir. 1974).

6

Similarly, the <u>Keith</u> case referenced in Defendant's brief involved purely domestic surveillance that the Government admitted had occurred without a warrant or other judicial authorization.   <u>United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div. ("Keith")</u>, 407 U.S. 297 (1972).  An order disclosing the exact parameters of such unlawful surveillance to the defendant as in <u>Keith</u> has no bearing on whether to disclose all investigatory techniques used in this case on the off chance that one might have been unlawful.  Indeed, the Third Circuit repeatedly cites <u>Keith</u> in a case upholding the admissibility of evidence obtained via the Foreign Intelligence Surveillance Act ("FISA").  <u>United States v. Duka</u>, 671 F.3d 329, 340-41, 343 (3d Cir. 2011).  As the Government accurately notes, the fact that a defendant was surveilled pursuant to FISA is not something the Government must disclose unless several statutory criteria have been met.  Thus, many if not most of those who are surveilled under FISA will not be entitled to notice.  ECF 74 at 7; 50 U.S.C. §§ 1806, 1825, 1845(c).[5]

### C.  A Motion to Suppress is the Proper Vehicle to Challenge the Government's Alleged Surveillance

A suppression motion is the procedure clearly contemplated by the foreign intelligence statutes for resolving allegations of unlawful surveillance.  <u>See</u> 50 U.S.C. § 1806(e) (2016) (specifying an aggrieved person may file a motion to suppress unlawfully obtained electronic surveillance evidence); 50 U.S.C. § 1825(f) (2016) (same); 50 U.S.C. § 1845(c) (2016) (same).

---

[5] Defendant's other case citations are even farther afield. <u>Berger v. State of New York</u>, 388 U.S. 41 (1967) struck down a state eavesdropping statute primarily because it authorized "general warrants"; only in passing and briefly did the Court note concerns with the statute's lack of notice provisions.  Although Defendant accurately quotes <u>United States v. Abuhamra</u>, 389 F.3d 309, 322 (2d Cir. 2004) for the proposition that "[p]articularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other," this quote arose in the context of an *ex parte* presentation of evidence by the Government as to the appropriateness of granting bail to the defendant.  <u>American Civil Liberties Union v. Clapper</u> 785 F.3d 787 (2d Cir. 2015) specifically rested on statutory, not constitutional, grounds in resolving a dispute about the National Security Agency's telephone metadata collection program.  Finally, <u>United States v. Lambis</u>, 15CR734, 2016 WL 3870940 (S.D.N.Y. July 12, 2016) suppressed evidence obtained via the use of a "sting ray" cell site simulator, but only because the government exceeded the scope of its search warrant and failed to obtain another one.

The Court rejects Defendant's contention that she cannot file a motion to suppress without being first appraised of every possible surveillance tactic used.  In criminal cases, motions to suppress are the ordinary vehicle for challenging evidence allegedly illegally obtained.  Furthermore, at least one court has at least conceptually endorsed this Court's approach.  See United States v. Mohamud, Criminal Case No. 3:10-CR-00475-KI-1, Dkt. 499 (D. Or. Mar. 19, 2014) (denying disclosure of surveillance materials pending a motion to suppress).

In addition, a suppression motion would solve a key problem with Defendant's current argument under 18 U.S.C. § 3504.  As currently written, the pending Motion only speculates that Defendant could have been subject to illegal surveillance without directly accusing the Government of having done so.  ECF 72 at 7, 32.  This is insufficient to trigger the Government's response requirement.  See United States v. Gaines, CRIM.A. No. 89-00012, 1989 WL 17441, at *1 (E.D. Pa. Feb. 28, 1989) (citing United States v. Felton, 592 F. Supp. 172, 195–96 (W.D. Pa.1984), rev'd on other grounds, 753 F.2d 276 (3d Cir.1985)) ("Because Harris only asserts that he 'may be the subject' of electronic surveillance, his motion is insufficient to require the Government to respond . . .").  Although counsel for the Government has most recently represented that no evidence in this case was "derived from classified techniques" (ECF 77 at 2), a more express motion to suppress could trigger additional response requirements. [6]  While the Court at this time makes no finding as to what such a response may need to include, the Third Circuit has previously noted that the "Government's denial may be in the form of an affidavit indicating that a check had been made of the various agencies and asserting that the witness had

---

[6] United States v. Hamide, 914 F.2d 1147 (9th Cir. 1990), while primarily a case about appellate jurisdiction, noted in passing that the district court ordered the government to affirm or deny the existence of electronic surveillance pursuant to 18 U.S.C. § 3504 notwithstanding the government's representation that no evidence which was to be used in a deportation proceeding had been gathered by electronic surveillance.  This Court has not yet decided how if at all Hamide might implicate the Government's section 3504 obligations in the face of an accusation of illegal electronic surveillance by Defendant.

8

not been subjected to electronic surveillance."  In re Grand Jury Matter, 683 F.2d 66, 68 (3d Cir.

1982).[7]

A motion to suppress will also help refine precisely what illegal surveillance Defendant

believes may have occurred in this case.  Defendant has specifically disclaimed any reliance on

seeking disclosure of the identity of any confidential informant, and she would not be entitled to

learn the identity of a "mere tipster" in any event.  United States v. Jiles, 658 F.2d 194, 197 (3d

Cir. 1981).  Defendant has made clear that she is only interested in facts leading up to

surveillance, but she has not been specific as to what type of surveillance she believes may have

taken place.  If Defendant was physically surveilled (i.e. a police officer observing Defendant in

a public place), it is hard to see how she would have standing to assert a violation of any

Constitutional right.  If the surveillance was a video camera inserted into her residence or some

other method by which Defendant claims the Government was allowed to observe her while she

was inside her home, that may give her standing to assert violation of a Constitutional right,

depending on the totality of factors.  It seems most likely from the tenor of the present Motion

that by the term "surveillance," Defendant is exclusively indicating electronic surveillance of one

kind or another.  If this occurred, it may be classified and not discoverable by Defendant.

However, the Government has been specific in denying that the evidence that will be introduced

at trial in this case was "derived from" any classified investigative techniques and the Court

credits, on the record currently before it, the Government's simultaneous representation that all

exculpatory non-classified discovery has been produced.  The Court recommends that in the

forthcoming suppression motion, Defendant be as specific as possible as to the type of

surveillance that she believes may have been improper in this case.

---

[7] The Third Circuit has also held that "[i]f, in the face of such an affidavit, the witness offers nothing to indicate that
the affidavit is false or defective, the district court can deny the section 3504 petition without a hearing."
In re Grand Jury Matter, 683 F.2d 66, 68 (3d Cir. 1982).

### D.  The Court Rejects Defendant's Other Arguments

#### i.  Hearsay accounts of surveillance programs

Defendant devotes a substantial portion of her brief to offering predominately hearsay accounts of the Government's assorted surveillance programs.  ECF 72 at 8-25.  The Court does not find this recounting to be material to the issues at hand.  As another court aptly noted:

> Defendant has submitted an offer of proof that describes Patriot Act surveillance conducted by the FBI, NSA, IRS, CIA, and United States military. This offer of proof cites generally to newspaper or magazine articles, websites, and public court filings . . . Even if the Court accepts all the general information included in this pleading, it provides no support for the conclusion that electronic surveillance was used in investigating Defendant.

Yagman, Dkt. 443, at *8, 21.

#### ii.  Due process and adversarial proceedings

Defendant repeatedly insisted at the July 22 hearing that she is entitled to "notice and discovery of all of the classified surveillance programs, again, that the Government actually employed in this case because that information is critical, first, to our ability to test through an adversarial proceeding the lawfulness of such surveillance."  ECF 75 (July, 22 Hr'g Tr.) 8:10-15; see also id. at 20:21-21:4 (alleging that allowing the Government to determine if information gleaned from classified surveillance is relevant to the prosecution "is not a determination that the Executive Branch is authorized to make with[out] adversary proceedings.").  Defendant appears chiefly concerned about the lawfulness of *ex parte* review under FISA, id. at 24:1-11, and/or that the Government is unduly interpreting whether evidence is "derived" from FISA surveillance, ECF 72 at 23.

Defendant's contentions ignore the statutory structure governing disclosure of FISA evidence, which balances a defendant's due process rights against "the government's special interest in collecting foreign intelligence information."  Duka, 671 F.3d at 340.  Under FISA,

when the Attorney General files an affidavit under oath stating that disclosure of information would harm the national security of the United States, the Court is specifically empowered to review the Government's submissions *ex parte* and *in camera*.  50 U.S.C. § 1806(f) (2016). While the Government has not confirmed or denied on the unclassified record in this case whether it conducted any FISA surveillance that is pertinent to this case, the Court can safely reject Defendant's apparent contention that FISA's *ex parte* provisions are *per se* unlawful.  The Third Circuit has explicitly upheld FISA in holding that "evidence derived from duly authorized FISA surveillance is admissible in a criminal case," Duka, 671 F.3d at 345, and other courts have similarly rejected the contention that "adversary procedure is always essential to resolve contested issues of fact."  United States v. Daoud, 755 F.3d 479, 482 (7th Cir. 2014).  See also United States v. Hasbajrami, 11-CR-623 (JG), 2016 WL 1029500, at *14 (E.D.N.Y. Mar. 8, 2016) (denying defense motion for discovery of classified materials following *in camera* review).  Defendant, in crafting her motion to suppress, should be guided accordingly.

## V.  Re-Review of CIPA Materials

As previously noted, Defendant did not raise any contemporaneous challenges to the Government's November 2015 motion for a protective order sealing certain classified materials pursuant to CIPA.  The Court reserves the possibility of re-reviewing the CIPA materials in the context of a suppression motion.

## VI.  Conclusion

Defendant's Motion shall be denied.  However, Defendant may raise these issues in a motion to suppress.

An appropriate Order follows.

O:\Criminal Cases\15-171 US v Thomas\15cr171 August 2016 Memo re Motion for Notice of Surveillance.docx