**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
|  | : |
|  | : |
|  | : **CRIMINAL NO. 15-171** |
|  | : |
|  | : |
| **v.** | : |
|  | : |
| **KEONNA THOMAS,** | : |
| **a/k/a "Fatayat Al Khilafah"** | : |
| **a/k/a "YoungLioness** | : |
|  | : |
|  | : |
|  | : |

**MOTION OF PHILLY DECLARATION, LLC**
**AND AUSTIN NOLEN TO INTERVENE AND UNSEAL**

Non-parties Philly Declaration, LLC, publisher of *The Declaration* news website, and its Managing Director Austin Nolen (collectively, "*The Declaration*"), hereby move to intervene in this matter and for an order granting access to (1) all records that presently appear on the docket as sealed or inaccessible, including docket entries 24, 26, 31, 35, 47, 48, 62, 63, 64, 70, 86, and 87, and transcripts of both Defendant's *ex parte* presentation to the Court on August 12, 2016 and her plea hearing on September 20, 2016 (the "Sealed Docket Records"), and (2) any search warrant materials pertaining to the investigation and prosecution of the Defendant (the "Search Warrant Materials"). In support of its motion, *The Declaration* relies on the accompanying Memorandum of Law and the exhibits attached thereto.

WHEREFORE, *The Declaration* respectfully requests that the Court grant the motion to intervene and enter an order granting access to the Sealed Docket Records and the Search Warrant Materials.

Date:   November 16, 2016

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP


By: ___ */s/ Michael Berry*_____
       Michael Berry
       Paul Safier

1760 Market Street, Suite 1001
Philadelphia, PA 19103
Tel: (215) 988-9778
Fax: (215) 988-9750
mberry@lskslaw.com
psafier@lskslaw.com

*Attorneys for Philly Declaration, LLC and Austin Nolen*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2016, I caused the foregoing

**MOTION TO INTERVENE AND UNSEAL DOCUMENTS**, and all supporting papers, to be

served via ECF to the following counsel of record:

Jennifer A. Williams
U.S. Attorney's Office
615 Chestnut St., Suite 1250
Philadelphia, PA 19106
jennifer.a.williams@usdoj.gov

*Attorney for the United States*

Elizabeth Toplin
Federal Community Defender Office
601 Walnut St., Suite 545W
Philadelphia, PA 19106
elizabeth_toplin@fd.org

Kathleen M. Gaughan
Federal Community Defender Office
601 Walnut St., Suite 540
Philadelphia, PA 19106
kathleen_gaughan@fd.org

*Attorneys for Defendant*

    /s/ *Michael Berry*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| | : | **CRIMINAL NO. 15-171** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KEONNA THOMAS,** | : | |
| **a/k/a "Fatayat Al Khilafah"** | : | |
| **a/k/a "YoungLioness** | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PHILLY
DECLARATION, LLC AND AUSTIN NOLEN TO INTERVENE AND UNSEAL**

The First Amendment and common law afford the public a right to access criminal proceedings. As the Supreme Court has explained, this well-established right "permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982). This case involves the investigation and prosecution of a United States citizen accused of cooperating with a foreign terrorist organization. Thus, the public interest in the case is particularly high. Yet, a large number of this case's proceedings have been sealed from public view. These proceedings, and the records relating to them, have been sealed without any public explanation and without the public being given notice and an opportunity to challenge the proposed sealing.

Now that the Defendant, Keonna Thomas, has pled guilty and in light of her upcoming sentencing, Philly Declaration, LLC, publisher of *The Declaration* news website, and its Managing Director Austin Nolen (collectively, "*The Declaration*") seek to vindicate the public's

right to access records that have been sealed.  Specifically, *The Declaration* seeks access to:

- all records that presently appear on the docket as sealed or inaccessible, including motions filed by the parties, Court orders, transcripts, and plea documents (hereinafter, the "Sealed Docket Records"); and

- any search warrant materials pertaining to the underlying prosecution, including the warrants themselves, warrant applications, affidavits filed in support of applications, and returns filed with the Court (hereinafter, the "Search Warrant Materials").

In accordance with its constitutional and common law rights, *The Declaration* respectfully requests that (1) it be permitted to intervene to challenge the sealing of these materials, including, where necessary, by being given enough information about the materials and the basis for sealing them to mount a proper challenge; (2) it and the public be granted access to all such materials; and (3) to the extent that the party seeking closure is able to meet its high burden of showing that some sealing is necessary, the records be released with redactions limited only to information that should properly be sealed.

## BACKGROUND

**The Proceedings Against Thomas:**  On April 3, 2015, Thomas was arrested for attempting to provide material support or resources to the Islamic State of Iraq and the Levant (ISIL), a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B (2015).  *See* Dkt. No. 1.  The Complaint against Thomas alleges that she attempted to travel to Syria "in order to join, fight with, and martyr herself on behalf of ISIL."  *Id.* ¶ 8.  The probable cause for the arrest was based on electronic surveillance of Thomas's social media posts, as well as communications between her and three alleged co-conspirators: "a known Somalia-based violent

jihadi fighter originally from Minnesota," "a known overseas ISIL fighter," and "a radical Islamic cleric located in Jamaica." *Id.* ¶¶ 9-29.

The Government has stated that it obtained the evidence against Thomas pursuant to grand jury subpoenas, search warrants, and "other investigative tools." Dkt. No. 19 at 6:6-11. Notwithstanding those representations, Thomas has expressed suspicion that the Government "conducted additional searches and seizures beyond those it expressly disclosed in discovery." Dkt. No. 72 at 3-7.

A grand jury indicted Thomas on April 23, 2015. Dkt. No. 12. At her arraignment on May 7, 2015, she pleaded not guilty. Dkt. No. 16. On September 20, 2016, with her trial date approaching, Thomas amended her plea to guilty. Dkt. No. 88. Her sentencing is scheduled for January 17, 2017. Dkt. No. 89.

**The Extensive Sealing of Records:** Between the time of Thomas's indictment and her guilty plea, the parties have filed many papers under seal, several proceedings have been closed, and the Court has entered certain orders under seal:

On July 22, 2015, the Government filed a motion under seal. Dkt. No. 24. On August 19, 2015, the Court entered an order under seal. Dkt. No. 26. Both the motion and the order remain under seal, with no explanation of their nature on the docket.

On November 13, 2015, the Government moved, *ex parte* and under seal, for a protective order pursuant to section 4 of the Classified Information Procedures Act ("*CIPA*"), and Rule 16(d)(1) of the Federal Rules of Criminal Procedure. Dkt. No. 31.[1] The Court granted the

---

[1] Under section 4 of *CIPA*, a court may authorize the Government to omit classified information—or provide a substitute for classified information—in documents provided to the defendant in discovery. 18 U.S.C. App. III, § 4.

Government's motion on December 1, 2015, in a sealed order.  *See* Dkt. No. 79 at 2.  The Government's motion and the Court's order remain sealed.

On April 1, 2016, Thomas moved for an order requiring the Government to provide her with a bill of particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure.  Dkt. No. 40.  The Government filed an opposition to the motion on April 12, 2016, Dkt. No. 43, and Thomas filed a reply to the opposition, under seal, on April 25, 2016, Dkt. No. 47.  That same day, the Court entered "an order to seal," itself filed under seal.  Dkt. No. 48.  The Court ultimately denied Thomas's motion for a bill of particulars.  Dkt. No. 57.  Thomas's reply and the Court's order to seal remain sealed.

On June 30, 2016, Thomas moved to compel the Government to disclose the methods of surveillance it used in its investigation of her.  Thomas originally filed the motion entirely under seal, Dkt. No. 61, but later, with the Government's consent, filed a redacted copy publicly, Dkt. No. 72.  Three other sealed filings—a motion by the Government and two orders—also dated June 30, appear on the docket.  Dkt. Nos. 62, 63, 64.  The Government filed a response to the motion, originally under seal, Dkt. No. 66, but now available to the public in full, Dkt. No. 74.  Both sides filed supplemental briefing following oral argument on July 22, 2016.  Dkt. Nos. 71, 77.  The Court afforded Thomas an opportunity to make an *ex parte* presentation on August 12, 2016, as to how information sealed under the Court's December 1, 2015, order might be relevant to her defense.  *See* Dkt. No. 79 at 3.  Ultimately, the Court denied Thomas's motion.  Dkt. No. 80.  The record of Thomas's presentation , as well as the three June 30 filings and a Court order entered on July 26, 2016, Dkt. No. 70, remain sealed.

Finally, although the public docket indicates that Thomas pled guilty to Count 1 of the indictment on September 20, 2016, the two plea documents that appear on the docket are either

under seal, Dkt. No. 86, or unavailable via ECF, Dkt. No. 87.  The transcript of the plea hearing

has not yet been posted on the docket.

A chart with a list of the Sealed Docket Records, and their respective descriptions on the

docket, is attached as Exhibit A.

**_The Declaration_ and The Substantial Public Interest in this Proceeding:** _The_

_Declaration_ is an online news magazine based in Philadelphia.  _See_ https://phillydeclaration.org/.

Its principal focus is on reporting about city, state and federal government activities through

means of public records requests.  _The Declaration_ began covering this case shortly after

Thomas's arrest in April 2015.  _See_ Austin Nolen, _Philadelphia Woman Faces Charges for_

_Allegedly Attempting to Join ISIS_, The Declaration (Apr. 7, 2015), https://phillydeclaration.org

/2015/04/07/philadelphia-woman-faces-charges-for-allegedly-attempting-to-join-isis/.  Like

other local and national news outlets, _The Declaration_ has written extensively about the case.

_See, e.g._, Austin Nolen, _Keonna Thomas Indicted: What we Know about the Investigation So_

_Far_, The Declaration (Apr. 24, 2015), https://phillydeclaration.org/2015/04/24/keonna-thomas-

indicted-what-we-know-about-the-investigation-so-far/.[2]

Unfortunately, neither _The Declaration_ nor other media has been able to report on many

proceedings in the case in light of the extensive sealing.  For this reason, in May 2016, _The_

_Declaration_ wrote to the Court seeking access to certain materials, which the Court provided.

Dkt. No. 54.  When _The Declaration_ wrote to the Court a second time, it responded by

instructing that _The Declaration_ could seek further access to sealed materials only by way of a

---

[2] _See, e.g._, Pete Williams & Tracy Connor,  _Keonna Thomas, Philadelphia Mom,_
_Charged With Plan to Join ISIS,_ NBC News (Apr. 4, 2015), http://www.nbcnews.com/
storyline/isis-terror/philadelphia-woman-keonna-thomas-charged-plan-join-isis-n335226; Jeremy
Roebuck, _North Philly mom admits to planning to abandon kids for ISIS_, philly.com (Sept. 21,
2016), http://www.philly.com/philly/news/20160921_North_Philly_mom_admits_to_planning_
to_abandon_kids_for_ISIS_fighter_she_married_over_Skype.html.

formal motion to intervene.  *See* Ex. B.  Consistent with that instruction, *The Declaration* now

seeks to intervene for that limited purpose.

## ARGUMENT

## I.    *THE DECLARATION* SHOULD BE PERMITTED TO INTERVENE.

As this Court previously recognized, intervention is the appropriate procedural vehicle

for journalists to vindicate the right of the public and press to access judicial proceedings.  *See*

Ex. B (August 16, 2016 letter from Court, citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772,

777 (3d Cir. 1994)).  The Court of Appeals has "routinely found, as have other courts, that third

parties have standing to challenge protective orders and confidentiality orders in an effort to

obtain access to information or judicial proceedings.  [Press organizations] may have standing

notwithstanding the fact that 'they assert rights that may belong to a broad portion of the public

at large.'"  *Pansy*, 23 F.3d at 777 (citations omitted).  Indeed, to facilitate the ability of third-

parties to intervene to vindicate the public's right of access, the First Amendment and common

law require that the public and press be given notice and an opportunity to heard "at a

meaningful time, and in a meaningful manner" *before* any records or proceedings are sealed.

*United States v. Antar*, 38 F.3d 1348, 1361 n.18 (3d Cir. 1994).

Although that did not happen in this case, *The Declaration* has standing to intervene

because it seeks to vindicate the right to access judicial documents that already have been sealed.

*See, e.g.*, *United States v. Wecht*, 537 F.3d 222, 232 (3d Cir. 2008) (media intervenors had

standing to challenge restrictions on access to names of jurors); *United States v. Wecht*, 484 F.3d

194, 202-03 (3d Cir. 2007) (media outlets had third-party standing to challenge the

constitutionality of gag order on public's behalf); *United States v. Smith*, 123 F.3d 140, 145 (3d

Cir. 1997) (adjudicating merits of newspapers' right of access claim to briefs and hearings in criminal proceeding).

Accordingly, *The Declaration* respectfully seeks permission to intervene in this case for the limited purpose of seeking access to records that have been sealed.

## II.   THE SEALED DOCKET RECORDS SHOULD BE UNSEALED.

Consistent with well-established First Amendment and common law precedent, *The Declaration* respectfully requests that the Sealed Docket Records be unsealed and, to the extent that the Court holds that the parties can meet their burden of showing any sealing is necessary, the remaining sealing be both narrowly tailored and explained in detailed public findings.

### A.   The First Amendment and Common Law Rights of Access

Judicial records in criminal proceedings are subject to both a First Amendment and common law right of access. *See United States v. Smith*, 776 F.2d 1104, 1112-13 (3d Cir. 1985); *In re Cendant Corp.*, 260 F.3d 183, 192, 198 n.13 (3d Cir. 2001). These rights are "firmly established," *Smith*, 123 F.3d at 146, and "well-settled," *Cendant Corp.*, 260 F.3d at 192. The Court of Appeals has emphasized that the right to access court records and proceedings enhances "the quality of justice dispensed by the court," "diminishes possibilities for injustice, incompetence, perjury, and fraud," and "provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness." *Cendant Corp.*, 260 F.3d at 192 (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (internal marks omitted)). The rights of access are particularly important in criminal proceedings because "the process by which the government investigates and prosecutes its citizens is an important matter of public concern." *Wecht*, 484 F.3d at 210; *id.* ("[T]he public has a 'vital interest in evaluating

the public officials who work in the criminal justice system.'" (quoting *United States v. Criden*, 675 F.2d 550, 557 (3d Cir. 1982)).

Courts determine whether a First Amendment right of access attaches to a particular record or proceeding by applying a two-prong "experience" and "logic" test. *N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 428-29 (3d Cir. 2016); *see also United States v. Kemp*, 365 F. Supp. 2d 618, 628 (E.D. Pa. 2005) (citing *In re Newark Morning Ledger, Co.*, 260 F. 3d 217, 221 n.6 (3d Cir. 2001)). Under that test, a court first examines "whether there has been a tradition of opening to the press the matter in question" and then considers "whether public access plays a positive role in the judicial process by, *inter alia*, 'enhancing both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'" *N. Jersey Media Grp.*, 836 F.3d at 429 (quoting *Wecht*, 537 F.3d at 233-34).

When a First Amendment right attaches, it creates a "strong presumption" of access that "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values." *Id.* (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986)) (internal marks omitted). Any closure must be "narrowly tailored to serve" that overriding interest. *Id.* And, the sealing must be "the least restrictive means"; there must be no "alternative measures" available. *Antar*, 38 F.3d at 1359. If a court finds closure is warranted, that finding must be "specific, individualized," and "articulated on the record before closure is effected." *Id.*

Even where the First Amendment right of access does not apply, the common law right of access attaches to all judicial records. *Wecht*, 484 F.3d at 208. As the Court of Appeals has held, a judicial record is a document that is meant to "aid . . . the judge in rendering a decision" or serves "some other judicial purpose." *N. Jersey Media Grp.*, 836 F.3d at 436; *accord Cendant*

8

*Corp.*, 260 F.3d at 192 (explaining that a judicial record is a "document [that] has been filed with the court" or is "otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings").  The common law right of access "encompasses all 'judicial records and documents,'" including "'transcripts, evidence, pleadings, and other materials submitted by litigants.'"  *United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984) (citations omitted)).

Judicial records are subject to a "strong presumption" of public access.  *United States v. Smith*, 787 F.2d 111, 115 (3d Cir. 1986) (citing *United States v. Criden*, 648 F.2d 814, 823-29 (3d Cir. 1981)).  In the face of that presumption, "the party . . .  seeking sealing . . . 'bears the burden of showing that the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury.'"  *Cendant Corp.*, 260 F.3d at 194 (citations omitted).  Prior to sealing a record subject to the common law right of access, courts must "articulate[] the compelling countervailing interests" that justify closure and make "specific findings" that closure is necessary.  *Id.* at 194, 198 (citation and internal marks omitted).

**B.**     **The Applicable Procedural Requirements For Sealing Have Not Been Met.**

In this case, no public findings have been made with respect to any of the Sealed Docket Records.  Indeed, there is not even any publicly available information as to what several of these sealed records are, let alone whether, for each record, there are sufficient grounds to justify its sealing.

Based on the minimal information available to the public, the Sealed Docket Records appear to consist of transcripts and papers filed in connection with various motions, Court orders, and plea documents.  *See* Ex. A.  Those are the kinds of records that fall within the First Amendment right of access, requiring that any sealing be justified under the demanding constitutional standard.  *See Smith*, 123 F.3d at 146 (noting that the Third Circuit has extended

the First Amendment right of access beyond criminal trials "to additional aspects of criminal proceedings" and "to the records and briefs that are associated with those proceedings"); *Newark Morning Ledger Co.*, 260 F.3d at 220 (First Amendment right of access applies "to many pre-trial criminal proceedings including pre-trial suppression, due process, and entrapment hearings").[3]  At the very least, this Court must make a threshold determination as to whether the First Amendment right of access attaches to these records.  Due process requires that *The Declaration* be permitted to weigh in on that issue.  That, in turn, requires that *The Declaration* and public be provided with sufficient information about the Sealed Docket Records so that it can meaningfully argue that they are subject to the First Amendment right of access.  *See United States v. Raffoul*, 826 F.2d 218, 224 (3d Cir. 1987) ("For a case-by-case approach to be meaningful, representatives of the press and general public must be given the opportunity to be heard on the question of their exclusion." (internal marks and citations omitted)).

Even if the First Amendment right of access does not apply to all the Sealed Docket Records, they are, at the very least, "judicial records," thus falling within the scope of the common law right of access.  *See N. Jersey Media Grp.*, 836 F.3d at 434-35; *accord Cendant Corp.*, 260 F.3d at 192-93.  Each of the documents appears to be "relevant to the performance of the judicial function and useful in the judicial process" and thus is a judicial record.  *N. Jersey Media Grp.*, 836 F.3d at 435 (citation and internal marks omitted).

---

[3] Courts outside the Third Circuit have made similar findings about the kinds of documents at issue here.  *See, e.g., Associated Press v. U.S. District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("[T]he public and press have a first amendment right of access to pretrial documents [in criminal proceedings] in general."); *Wash. Post Co. v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (recognizing "a first amendment right of access to plea agreements"); *United States v. Ressam*, 221 F. Supp. 2d 1252, 1262-63 (W.D. Wash. 2002) (finding that court orders are subject to a First Amendment right of access).  *See generally* 1 Lee Levine et al., *Newsgathering and the Law* § 5.02 (4th ed. 2011), at 5-10 ("With few exceptions, the courts have recognized a qualified First Amendment-based right of access to pretrial proceedings in criminal cases and have required a rigorous showing to justify closure.").

Because the Sealed Docket Records are subject to the First Amendment and/or common law right of access, they only can be sealed if the parties have met their burden of showing that sealing is necessary to achieve an overriding interest.  And, even if there is some as-yet-unmade case for sealing the records, the extent of the sealing here is likely more than is necessary and hardly narrowly tailored or limited to the least restrictive means.  While there may be legitimate grounds to protect some information, doing so does not require the wholesale sealing of records. It can be accomplished by targeted redactions, limited to protecting whatever legitimate interests in secrecy exist without compromising the public's right of access.[4]

Finally, it bears emphasizing that the public interest in this case and the issues it presents is high.  It is axiomatic that "the appearance of justice can best be provided by allowing people to observe it."  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980).  Yet, because Thomas has elected to forgo her constitutional right to a public trial by pleading guilty while many records relating to her prosecution (including the plea agreement itself) remain under seal, the public has been deprived of the opportunity to observe the proceedings against Thomas, assess the evidence against her, and fulfill its role as a check on the prosecutorial and judicial process.  When a defendant's fate is determined without the benefit of a public trial, as it has been in this case, it is critical that the public has the tools to understand the nature of the underlying proceedings, the basis for the defendant's decision to admit her guilt, and what the Government has agreed to in exchange.  *See Oregonian Publ'g Co. v. U.S. District Court*, 920 F.2d 1462, 1465 (9th Cir. 1990) (holding that the public has a constitutional right to access plea

---

[4] For example, the Stipulated Protective Order entered in this case requires the parties to file "sensitive but unclassified discovery materials" under seal.  Dkt. No. 25 at 1-2.  But, the protected "sensitive information," *id.*, such  as "personal identifying information" and "co-conspirator identities or contact information," could simply be redacted—if the parties can show, in the first instance, that the specific "sensitive information" contained in the documents is properly sealed under the First Amendment and common law.

agreements and noting that "[i]n many respects, the plea agreement takes the place of the criminal trial").  Accordingly, as in all criminal cases, recognizing the public's right to access here will enable it to assess "the basic fairness" of these criminal proceedings and will increase "public confidence in the system."  *N. Jersey Media Grp.*, 836 F.3d at 429 (internal marks and citation omitted).  These principles and the interests for which they stand are even more vital in this case, which involves matters of substantial public concern:  the alleged cooperation of a United States citizen with an international terrorist organization and the Government's surveillance of its own citizens.

In short, to the extent that there is any dispute as to whether any particular record falls within either the First Amendment or the common law right, *The Declaration* must be given a meaningful opportunity to make its case that the record is subject to a right of access.  And, to the extent the Sealed Docket Records fall within either of those rights, they should be unsealed, subject to whatever targeted redactions the Court deems necessary in detailed public findings to preserve a compelling interest.

## III.   THE PRESS AND PUBLIC SHOULD HAVE <u>ACCESS TO THE SEARCH WARRANT MATERIALS.</u>

*The Declaration* respectfully requests that this Court order that the Search Warrant Materials be made available to the public.  Although the Third Circuit has yet to weigh in on this issue, the overwhelming weight of authority holds that where, as here, a criminal investigation has concluded, search warrant materials are subject to a right of access, under either the First Amendment or the common law.  Based on that authority, which is consistent with the well-

12

established law governing access in this Circuit, the Search Warrant Materials should be made public.[5]

### A.     The Search Warrant Materials Come Within the Common Law Right of Access.

Every federal appellate court that has considered the question of whether search warrant materials are subject to a common law right of access has held that, once a criminal investigation concludes, search warrant materials are "judicial records and documents" to which such a right attaches.  *See Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) ("conclud[ing] that affidavits for search warrants are judicial records"); *In re Search of 1638 E. 2nd St., Tulsa, Okla.*, 993 F.2d 773, 775 (10th Cir. 1993) (same); *In re Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (finding that "common law right to inspect" search warrant application attached after completion of criminal investigation); *In re EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996) (search warrant affidavits fall within the common law right of access); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1190 (9th Cir. 2011) ("a qualified common law right of access" applies to "materials filed in support of search warrant applications after an investigation has been terminated").  As the Ninth Circuit has noted, "[c]ourts have applied the common law right of access to a variety of warrant-related materials." *Custer Battlefield*, 658 F.3d at 1192 n.4.

The presumption of access under the common law has particular force for search warrant materials.  As one court has explained, these documents "adjudicate[] the right of individuals

---

[5] As a technical matter, the Search Warrant Materials were likely sealed by the Magistrate Judge in a separate proceeding.  *The Declaration* has been unable to find where those materials have been filed or whether those filings or the entire proceeding is under seal.  Thus, it makes this Motion in this Court, which has the authority to order to search warrant materials unsealed.  *See, e.g.*, *United States v. Kott*, 380 F. Supp. 2d 1122 (C.D. Cal. 2004), ), *aff'd*, 135 F. App'x 69 (9th Cir. 2005); *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 85-86 (D.D.C. 2008); *In re Application of WP Co. LLC*, 2016 WL 1604976 (D.D.C. April 1, 2016).

under the Fourth Amendment not to be subjected to government intrusion into areas in which

they might reasonably have expected privacy absent a judicial determination of sufficient cause."

*In re Sealed Search Warrant*, 2006 WL 3690639, at *3 (N.D.N.Y. Dec. 11, 2006).  Because

"[t]he judicial determination whether to permit the government to enter and search a person's

private property and possessions" is "at the heart of the performance of judicial functions," the

presumption of access to search warrant materials "carries the maximum possible weight."  *Id.*

      In light of Thomas's indictment and recent guilty plea, it appears that the Government's

investigation of her has concluded.  Thus, the common law right of access has attached to the

Search Warrant Materials, and they should be released to *The Declaration*, subject to any

targeted redactions found by the Court to be necessary.

      **B.**    **The Search Warrant Materials Come**
                  **<u>Within the First Amendment Right of Access.</u>**

      In addition, the Search Warrant Materials are subject to the First Amendment right of

access.  For instance, the Eighth Circuit, applying the "experience and logic" test, has held that

"the first amendment right of public access does extend to the documents filed in support of

search warrant applications."  *In re Search Warrant for Secretarial Area Outside Office of Gunn*,

855 F.2d 569, 573 (8th Cir. 1988).  Other courts have held the same, in circumstances where the

criminal investigation has concluded.  *See, e.g.*, *Kott*, 380 F. Supp. 2d at 1124-25; *In re*

*Application of N.Y. Times Co.*, 585 F. Supp. 2d at 88-90; *United States v. Loughner*, 769 F. Supp.

2d 1188, 1195 (D. Ariz. 2011); *In re Application of WP Co. LLC*, 2016 WL 1604976.  *But see In*

*re Search of Fair Finance*, 692 F.3d 424 (6th Cir. 2012) (holding that no First Amendment right

of access attaches to search warrant materials).

      That conclusion is plainly correct.  First, while search warrant *proceedings* are generally

held *in camera* and *ex parte*, the warrant *materials* themselves have historically been open to the

public, particularly after a criminal investigation has concluded.  *See Gunn*, 855 F.2d at 573

("[A]lthough the process of issuing search warrants has traditionally not been conducted in an

open fashion, search warrant applications and receipts are routinely filed with the clerk of court

without seal."); *Custer Battlefield*, 658 F.3d at 1193-94 ("Post-investigation, however, warrant

materials 'have historically been available to the public.'" (quoting *In re Application of N.Y.*

*Times Co.*, 585 F. Supp. 2d at 88)); *United States v. Wells Fargo Bank Account Number*

*7986104185*, 643 F. Supp. 2d 577, 581 (S.D.N.Y. 2009) ("Search warrant applications clearly

form the basis for judicial decision making and generally are unsealed at later stages of criminal

proceedings, such as upon the return of the execution of the warrant or in connection with post-

indictment discovery.").  As one court has put it, the "fact that there is a common law tradition of

access to warrant materials" strongly supports the conclusion that the "experience" prong of the

test is satisfied.  *In re Application of N.Y. Times Co.*, 585 F. Supp. 2d at 89.

Second, a First Amendment right to access search warrant materials after an investigation

has concluded plays a significant positive role in the functioning of the criminal justice system.

Search warrant materials reflect how, and in what circumstances, the Government may invade a

person's constitutional right to privacy in their homes and affairs.  Accordingly, to make those

materials available furthers the "public's understanding of the function and operation of the

judicial process and the criminal justice system."  *Gunn*, 855 F.2d at 573; *see also In re Sealed*

*Search Warrant*, 2006 WL 3690639, at *3 ("The right of officers to thrust themselves into a

home is also a grave concern, not only to the individual but to a society which chooses to dwell

in reasonable security and freedom from surveillance." (quoting *Johnson v. United States*, 333

U.S. 10, 14 (1948) (Jackson, J.) (internal marks omitted))).  Public access to search warrant

materials also "may operate as a curb on prosecutorial . . . misconduct" by shining a light on the

grounds sought for the warrant and the measures the Government has used to collect evidence. *Gunn*, 855 F.2d at 573.  In addition, the "tradition of openness [of warrant materials] 'serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police.'"  *Custer Battlefield*, 658 F.3d at 1194 (quoting *In re Application of N.Y. Times Co.*, 585 F. Supp. 2d at 90).  More than that, access to search warrants strengthens the public's confidence in the fairness of the courts and justice system:  "To work effectively, it is important that society's criminal process 'satisfy the appearance of justice,' and the appearance of justice can best be provided by allowing people to observe it."  *Richmond Newspapers*, 448 U.S. at 571-72 (citation omitted).

Accordingly, the Search Warrant Materials come within the First Amendment right of access, and should be unsealed, subject to limited redactions necessary to protect a compelling government interest.

## CONCLUSION

For the foregoing reasons, *The Declaration* respectfully requests that (1) it be permitted to intervene in this proceeding, (2) the Court enter an order unsealing all of the Sealed Docket Records and all of the Search Warrant Materials, and (3) to the extent that the party seeking closure is able to meet its high burden of showing that some sealing is necessary, the records be released with redactions limited only to that information that should properly be sealed.

Date:   November 16, 2016                          Respectfully submitted,

                                                                   LEVINE SULLIVAN KOCH & SCHULZ, LLP

                                                                   By: ___*/s/ Michael Berry*_____
                                                                          Michael Berry
                                                                          Paul Safier

                                                                   1760 Market Street, Suite 1001
                                                                   Philadelphia, PA 19103

Tel: (215) 988-9778
Fax: (215) 988-9750
mberry@lskslaw.com
psafier@lskslaw.com

*Attorneys for Philly Declaration, LLC and Austin Nolen*

# EXHIBIT A

## SEALED OR INACCESSIBLE DOCUMENTS*

| Docket Number | Date | Description on Docket |
|---|---|---|
| 24 | 07/22/2015 | SEALED MOTION by USA as to KEONNA THOMAS. |
| 26 | 08/19/2015 | SEALED ORDER as to KEONNA THOMAS. |
| 31 | 11/13/2015 | Ex Parte MOTION for Protective Order *Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure*, *Caption Only*, by USA as to KEONNA THOMAS. |
| 35 | 12/02/2015 | JUDICAL DOCUMENT AS TO KEONNA THOMAS. |
| 47 | 04/25/2016 | SEALED REPLY TO RESPONSE to Motion by KEONNA THOMAS. |
| 48 | 04/25/2016 | SEALED ORDER TO SEAL AS TO KEONNA THOMAS. |
| 62 | 06/30/2016 | SEALED ORDER AS TO KEONNA THOMAS. |
| 63 | 06/30/2016 | SEALED MOTION by USA as to KEONNA THOMAS. |
| 64 | 06/30/2016 | SEALED ORDER as to KEONNA THOMAS. |
| 70 | 07/25/2016 | SEALED ORDER AS TO KEONNA THOMAS. |
| 86 | 09/20/2016 | Plea Document by USA *AND CERTIFICATE OF SERVICE* as to KEONNA THOMAS. |
| 87 | 09/20/2016 | Plea Document as to KEONNA THOMAS. |

* Not listed here (but to which access is also sought) are the Search Warrant Materials and transcripts of (1) Ms. Thomas's *ex parte* presentation to the Court on August 12, 2016, and (2) the plea hearing on September 20, 2016 (not yet posted to ECF).

# EXHIBIT B

*UNITED STATES DISTRICT COURT*

*EASTERN DISTRICT OF PENNSYLVANIA*
*3810 United States Courthouse*
*Sixth and Market Streets*
*Philadelphia, Pennsylvania 19106-1741*
*E-mail: Chambers_of_Judge__Michael_Baylson@paed.uscourts.gov*

*Chambers of*
*Michael M. Baylson*
*United States District Judge*

*Telephone (267) 299-7520*
*Fax (267) 299-5078*

August 15, 2016

Mr. Austin Nolan
P.O. Box 29476
Philadelphia, PA 19125

RE:     United States v. Keonna Thomas; EDPA Criminal No. 15-171
        <u>Order re: Request for Access to Documents</u>

Dear Mr. Nolan:

        In response to your letter of July 13, 2016, I believe it will be necessary for you to file a
motion to intervene in this case, pursuant to <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 777
(3d Cir. 1994), requesting that the Court or any parties provide you with the information you are
seeking in your letter (which will be docketed).  After giving counsel an opportunity to respond
to any request you may make, the Court may issue a ruling.

                              Sincerely yours,

                              Michael M. Baylson
                              United States District Court Judge

MMB/lkd

cc:     Jennifer Williams, AUSA
        Elizabeth Toplin, Asst. Federal Defender
        Kathleen Gaughan, Asst. Federal Defender

O:\Criminal Cases\15-171 US v Thomas\15-171 US v Thomas Ltr to Nolan.docx

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| | : |
| | :   **CRIMINAL NO. 15-171** |
| | : |
| | : |
| **v.** | : |
| | : |
| **KEONNA THOMAS,** | : |
| a/k/a "Fatayat Al Khilafah" | : |
| a/k/a "YoungLioness | : |
| | : |
| | : |
| | : |

## PROPOSED ORDER

Upon consideration of the Motion of Philly Declaration, LLC and Austin Nolen to intervene and for an order granting access to (1) all records that presently appear on the docket as sealed or inaccessible (the "Sealed Docket Records"), and (2) any search warrant materials pertaining to the investigation and prosecution of the Defendant (the "Search Warrant Materials"), it is this _____ day of _____ 2016, hereby

**ORDERED** that the Motion to Intervene is **GRANTED**; it is further

**ORDERED** that the Motion for an order granting access to (1) Sealed Docket Records found at docket entries 24, 26, 31, 35, 47, 48, 62, 63, 64, 70, 86, and 87, (2) transcripts of both Defendant's *ex parte* presentation to the Court on August 12, 2016 and her plea hearing on September 20, 2016, and (3) the Search Warrant Materials is **GRANTED**.

BY THE COURT:

_____
Michael M. Baylson, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | **CRIMINAL NO. 15-171** |
| **v.** : | |
| **KEONNA THOMAS,** : | |
| **a/k/a "Fatayat Al Khilafah"** : | |
| **a/k/a "YoungLioness** : | |

## CORPORATE DISCLOSURE STATEMENT

The undersigned counsel for non-parties Philly Declaration, LLC and Austin Nolen

hereby certify that non-governmental corporate party Philly Declaration, LLC does not have a

parent corporation, and no publicly held corporation owns 10% or more of its stock.

Date:   November 16, 2016                    Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By: ___*/s/ Michael Berry*_____
         Michael Berry
         Paul Safier

1760 Market Street, Suite 1001
Philadelphia, PA 19103
Tel: (215) 988-9778
Fax: (215) 988-9750
mberry@lskslaw.com
psafier@lskslaw.com

*Attorneys for Philly Declaration, LLC and Austin Nolen*