IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : <br> : <br> : <br> : CRIMINAL NO. 15-171 <br> : <br> : |
| v. | : <br> : |
| KEONNA THOMAS, <br>    a/k/a "Fatayat Al Khilafah" <br>    a/k/a "YoungLioness" | : <br> : <br> : <br> : <br> : <br> : |

**REPLY IN SUPPORT OF THE MOTION OF PHILLY
DECLARATION, LLC AND AUSTIN NOLEN TO INTERVENE AND UNSEAL**

On November 16, 2016, non-parties Philly Declaration, LLC and Austin Nolen (collectively, "*The Declaration*") moved to intervene in this proceeding for the limited purpose of seeking access to the many records under seal in this case. Nearly three months later, the Government filed its Response in Opposition to the Motion ("Opp."), Feb. 6, 2017, Dkt. 94, in which it significantly narrowed the issues in dispute. The Government now concedes that a number of records were improperly sealed, in whole and or part.[1] These documents should be filed on the public docket promptly.

---

[1] Specifically, the Government has conceded that Docket Numbers 62, 64, and 70 should be unsealed in their entirety, and that Docket Numbers 35, 47, and 48, as well as all the Search Warrant Materials, should be filed publicly, subject to certain narrowly targeted redactions. In addition, the Government states that it does not object to the unsealing of Ms. Thomas's August 12, 2016 *ex parte* presentation to this Court, and counsel for Ms. Thomas has authorized *The Declaration* to state that Ms. Thomas does not object either. Finally, the Government's Opposition represents that the records filed at Docket Numbers 61 and 63 have already been refiled publicly in redacted form.

The Government also stipulates that "a public right of access exists . . . to the unclassified sealed documents sought by Movant." Opp. at 4. Nonetheless, the Government continues to maintain that a significant number of records should remain sealed. In particular, the Government is asking that Docket Numbers 24, 26, 31, 35, 47, 48, and 87 stay under seal, in whole or in part, in some cases without providing *The Declaration* or the public with any information about what the records are, or why (in the Government's view) such extensive sealing is necessary. As explained below, the Government's position is inconsistent with well-established principles governing access to court records, principles that the Government concedes apply. At bottom, for any portion of these records to remain under seal, the Government must meet the heavy burden imposed by the First Amendment and common law rights of access, and any sealing must be narrowly tailored. *See The Declaration*'s Memorandum of Law ("Mem.") at 7-9, Nov. 16, 2016, Dkt. 90.

1. **The Government's CIPA Motion and Related Protective Order (Docket Numbers 31 and 35)**

The Government contends that its entire *Ex Parte* Motion Pursuant to Section 4 of Classified Information Procedures Act (CIPA) (the "CIPA motion") at Docket Number 31 is not subject to a right of access. *See* Opp. at 2-3. Yet, none of the cases it cites requires such a ruling:

- In *United States v. Wolfson*, 55 F.3d 58, 59 (2d Cir. 1995), the court simply held that the public did not have a right to documents that a trial court had ruled did not need to be provided to a criminal defendant in discovery. *See also id.* (explaining that the only material withheld from the public was certain testimony "before the Securities and Exchange Commission ('SEC'), along with the notes made by SEC investigators and an Assistant United States

Attorney during interviews"). The motion and briefing concerning those documents were not at issue and presumably had been filed publicly.

- *Department of Navy v. Egan*, 484 U.S. 518, 520, 533 (1988), addressed the "narrow question" of "whether the Merit Systems Protection Board . . . has authority by statute to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action," and noted only that the Government has a "'compelling interest' in withholding national security information from unauthorized persons in the course of executive business." It said nothing about how the *judiciary* should treat such material when it is filed in connection with *judicial* proceedings.

- And, in *United States v. Ressam*, 221 F. Supp. 2d 1252, 1261 n.3 (W.D. Wash. 2002), the court made clear that it was not considering the public's common law right to access materials, noting that the movant in that case only sought access under the First Amendment.

The law is clear that the mere fact that classified material is implicated in a proceeding does not automatically mean that every part of that proceeding can be properly sealed. *See, e.g.*, *In re Washington Post Co.*, 807 F.2d 383, 391 (4th Cir. 1986) ("We note further that, troubled as we are by the risk that disclosure of classified information could endanger the lives of both Americans and their foreign informants, we are equally troubled by the notion that the judiciary should abdicate its decisionmaking responsibility to the executive branch whenever national security concerns are present."). Even in the CIPA context, a court "must independently determine whether, and to what extent, the proceedings and documents must be kept under seal." *United States v. Moussaoui*, 65 F. App'x 881, 887, 890 (4th Cir. 2003) (ordering bifurcation of oral argument in CIPA appeal so that the press and public would have access to non-classified portions of the argument); *see also United States v. Poindexter*, 732 F. Supp. 165, 169 (D.D.C.

3

1990) (ordering that videotaped testimony from CIPA hearing should be released to the public with the classified portions edited out).

Here, *The Declaration* has no objection to the classified documents provided with the CIPA motion and any classified information in that motion remaining under seal. However, the public should be permitted access to the Government's legal arguments in its motion, at least to the extent that they can be separated from any underlying classified information. The public has a substantial interest in understanding the kinds of arguments that the Government is using to justify withholding discovery material from criminal defendants like Ms. Thomas. To the extent that interest can be served without disclosing any classified information, Docket Number 31 should be unsealed with limited redactions.

In addition, as the Government concedes, the protective order this Court issued in response to the Government's CIPA motion (Docket Number 35) should be unsealed. Opp. at 3-4. As the court explained in *Ressam*, 221 F. Supp. 2d at 1262, "dissemination of the court's reasoning . . . is a necessary limitation imposed on those entrusted with judicial power," and "enlightens the public about the functioning of the judicial system." Accordingly, Docket Number 35 should be unsealed, subject to whatever "narrowly tailored" redactions are necessary to protect classified information. *Id.* at 1264.

**2.   Ms. Thomas's Reply in Support of Bill of Particulars and Sealing Order (Docket Numbers 47 and 48)**

The Government contends that Docket Number 47 (Ms. Thomas's Reply in support of her Motion for a Bill of Particulars (the "Reply")) and Docket Number 48 (this Court's Order sealing that Reply (the "Sealing Order")) should only be partially unsealed because each "quotes, cites, and attaches" what the Government characterizes as "a Grand Jury exhibit." Opp. at 4-5.

However, the protection the law affords to such material is not nearly as broad as the Government makes it out to be.

First, the basis for exempting grand jury material from public disclosure is Federal Rule of Criminal Procedure 6(e), which codifies the grand jury secrecy requirement and sets out who is bound by it. *See United States v. Smith*, 123 F.3d 140, 148-49 (3d Cir. 1997) (analyzing Rule 6(e) in the context of motion for access). Here, the Government acknowledges the "Grand Jury exhibit" was disclosed to – and then filed by – Ms. Thomas. Opp. at 4-5. She, of course, is not covered by Rule 6(e). *See* Fed. R. Crim. P. 6(e)(2). That suggests the contents of the exhibit are no longer subject to Rule 6(e)'s secrecy requirement.

Second, the fact that the document bears *some* relation to a grand jury proceeding does not mean it should be automatically sealed. Rule 6(e) does not apply to information that was produced independently of the grand jury process, even when that information was "developed with an eye toward ultimate use in a grand jury proceeding." *In re Grand Jury Matter*, 682 F.2d 61, 64 (3d Cir. 1982); *see also In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *11 (E.D. Pa. Nov. 29, 2004) ("materials created at a grand jury's request, such as subpoenas, transcripts, and document lists, constitute matters 'occurring before the grand jury' within the meaning of Rule 6(e)").

Thus, setting aside that the "Grand Jury exhibit" is no longer "secret" because it is under the control of the defendant, whether the exhibit is protected grand jury material hinges on what the exhibit actually is and the circumstances under which the information contained in it was generated. If that information was generated independent of the grand jury process, then the exhibit is subject to a presumptive right of access, notwithstanding that it, or the information it contains, may have ultimately been reviewed by the grand jury. *See United States v. Chang*, 47

F. App'x 119, 121-22 (3d Cir. 2002) (stating general principle); *see also In re Grand Jury Matter*, 682 F.2d at 64 (FBI materials were not secret grand jury materials under Rule 6(e), even if they were ultimately placed before the grand jury); *United States v. Kemp*, 365 F. Supp. 2d 618, 636 (E.D. Pa. 2005) (Baylson, J.) (permitting public access to some material presented to the grand jury). Under those circumstances, Docket Numbers 47 and 48 should be unsealed in their entirety, since the Government has not otherwise met its burden to overcome the public's presumptive right of access. Even if the exhibit contains grand jury material protected under existing Third Circuit precedent, the proper course, as the Government concedes, would be for Docket Numbers 47 and 48 to be publicly filed with only actual secret grand jury material redacted.

**3.    The Remaining Sealed Material
       (Docket Numbers 24, 26, and 87)**

Finally, the Government asserts that Docket Numbers 24, 26, and 87 should be sealed in their entirety, a position it defends in an Addendum that is itself entirely under seal. Opp. at 6-7. The Government's position, in fact, is that not only should these filings be sealed in their entirety, but *any* "public discussion of their contents or even their titles will defeat the interests served by their sealing." Opp. at 6. That runs contrary to basic principles of access law.

The Government has conceded, at least for these purposes, that the filings corresponding to Docket Numbers 24, 26, and 87 are subject to a right of access, though it declines to say publicly whether it believes that right arises under the First Amendment, the common law, or both. Opp. at 4. This concession means that, at a minimum, the Government must make a showing *both* that the sealing it is requesting is justified by an interest sufficient to overcome the presumptive right of access, *and* the extent of the sealing is limited only to what can be justified under the applicable standard. *See* Mem. at 7-12 (describing the First Amendment and common

law standards).  It is highly unlikely that the Government can make that showing, at least not to the extent necessary to justify not only sealing these filings in their entirety, but also depriving the public of any information about what these filings even are or why they must be sealed.  As one court has explained:  "[D]istrict courts [should] avoid sealing judicial documents in their entirety unless necessary." *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008).  That is because "[t]ransparency is pivotal to public perception of the judiciary's legitimacy and independence," a consideration that is especially pressing under circumstances, such as this one, in which the sealing request comes from "a coordinate branch" of the government.  *Id.*

In addition, the Government's request runs contrary to the requirement that any sealing be justified with specific, on-the-record findings, a requirement that exists under both the First Amendment and common law standards.  *See* Mem. at 8-9.  This requirement serves two critical purposes.  First, the public articulation of reasons "is essential for meaningful appellate review of trial court decisions" regarding closure.  *United States v. Criden*, 675 F.2d 550, 562 (3d Cir. 1982).  Second, the requirement serves the same interest in transparency that underlies the presumptive right of access.  Courts have long recognized that denying the public access to criminal proceedings undermines "the appearance of fairness so essential to public confidence in the system."  *N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 429 (3d Cir 2016).  That danger is magnified when even the reasons for denying access are hidden from the public.  By contrast, "entry of specific findings allows fair assessment of the trial judge's reasoning by the public and the appellate courts, enhancing trust in the judicial process and minimizing fear that justice is being administered clandestinely." *Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for Dist. of Ariz.*, 156 F.3d 940, 951 (9th Cir. 1998).  The Government's insistence that this Court seal

multiple filings in their entirety, based on reasons that are themselves unavailable to the public, is antithetical to these well-established principles.

Finally, the Government's refusal either to say what these filings are, or to identify the interest that supposedly justifies sealing them, deprives *The Declaration* of its right to be meaningfully heard on this issue. In its Opposition, the Government asserts that any such procedural rights arise only when a party seeks to close a courtroom. Opp. at 7 n.2 (citing *United States v. Raffoul*, 826 F.2d 218, 224 (3d Cir. 1987)). That is incorrect. To be sure, the applicable notice and hearing rights might play out differently in the context of a request to close a courtroom than they do in the context of a request to seal a document. But those rights apply in both circumstances. This is illustrated by *In re Capital Cities*, 913 F.2d 89 (3d Cir. 1990), in which the Third Circuit applied *Raffoul* to a request for access to sealed docket entries, and did so in a way that makes clear that a media entity moving for access to sealed records is entitled to enough information about those records and the basis for sealing them so as to be in a position to adequately challenge the sealing.

In *Capital Cities*, the media intervenor (Capital Cities/ABC, Inc.) appealed from a denial of "access to three sealed documents." *Id.* at 90. In its decision vacating that order, the court observed that "Capital Cities was at a severe disadvantage in trying to show that its First Amendment and common law rights of access to criminal proceedings . . . overcame the government's interest in preventing the infliction of unnecessary and intensified pain on third parties." *Id.* at 95. That is because, *inter alia*, "at the time of its application to unseal the documents that are the subject of this appeal, Capital Cities had absolutely no information concerning [the document's] particular subject matter." *Id.* As a result, "Capital Cities was unable to advance anything but the most general arguments concerning its First Amendment and

8

common law right to access criminal proceedings," and "could not directly rebut the reasons that led the district court to seal the three documents." *Id.* To remedy those circumstances, the Court remanded with directions that Capital Cities be given an opportunity to make specific objections to the sealing, observing that, "[i]n light of the press's and the public's strong interest in a speedy resolution of this matter, we feel confident that the district court will promptly convene the required *Raffoul* hearing, give Capital Cities an opportunity to present relevant evidence on the privacy issue, and then expeditiously rule upon the case in its new posture." *Id.* at 98. *The Declaration* is entitled to the same consideration here.

Accordingly, the Government should be required to file its Addendum on the public docket (with limited redactions, if necessary), and to provide *The Declaration* with sufficient information about both the nature of Docket Numbers 24, 26, and 87 and the interests the Government believes justify their continued sealing so that *The Declaration* can meaningfully respond. Barring that, this Court should review the records at issue, permit the continued sealing of only those portions whose sealing can be justified under the applicable standards, and then make specific findings on the record to explain the basis for any continued sealing.

## CONCLUSION

Based on the foregoing reasons, the reasons set forth in *The Declaration*'s opening motion papers, and the concessions the Government makes in its Opposition, *The Declaration* respectfully requests that (1) it be permitted to intervene in this proceeding, and (2) that the Court enter an order directing that:

    a) all "Search Warrant Materials" be publicly filed, with all "Personally Identifiable Information" redacted;

b) Docket Numbers 31 and 35 be publicly filed, with all classified information redacted;

c) Docket Numbers 47 and 48 be publicly filed, or, should this Court determine that the "Grand Jury exhibit" attached to Docket Number 47 is protected grand jury information, they be publicly filed, with only protected grand jury information redacted;

d) Docket Numbers 62, 64, and 70 be unsealed;

e) Keonna Thomas's August 12, 2016 *ex parte* presentation be unsealed; and

f) Docket Numbers 24, 26, and 87 be publicly filed or, in the alternative, (1) the Government's Addendum be publicly filed (with limited redactions, if necessary), and (2) the Government be required to provide *The Declaration* with sufficient information about the contents of Docket Numbers 24, 26, and 87 and the basis on which the Government insists they are properly sealed to permit *The Declaration* to be properly heard on this matter.

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

Date:   February 21, 2017

By: ___*/s/ Michael Berry*_____
      Michael Berry
      Paul Safier

1760 Market Street, Suite 1001
Philadelphia, PA 19103
Tel: (215) 988-9778
Fax: (215) 988-9750
mberry@lskslaw.com
psafier@lskslaw.com

*Attorneys for Philly Declaration, LLC and Austin Nolen*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of February, 2017, I caused the foregoing **REPLY IN SUPPORT OF MOTION TO INTERVENE AND UNSEAL DOCUMENTS** to be served via ECF to the following counsel of record:

Jennifer A. Williams
U.S. Attorney's Office
615 Chestnut St., Suite 1250
Philadelphia, PA 19106
jennifer.a.williams@usdoj.gov

*Attorney for the United States*

Elizabeth Toplin
Federal Community Defender Office
601 Walnut St., Suite 545W
Philadelphia, PA 19106
elizabeth_toplin@fd.org

Kathleen M. Gaughan
Federal Community Defender Office
601 Walnut St., Suite 540
Philadelphia, PA 19106
kathleen_gaughan@fd.org

*Attorneys for Defendant*

    /s/ *Michael Berry*