# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO.  15-171** |
| **KEONNA THOMAS,** | : | |
| a/k/a "Fatayat Al Khilafah," | | |
| a/k/a "YoungLioness" | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

From August 2013 through March 2015, the defendant was living a double life. To her family and friends in Philadelphia, she was Keonna Thomas, a quiet mother of two young children who worked hard and stayed out of trouble.  But to her large online following, she was "Fatayat Al Khilafah," also known as "Young Lioness," an outspoken personality spreading violent jihadi propaganda, and a close associate of several known jihadi fighters, with a savvy understanding of operational security and plans to travel to Syria.  For example:

- On August 18, 2013, Thomas re-posted on Twitter a photograph of a young male child wearing firearm magazine pouches and camouflage attire, with the following caption:  "Ask yourselves, while this young man is holding magazines for the Islamic state, what are you doing for it? #ISIS."

- On October 16, 2013, Thomas posted on Twitter a picture of U.S. Currency, with the following captions;  "US Dollar notes donated by Kuwait nationals to the ISIS brothers;" and "Allahu Akbar [God is great]!! Support the Muslims by giving sadaqah [charity]."

- On January 1, 2014, Thomas posted on Twitter the following statement: "I see why the mujahideen [violent jihadi fighters] Sacrifice Dunya [life on earth] for Akhirah [the afterlife] there's no comparison."

- On January 4, 2014, Thomas posted on Twitter the following statement: "Only thing I'm jealous of is when I see the smiles of shuhadaa

1

Case 2:15-cr-00171-MMB   Document 116   Filed 09/01/17   Page 2 of 9

[martyrs]."

- On January 15, 2014, Thomas posted on Twitter the following statement: "I want these to be my last words." Accompanying this statement was a photograph of the following text: "By the Lord of the Kaaba [a shrine in Mecca] I have succeeded."

- On January 30, 2014, Thomas re-posted on Twitter a photograph of an individual carrying an AK-47 weapon, with the following text: "Sponsor a Mujahid [violent jihadi fighter]." Accompanying the photograph, Thomas re-posted the following statement by another Twitter user; "Did you know… For as little as $100 you can provide a #Mujahid with his basic necessities for 1 month?"

- On April 10, 2014, Thomas posted on Twitter that "I need a permanent vacation that can only mean one thing," followed by images of a skull, flames, and a gun.

- On April 27, 2014, Thomas posted on Twitter that "I would prefer the shahada [martyrdom] of being in the bodies of green birds."[1]

- On December 2, 2014, Thomas posted on Twitter that "If we truly knew the realities . . . we all would be rushing to join our brothers in the front lines pray ALLAH accept us as shuhada [martyrs]."

Most notable were Thomas's communications with an ISIL fighter known as Abu Khalid Al-Amriki, whom she married online and arranged to meet in Syria. During these communications, Thomas expressed her happiness and support for Al-Amriki as he arrived in Raqqa and began his training to become an ISIL fighter. Al-Amriki also praised Syrian children as being "the future generation mujahidin [violent jihadi fighters] . . . [who] love Dawla [ISIL]." And Al-Amriki told Thomas, "trust me u haven't seens anything yet. U need to be here to see it." Thomas consistently expressed enthusiasm and blessings for all Al-Amriki was seeing and doing.

---

[1] This is a reference to the jihadi belief that the souls of martyrs are held in the hearts of green birds.

2

On February 17, 2015, Al-Amriki sent an electronic communication to Thomas stating, "U probably want to do Istishadee [martyrdom operations] with me."  In response, Thomas stated, "that would be amazing. . . .  a girl can only wish."  Al-Amriki then responded, "I can make that wish come true."

Shortly thereafter, Thomas obtained a passport, researched secure travel routes to Syria, and purchased a plane ticket.  And it appears that, had the government not arrested Thomas, she would have followed through with her plan to travel to Syria to join ISIL, risking her own life and leaving her two young children behind in Philadelphia without their mother.  In doing so, she would have provided ISIL with more than her mere presence and loyalty, and even more than the possible martyrdom about which she communicated online.  For Western women serve ISIL not only as propaganda disseminators, recruiters, wives, and mothers, but also as valuable propaganda tools, i.e., their participation is perceived to send a strong message to the United States about ISIL's strength, validity, and global reach.  Thus, Thomas's plans with her associates and her travel to Syria would have had very serious negative consequences.

For all of the above reasons, the government submits that Thomas's crime was gravely serious, and that a lengthy sentence of incarceration is appropriate and necessary both to punish Thomas and to send a strong message of deterrence to other like-minded people who might be inclined to travel to join ISIL.

I.      BACKGROUND

        On September 20, 2016, the defendant pled guilty to Count One of the Indictment,

charging her with attempting to provide material support and resources to a foreign terrorist

organization, in violation of 18 U.S.C. § 2339B.  During her plea colloquy, the defendant

admitted that she attempted to travel to Syria in order to provide material support and resources

to terrorists overseas.

II.     SENTENCING CALCULATION.

        A.      Statutory Maximum Sentence

        The Court may impose the following maximum sentence: 15 years imprisonment,

a lifetime of supervised release, a $250,000 fine, and a $100 special assessment.  Further, the

defendant's supervised release may be revoked if its terms and conditions are violated, in which

case the original term of imprisonment may be increased by up to 2 years.

        B.      Sentencing Guidelines Calculation

        The government agrees with Probation that the following Sentencing Guidelines

calculation applies to Ms. Thomas:

| | | |
|---|---|---|
| Base Offense Level | § 2M5.3 | 26 |
| Offense was felony intended to promote federal crime of terrorism | § 3A1.4 | +12 |
| Acceptance of Responsibility | § 3E1.1 | -3 |
| **TOTAL OFFENSE LEVEL** | | **35** |

        With an offense level of 35 and a Criminal History Category of VI[2], Thomas

_____

[2]      Pursuant to U.S.S.G. § 3A1.4, Thomas automatically qualifies for a criminal history
category of VI because she was involved in a felony that involved, or was intended to promote, a

faces an advisory sentencing range of 292-365 months.  However, with a 15-year statutory

maximum for Count One, Thomas's guideline range becomes **180 months.**

III.    ANALYSIS.

        The defense claims that a sentence of incarceration in the range of 30-54 months

is necessary in this case in order to avoid sentencing disparities between Thomas and similarly-

situated defendants.  However, a thorough consideration of all of the sentencing factors set forth

in 18 U.S.C. § 3553(a) suggests that a lengthier sentence of incarceration is both necessary and

appropriate.

        It is well established that this Court must consider all of the sentencing

considerations set forth in Section 3553(a).  Those factors include: (1) the nature and

circumstances of the offense and the history and characteristics of the defendant; (2) the need for

the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and

to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal

conduct, and to protect the public from further crimes of the defendant; (4) the need to provide

the defendant with educational or vocational training, medical care, or other correctional

treatment in the most effective manner; (5) the guidelines and policy statements issued by the

Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct; and (7) the need

to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).[3]

---

federal crime of terrorism.

    [3] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall
impose a sentence sufficient, but not greater than necessary, to comply with the purposes set
forth in paragraph (2) of this subsection."  The Third Circuit has held that "district judges are not
required by the parsimony provision to routinely state that the sentence imposed is the minimum
sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that

First, this offense was gravely serious.  It goes without saying that ISIL is a vicious and violent terrorist organization which thrives on murder and torture.  For example, on August 19, 2014, ISIL claimed responsibility for the videotaped beheading of an American aid worker.  On September 9, 2014, ISIL claimed responsibility for the videotaped beheading of another American aid worker.  On September 13, 2014, ISIL claimed responsibility for the videotaped beheading of a British aid worker.  On October 3, 2014, ISIL claimed responsibility for the videotaped beheading of another British aid worker.  On February 3, 2015, ISIL released a video of a captured Jordanian Air Force Pilot being burned alive in a cage.  On February 15, 2015, ISIL released a video of the beheading of 21 Coptic Christians in Libya.  On February 24, 2015, ISIL kidnapped approximately 70-100 Assyrian Christians located in Northeast Syria, including men, women, and children.  All of these attacks occurred while Thomas was promoting ISIL online and planning her trip to join the organization.

The defense argues that Thomas posed and poses no real danger because she is not capable of a suicide bombing.  However, the government's expert in this case issued a report outlining ISIL's history of aggressive recruitment of women to serve as propaganda disseminators, recruiters, wives helping soldiers prepare for combat, and mothers raising future fighters.  In addition, Western women, particularly American women, were of extra value to ISIL because their participation is perceived to send a strong message to the United States about ISIL's strength, validity, and global reach. Thus, Thomas's criminal conduct would not only have served ISIL but would have strengthened ISIL greatly in the process.

---

the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'"  United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

The seriousness of Thomas's conduct is punctuated by the fact that it would have involved abandoning her two young children.  Although Thomas's sentencing submission attaches letter after letter describing her devotion to her children, the government submits that her devotion to ISIL was far stronger.[4]

It is true, however, that examination of Thomas's personal history and characteristics reveals some mitigating factors, which are described in documents filed under seal.  Thomas has had a difficult life, marked by abuse and neglect.  And while these difficulties in no way lesson the harm caused by her criminal violation, they may somewhat explain her vulnerability to it.   More importantly, Thomas did ultimately accept responsibility for her criminal actions, and the government agrees with the defense that Thomas does not appear to pose great risk of repeating this offense.  Thus, the government submits that specific deterrence is not a significant consideration in this case.   However, there is a great need for Thomas's sentence to promote general deterrence.   For others who might find themselves dissatisfied with life  and excited by online extremists promising acceptance, a meaningful life, and piety, must be shown that providing material support to terrorists translates to a very lengthy prison sentence regardless of the circumstances.

Thomas argues that a period of incarceration in the range of 30-54 months is necessary in order to avoid unwarranted sentencing disparities with terrorism cases from other districts.  However, each of these cases is distinguishable from the instant case in important ways.  For example, the two cases which Thomas claims are most similar to hers did not involve

---

[4]       Importantly, Thomas's plot was cut short not because she changed her mind, but because the government executed a search warrant at her home mere days before she was scheduled to travel, seized her passport and other relevant possessions, and then arrested her shortly thereafter.

convictions under 18 U.S.C. § 2339B (material support to a foreign terrorist organization); rather, they involved convictions under 18 U.S.C. § 1001 (false statement to a government official), which carries a significantly lower statutory maximum sentence and Sentencing Guidelines range.  The government is in the process of gathering specific information about the cases cited by the defense and will present it, to the extent it is public, at the sentencing hearing. However, the government will note here that a well-rounded analysis of convictions and sentences under 18 U.S.C. § 2339B reveals that terrorism defendants in Thomas's position do generally receive lengthy sentences of incarceration.

V.     CONCLUSION

Thomas's crime was gravely serious, and she and her associates posed a real and genuine threat.  For these and all of the reasons provided by the government in connection with Thomas's case, the government respectfully requests a lengthy sentence of incarceration.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


*Jennifer Arbittier Williams*
JENNIFER ARBITTIER WILLIAMS
Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the Government's Sentencing

Memorandum has been served by me, this date, by email upon the following individuals:

Kathleen M. Gaughan, Esquire
Elizabeth L. Toplin, Esquire
Defender Association Of Philadelphia
Federal Court Division
The Curtis Center Building
601 Walnut Street, Suite 540 West
Independence Square West
Philadelphia, PA 19106


*Jennifer Arbittier Williams*
JENNIFER ARBITTIER WILLIAMS
Assistant United States Attorney


Dated:  August 31, 2017