```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,    . Case No. 2:15-cr-00171-MMB-1
                             .
         Plaintiff,          . U.S. Courthouse
      v.                     . 601 Market Street
                             . Philadelphia, PA  19106
KEONNA THOMAS,               .
                             .
         Defendant.          . May 25, 2017
                             . 3:09 p.m.
. . . . . . . . . . . . . . ..

                   TRANSCRIPT OF MOTIONS HEARING
                BEFORE THE HONORABLE MICHAEL M. BAYLSON
                  UNITED STATES DISTRICT COURT JUDGE
APPEARANCES:

For the Plaintiff:           JENNIFER A. WILLIAMS, ESQ.
                             U.S. ATTORNEY'S OFFICE
                             615 Chestnut Street
                             Suite 1250
                             Philadelphia, Pennsylvania  19106

For the Defendant:           ELIZABETH TOPLIN, ESQ.
                             FEDERAL DEFENDERS OFFICE
                             601 Walnut Street
                             Suite 545W
                             Philadelphia, Pennsylvania  19106

For Intervenor:              PAUL J. SAFIER, ESQ.
                             BALLARD SPAHR, LLP
                             175 Market Street, 51st Floor
                             Philadelphia, Pennsylvania  19103

Audio Operator:              JANICE LUTZ

TRANSCRIBED BY:              CATHERINE ALDRICH
                             E-SCRIBE
                             2600 Island Boulevard
                             Suite 2406
                             Aventura, Florida  33160
          Proceedings recorded by electronic sound
   recording, transcript produced by transcription service.
```

1 THE COURT: Say this, I don't know if you want to talk
2 with each other, but as I understand what the intervenors are
3 now seeking are grand jury materials, and it's my opinion without
4 having thoroughly researched this that merely because grand jury
5 materials may have been given to the defendant in a criminal case
6 does not make them public or available to non-parties in the case
7 or to intervenors.
8     So is that your position, Ms. Williams?
9     MS. WILLIAMS: It is, your Honor.
10    THE COURT: All right. So we could have some argument
11 about that, but I'm pretty sure that Third Circuit Court and Third
12 Circuit law, and it's consistent with Rule 6, and the same thing
13 about the cooperation plea agreement.
14    Okay. Well, we'll come back in five or ten minutes,
15 but if you have any authority about that, discuss it with Ms.
16 Williams. All right? Thank you.
17        (Off the record until 3:20 p.m.)
18    THE COURT: All right. We're here for a pretrial hearing
19 -- not a pretrial hearing. We're here for a hearing on a motion
20 by the intervenors in this case, United States versus Thomas,
21 criminal number 15-171, on their motion to unseal, and the
22 supplemental memorandum. This looks like one that was just filed
23 yesterday. Is that right?
24    MR. SAFIER: No, your Honor.

1          THE COURT:  Okay.  Mr. Berry and Mr. Safier are here
2 for the intervenors, right?
3          MR. SAFIER:  I'm Safier.  This is Mr. Nolen, my client.
4          THE COURT:  Okay.  Thank you.
5          MS. TOPLIN:  Your Honor, preliminarily, first of all,
6 I apologize for my tardiness.
7          THE COURT:  That's all right.
8          MS. TOPLIN:  I was confused about the date.
9          Second, Ms. Thomas has asked if she can be excused from
10 this hearing.  I think she was not present at the last hearing,
11 and in fact I think she'd prefer not be present at this hearing.
12         THE COURT:  Okay.  She's excused.
13         MS. TOPLIN:  Thank you.
14         THE COURT:  That's all right.  I didn't actually expect
15 her to be here.
16         MS. TOPLIN:  Thank you, your Honor.
17         THE COURT:  Yes.  I think counsel should be specific
18 if you think there's any reason for her to be here, unless Ms.
19 Lutz knows, but otherwise this really doesn't concern her.
20              (Defendant Exits Courtroom)
21         THE COURT:  All right.  Let me just look at this memorandum
22 that was filed yesterday.  I'm sorry.  It was filed May 3rd.  Excuse
23 me.
24         MR. SAFIER:  Yes.

1       THE COURT: No, no. All right. I have looked at this.
2  Okay. All right.
3       If I understand correctly, Mr. Safier, the -- you're
4  saying here you no longer seek access to any portion of the
5  government's ex parte motion pursuant to Section 4 of the Classified
6  Information Procedures Act, known as CIPA. Is that right?
7       MR. SAFIER: Correct, your Honor.
8       THE COURT: Okay. All right. Now, you're then
9  referencing Ms. Thomas's reply in support of the bill of particulars,
10 okay, and you're asserting that you -- that there was some redacted
11 materials that were produced to her, correct, and that you think
12 you should have access to either the redacted portion of the reply
13 or the sealed exhibit. Is that right?
14      MR. SAFIER: Correct, your Honor.
15      THE COURT: All right. What's the government's
16 position?
17      MS. WILLIAMS: Your Honor, the government is taking the
18 position that that should -- that the exhibit to that reply on
19 the bill of particulars is a grand jury exhibit and should remain
20 under seal, as should the portions of the document discussing
21 those portions of the exhibit that remain under seal.
22      THE COURT: All right. And you're representing that
23 this is all grand jury material governed by Rule 6, right?
24      MS. WILLIAMS: Yes, your Honor.

1        THE COURT:  All right.  Well, Mr. Safier, it's my belief,
2 without extensive -- well, strike that.
3        It's my belief that grand jury material can be given
4 to the defendant, but that that does not make it public information,
5 and if portions of it are redacted for one reason or another,
6 it's still grand jury material.  And what's your response to that?
7        MR. SAFIER:  That's partially correct, but partially
8 incorrect.
9        THE COURT:  That's what?  Can you talk into the
10 microphone, please?
11        MR. SAFIER:  Sorry.  That's partially correct, but I
12 think it's also partially incorrect.
13        THE COURT:  Well, tell me where I'm incorrect.
14        MR. SAFIER:  The -- what the consequence of providing
15 grand jury material in discovery to defense counsel is that it
16 takes it outside the purview of Rule 6(e).  What Rule 6(e).
17        THE COURT:  Wrong.  What's -- do you have a case that
18 says that?
19        MR. SAFIER:  Yes, I do, your Honor.
20        THE COURT:  You say giving it to the defendant takes
21 it outside of Rule 6(e)?
22        MR. SAFIER:  Yes.  I want to -- before I continue, that
23 doesn't mean it's public.  That means it's subject to -- what 6(e)
24 does in this context is it's a trump card.  If the public says,

1  "I want to view this document," and it's grand jury information
2  we just say "6(e)," and the argument's over.
3          THE COURT: Well --
4          MR. SAFIER: Our position is that --
5          THE COURT: -- the defendant may be able to make it public.
6          MR. SAFIER: Oh, so your position --
7          THE COURT: Well, I don't know. I'm asking you. That's
8  a question.
9          MR. SAFIER: Our position is that once it's shared with
10 the defense, who is not someone bound by Rule 6(e), right, the
11 defense is not bound by it, the grand jury secrecy requirement,
12 then it becomes just like any filed material subject potentially
13 to a qualified right of access. That doesn't mean we get it.
14 You just do the common law analysis. You do the First Amendment
15 analysis.
16         THE COURT: Well, first of all, I'm not sure I agree
17 with the way you made that statement. It's certainly true that
18 the government has the right to give grand jury material to the
19 defendant usually pursuant to court order, and that that is not
20 a violation of Rule 6(e) -- Rule 6. Okay?
21         It's also true that a person's -- that a defendant's
22 testimony in front of the grand jury is not subject to grand jury
23 secrecy if the defendant wants to make it public, but I don't
24 understand the law to be that giving grand jury information to

the defendant upon the defendant's request makes it public. Do you agree? Do you agree with that in part?

MR. SAFIER: It doesn't make it public. I agree that far.

THE COURT: All right.

MR. SAFIER: What it does is it means you're no longer under 6(e). You're under the standards of qualified First Amendment right of access. So we --

THE COURT: I'm not sure that's right either.

MR. SAFIER: Well, my understanding is that when the government provides the material in discovery to defense, that's not a violation of 6(e) because of discovery obligations. Trump rules 6(e).

THE COURT: Wait just a minute.

Ms. Williams, they're having a conversation. All right. I want you both to pay attention. If you want time to talk with each other I'm glad --

MS. WILLIAMS: Yes, your Honor.

THE COURT: -- allow that.

MR. SAFIER: Our understanding is that this material was provided to defense counsel pursuant to a protective order, and our position --

THE COURT: It was provided to defense counsel at the request of defense. Is that right, Ms. Toplin?

1          MS. TOPLIN:  Under protective order.
2          THE COURT:  Yes.  Under protective, but that doesn't
3 -- because it was provided under a protective order that doesn't
4 mean it's not covered by Rule 6.
5          MR. SAFIER:  And that's where we disagree.  We think
6 at that point --
7          THE COURT:  Is that right, Ms. Williams?
8          MS. WILLIAMS:  I agree with the Court, yes.
9          THE COURT:  All right.
10         MR. SAFIER:  And the case that I would cite, your Honor,
11 is this case that you decided in 2004 called U.S. v. White.
12         THE COURT:  All right.  Yes.  That was my case.  Correct.
13 I remember that.
14         MR. SAFIER:  Which we cited in our supplemental papers,
15 and if your Honor would indulge me, I will read from the case.
16 Is that --
17         THE COURT:  Sure.
18         MR. SAFIER:  So you know, you elaborate the general
19 principle of mandatory secrecy, and then you write as follows:
20 "These principles of grand jury secrecy and certain limitations
21 on secrecy are codified in Rule 6(e).  Rule 6(e)(2)(B) specifies
22 these people -- those people, who quote, "Must not disclose a
23 matter occurring before the grand jury," end quote.  However, Rule
24 6(e)(2)(A) specifically states, quote, "No obligation of secrecy

may be imposed on any person except in accordance with Rule 6(e)(2)(B)," and here's the key part, "PFI," and this was the mediate intervenor in this case, "points out that defense counsel are not among those persons bound by grand jury secrecy, and that this Court has no authority to impose a secrecy obligation on defense counsel. As courts well know, a witness called before the grand jury is not under any obligation of secrecy and may disclose his or her testimony to whomever wishes to listen."

So our position is what this means is that once it's provided to defense counsel you're no longer under -- operating under Rule 6(e). That doesn't mean we get it. We just -- it's subject to the standards of analysis under the First Amendment and the common law.

It may still be that there are good reasons to keep the public from the information, but those reasons under Rule 6(e) reasons. You no longer have the trump card of Rule 6(e). That's my understanding.

THE COURT: I don't recall if what I held in U.S. v. White agrees with that. We certainly didn't have any intervenors there who were trying to get the information.

Well, what's the government's position?

MS. WILLIAMS: Your Honor, it's the government's position that this, although it is true that under certain circumstances grand jury material might be subject to some rules of First Amendment

1  disclosure, that this particular item is an exhibit introduced
2  in the grand jury. It is not -- it's because of the particular
3  nature of this item that it should remain sealed, your Honor,
4  that under Rule 6(e) and under all of the analysis appropriate
5  when an intervenor is trying to obtain access to material under
6  the First Amendment that this is something that should remain
7  settled.
8           THE COURT: But this is not covered by CIPA. Am I correct?
9           MS. WILLIAMS: That's correct. It is not covered by
10 CIPA.
11          THE COURT: But you're saying it's covered by grand jury
12 secrecy?
13          MS. WILLIAMS: Yes, your Honor, and the case that the
14 government cited in our response to the initial motion is <u>In Re:</u>
15 <u>Newark Morning Ledger</u>, which just says that among the few limitations
16 to the First Amendment right of access in criminal hearings, none
17 is more important than protecting grand jury secrecy, and it's
18 the government's position that that principle is what protects
19 this exhibit.
20          THE COURT: All right. Does the defendant have a position
21 here?
22          MS. TOPLIN: I agree with Ms. Williams.
23          THE COURT: Okay. All right. Are there any other issues
24 right now?

1              MR. SAFIER:  With regard to this document or --
2              THE COURT:  Yes.  Anything.
3              MR. SAFIER:  There were another series of documents that
4  we sought access to that were not grand jury documents.  Should
5  we move on to those?
6              THE COURT:  This is docket numbers 24 and 26 and 87?
7              MR. SAFIER:  Correct, your Honor.
8              THE COURT:  All right.  Now, what are you asking for
9  there?
10             MR. SAFIER:  It's sort of complicated.  For those
11 documents the government's position is not only do we not get
12 access to any part of the document, we can't even be told what
13 they are or the reasons for sealing, and our position is that's
14 sort of -- that's not how this process is supposed to go.
15             I think on substantive grounds these are documents the
16 government concedes are subject to a presumptive right of public
17 access under the First Amendment of the common law.  Given this
18 sort of high burden that imposes, it strikes me as unlikely possible
19 that every single word or sentence of these documents needs to
20 be kept from public view.  So that's our first point, and in general,
21 and there's a case we cited in our reply brief on this point,
22 the Arif (ph.) case from the Second Circuit.
23             Courts have sort of stressed over and over again that
24 redacting documents in whole, keeping documents entirely under

seal tends to sort of promote cynicism and suspicion about criminal proceedings, and that there's a sort of important, sort of public education aspect of transparency as context, and it sort of sends a, you know, untoward message I think was the Second Circuit's conclusion to sort of permit in the criminal context documents to be entirely under seal, and I think that's especially the case in a situation like this where you didn't -- we're not having a public trial in this case. We had -- there was a plea that was entered. The public has no idea sort of the factual bases on which the plea was ultimately tendered and accepted. So that's the first point. That's the substantive point.

On procedure, and there's a case in the Third Circuit, the Capital Cities case. It makes clear that when the media intervenes representing the public to seek access to materials, they have to at least be told enough about what they're seeking access to to sort of meaningfully exercise the presumptive right to access. We have no information about these materials. We're not able to say anything of the generics or the principles about the First Amendment access. That's the second point.

The third point is that ultimately any sealing has to be justified in judicial findings tied to those specific records, and those findings are not -- are usually public themselves. So there's a sort of double secrecy that the government is insisting on here, both the document -- the records themselves have to be

1  secret and the reasons why they have to be secret has to be secret,
2  and that strikes us as inconsistent with the public's rights of
3  access.
4              THE COURT:  All right.  Ms. Williams.
5              MS. WILLIAMS:  Yes, your Honor.  I would just turn the
6  Court's attention to the government's sealed addendum to its response
7  in opposition to the intervenor's motion.  It discusses docket
8  numbers --
9              THE COURT:  All right.  What date was that filed?
10             MS. WILLIAMS:  The date that it was filed, your Honor,
11 it was filed on --
12             THE COURT:  Or the ECF -- go ahead.
13             MS. WILLIAMS:  February 6th I believe.
14             THE COURT:  What day?
15             MS. WILLIAMS:  February 6th.
16             THE COURT:  Okay.
17             MS. WILLIAMS:  In that document the government does
18 explain the important reasons relevant to safety, security, national
19 security that warrant keeping these documents entirely under seal.
20 Those reasons are outlined briefly in the Court's order of March
21 7th, but for those reasons it's the government's position that
22 at this time no portion of those documents should be unsealed
23 because of the interest in preserving life and safety of individuals.
24             However, as the government says its sealed addendum,

1  it could foresee a time when a particular docket numbers 24 and
2  26 might be appropriate for unsealing.  Perhaps also docket number
3  87, but certainly docket numbers 24 and 26 at some point might
4  be appropriate for unsealing, and that's -- for that reason the
5  government suggests that with regard to those perhaps they be
6  denied without prejudice, allowing the intervenors to move to
7  unseal at a later date, perhaps at the conclusion of all courtroom
8  proceedings in this case.
9           THE COURT:  By that you mean including the sentencing
10 of the defendant?
11          MS. WILLIAMS:  Yes, your Honor, which is scheduled for
12 September.
13          THE COURT:  Right.  All right. What's your response
14 to that, Mr. Safier?
15          MR. SAFIER:  I mean there's not much more that I can
16 say without knowing what the documents are.
17          THE COURT:  All right.  I mean I'm not asking you to
18 say -- I mean I'm giving you the opportunity if you --
19          MR. SAFIER:  Right.  I appreciate that.
20          THE COURT:  All right.  I'm going to have to look at
21 this and take it under advisement.
22          MR. SAFIER:  There's one other additional document.
23          THE COURT:  Yes, but I want you to raise now anything
24 else that you think is -- should be subject to Court ruling.  Go

1  ahead.
2          MR. SAFIER:  There's one additional document.  Early
3  in these proceedings before Mr. Nolen had counsel, you unsealed
4  a document.  It was originally filed as docket number 61, and it
5  was the -- it was Ms. Thomas's motion for notice and discovery
6  regarding surveillance.
7          We had initially moved to unseal that docket entry,
8  and the government in its opposition noted that it had already
9  been unsealed, but what was not unsealed were the exhibits to
10 that.  Document -- Ms. Williams and I discussed those exhibits,
11 and she's willing provide four of them to Mr. Nolen, and there's
12 just one document remaining which is Exhibit B to docket entry
13 number 61, and that my understanding is grand jury testimony,
14 and so we just -- I understand that the arguments that we discussed
15 earlier would certainly apply to that document, but I just wanted
16 to get it on the record that that's another thing we've sought
17 access to.
18         THE COURT:  All right.  Is that right, you contend it's
19 grand jury testimony?
20         MS. WILLIAMS:  Yes, your Honor.  Exhibit B to docket
21 number 61 is grand jury testimony.  It's a transcript.  So the
22 government believes that that appropriately should remain sealed.
23         As for the documents the government is willing to provide,
24 some have already been provided to the defense.  Others consist

```
 1  of some discovery related correspondence, which I agreed to provide
 2  in redacted form, redacting out any PII along the same lines as
 3  previous documents that have been produced, but I --
 4             THE COURT:  What does PII stand for?
 5             MS. WILLIAMS:  I'm sorry.  Personal identifying
 6  information.
 7             THE COURT:  Okay.
 8             MS. WILLIAMS:  People's home address, that type of thing.
 9
10             THE COURT:  Right.
11             MR. SAFIER:  And we don't object to that, those redactions
12  at all.
13             THE COURT:  Okay.  All right.  Anything else anybody
14  wants to raise?
15             MR. SAFIER:  On the grand jury issue, the one additional
16  point I would make is that in addition to this issue of the material
17  being provided to defense counsel, there's also clear case law
18  in the Third Circuit that says if it's investigative material,
19  if it's material that wasn't produced by the grand jury proceeding,
20  but was gathered by the government, introduced in the grand jury
21  proceeding, it's not subject to Rule 5(e) (sic).
22             In my understanding this is not true about the transcript
23  we just spoke about.  The transcript we spoke about doesn't fall
24  in that category, but I think Exhibit A to --
```

1        THE COURT:  What's the name of the case you're relying
2   on for that proposition?
3        MR. SAFIER:  There are two cases, your Honor.  The major
4   case is In Re:  Grand Jury Matter we cite in our reply brief.
5   It's 682 F. Second 61.
6        THE COURT:  682 F. Second --
7        MR. SAFIER:  682 F. Second 61.  I can read from that
8   if you'd like, your Honor.
9        THE COURT:  Sure.
10       MR. SAFIER:  So the Court says, this is the Third Circuit,
11  "The information transmitted to the District Attorney On December
12  7th, 1981 consist of materials obtained in the course of the FBI's
13  investigation of possible unlawful activity, including tape
14  recordings and transcript of consensually monitored conversations,
15  FBI 302 documents obtained -- documents obtained without grand
16  jury subpoena and a prosecution summarizing the information compiled
17  by the FBI investigation.
18       The District Court found, after hearing the testimony
19  of FBI agents, that these materials were the product of an FBI
20  investigation, were not generated by the grand jury, and were
21  not requested or subpoenaed by the grand jury.  The court also
22  found the District Attorney did not know whether any or all of
23  these materials were ever before the grand jury.  It held, therefore,
24  that this was not "information," quote, unquote occurring before

1  a grand jury, and hence, was outside disclosure of 6(e). We agree,
2  quote, "The disclosure of information obtained from a source
3  independent of the grand jury proceeding such as prior government
4  investigation does not violate Rule 6(e)"
5         In my understanding, this is not true of the grand jury
6  testimony we just discussed. That is definitely, you know, the
7  product of the grand jury proceeding, but I think the grand jury
8  exhibit that we discussed earlier, my understanding based on the
9  context in which it appears in docket number 41, which was subject
10 to redactions, is the FBI's investigative material. So that's
11 an additional reason why we don't think Rule 6(e) applies.
12         THE COURT: All right. Ms. Williams.
13         MS. WILLIAMS: Your Honor, the exhibit which the Court
14 will be able to view because it is attached to the sealed reply
15 that was filed at docket 47, it was created for purposes of the
16 grand jury proceeding. It was introduced as an exhibit for the
17 grand jury proceeding, and it was produced to the defense with
18 the grand jury testimony because this was referenced during the
19 grand jury testimony.
20         So for those reasons and as well the evidence that the
21 Court upon examination of the document itself, the government
22 is still taking the position that it appropriately remains under
23 seal.
24         THE COURT: Okay. All right. Thank you very much. I'll

1  take it under advisement, and we'll render a decision --
2           MR. SAFIER:  Thank you, your Honor.
3           MS. WILLIAMS:  Thank you, your Honor.
4           THE COURT:  -- in due course.  All right.  Thanks very
5  much for coming in.
6           (Proceedings concluded at 3:41 p.m.)
7                    *   *   *   *   *
8
9                  **C E R T I F I C A T I O N**
10
11 I, Catherine Aldrich, court approved transcriber, certify that
12 the foregoing is a correct transcript from the official electronic
13 sound recording of the proceedings in the above-entitled matter,
14 and to the best of my ability.
15
16 *[signature: Catherine Aldrich]*
17 _____
18
19                              DATE:  November 17, 2017